**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| TAKATA CORPORATION, <u>et al.</u>[1] | Case No. 17-_____ (___) |
| Debtors in a foreign proceeding. | (Joint Administration Requested) |

**FOREIGN REPRESENTATIVE'S MEMORANDUM OF LAW IN SUPPORT OF**
**<u>VERIFIED CHAPTER 15 PETITION AND CERTAIN PROVISIONAL RELIEF</u>**

---

[1]   The chapter 15 debtors are Takata Corporation, Takata Kyushu Corporation, and Takata Service Corporation.  The registered office for Takata Corporation and Takata Service Corporation is located at 2-12-31 Akasaka, Minato-ku, Tokyo, 107-0052, Japan.  The registered office for Takata Kyushu Corporation is located at 2195-4 Oaza Befu, Higashitaku-machi, Taku-shi, Saga, 846-0012, Japan. The Foreign Representative is located at Takata Corporation, 2-3-14 Higashishinagawa, Shinagawa-ku, Tokyo, 140-0002, Japan.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..........................................................................................2

FACTUAL BACKGROUND ............................................................................................5

ARGUMENT .....................................................................................................................5

A.    The Japanese Proceedings Are Entitled to Recognition as Foreign Main
      Proceedings. .........................................................................................................5

      1.    The Chapter 15 Cases Satisfy the Requirements for Recognition Under
            Chapter 15 of the Bankruptcy Code............................................................5

            a.    Venue Is Proper in this District.......................................................6

            b.    The Japanese Proceedings Are "Foreign Proceedings." ...............8

            c.    TKJP Is a Proper "Foreign Representative." ...............................11

            d.    The Foreign Representative Filed Proper Documentation..........12

            e.    The Verified Petition Is Consistent with the Purpose of Chapter 15.........13

      2.    The Japanese Proceedings are "Foreign Main Proceedings" Under the
            Bankruptcy Code. .....................................................................................14

      3.    Recognizing the Japanese Proceedings as Foreign Main Proceedings Is
            Consistent with the Purpose of Chapter 15 and Public Policy...............17

B.    The Provisional Relief Requested by the Foreign Representative Is Within the
      Scope of Section 1519 of the Bankruptcy Code and Is Appropriate Under the
      Circumstances. ....................................................................................................21

      1.    The Relief Requested Is Authorized by Sections 1519(a)(1) and (a)(3),
            1521(a)(7), and 105(a). ............................................................................22

      2.    The Requested Provisional Relief Is Necessary and Appropriate under the
            Standards for Injunctive Relief. ...............................................................23

            a.    Substantial Likelihood of Recognition as Foreign Main
                  Proceeding...................................................................................23

            b.    The Japanese Debtors Will Suffer Irreparable Injury if the
                  Provisional Relief Order Is Not Entered......................................24

            c.    There Will Be Little to No Harm to Parties Subject to the
                  Provisional Relief Order if It Is Entered.....................................27

            d.    Granting the Requested Relief Is Manifestly in Line with United
                  States Public Policy.....................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ.,
    84 F.3d 1471 (3d Cir. 1996) (en banc)........................................................23

Bavelis v. Doukas (In re Bavelis),
    453 B.R. 832 (Bankr. S.D. Ohio 2011)........................................................6

Cornfeld v. Investors Overseas Servs., Ltd.,
    471 F. Supp. 1255 (S.D.N.Y. 1979)..........................................................18

Frank v. Neufeld (In re Neufeld),
    No. 12-02177, 2012 Bankr. LEXIS 5430 (Bankr. M.D. Pa. Nov. 16, 2012) ...........................7

In re ABC Learning Ctrs. Ltd.,
    728 F.3d 301 (3d Cir. 2013)....................................................................9

In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,
    374 B.R. 122 (Bankr. S.D.N.Y. 2007)...............................................12, 14, 15, 29

In re Betcorp Ltd.,
    400 B.R. 266 (Bankr. D. Nev. 2009) ..........................................................9, 10, 15

In re British Am. Ins. Co.,
    425 B.R. 884 (Bankr. S.D. Fla. 2010) .........................................................9

In re British Am. Isle of Venice, Ltd.,
    441 B.R. 713 (Bankr. S.D. Fla. 2010) .........................................................10

In re Daiichi Chuo Kisen Kaisha,
    No. 15-121650 (Bankr. S.D.N.Y. 2015).......................................................11, 18

In re Elpida Memory, Inc.,
    Case No. 12-10947 (Bankr. D. Del. Mar. 21, 2012)..............................................26

In re Elpida Memory, Inc.,
    No. 12-10948 (Bankr. D. Del. 2012) ..........................................................18

In re Global Ocean Carriers Ltd.,
    251 B.R. 31 (Bankr. D. Del. 2000) ...........................................................7

In re Innua Canada Ltd.,
    2009 WL 1025090 (Bankr. D.N.J. Arp. 15, 2009) .............................................14

In re Ionosphere Clubs, Inc.,
    922 F.2d 984 (2d Cir. 1990)............................................................................17

In re Irish Bank Resolution Corp. Ltd.,
    No. 13-12159 (CSS), 2014 WL 9953792 (Bankr. D. Del. Apr. 30, 2014),
    aff'd, 538 B.R. 692 (D. Del. 2015) ..............................................................9, 14

In re Japan Airlines Corp., et al.,
    No 10-10198 (Bankr. S.D.N.Y. 2010) ..............................................................18

In re Kojima,
    177 B.R. 696 (Bankr. D. Colo. 1995) ..............................................................18

In re Mid Atl. Retail Grp., Inc.,
    No. 07-81745, 2008 Bankr. LEXIS 790 (Bankr. M.D.N.C. Jan. 4, 2008) ..............................7

In re Millennium Glob. Emerging Credit Master Fund Ltd.,
    458 B.R. 63 (Bankr. S.D.N.Y. 2011)................................................................15

In re MtGox Co., Ltd.,
    No. 14-31229 (Bankr. N.D.Tex. 2014) ..............................................................18

In re Octaviar Administration Pty Ltd.,
    511 B.R. 361 (Bankr. S.D.N.Y. 2014) ................................................................7

In re Oversight & Control Comm'n of Avanzit, S.A.,
    385 B.R. 525 (Bankr. S.D.N.Y. 2008)................................................................14

In re R&G Fin. Corp.,
    441 B.R. (Bankr. D.P.R. 2010) .......................................................................26

In re The Sanko Steamship Co, Ltd.,
    No. 12-12815 (Bankr. S.D.N.Y. 2012) ..............................................................18

In re Shelton,
    No. 01-20655, 2001 Bankr. LEXIS 2213 (Bankr. D. Idaho Oct. 12, 2001) ............................6

In re SPhinX, Ltd.,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006) ..........................................................15, 29

Mar. Elec. Co. v. United Jersey Bank,
    959 F.2d 1194 (3d Cir. 1991)...........................................................................26

Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n,
    892 F.2d 575 (7th Cir. 1989) ...........................................................................26

Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),
    714 F.3d 127 (3d Cir. 2013)........................................................................15, 27

<u>Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.),</u>
    365 B.R. 401 (S.D.N.Y. 2007)..................................................................26

<u>U.S. v. Bell,</u>
    414 F.3d 474 (3d Cir. 2005).....................................................................23

**Statutes**

8 Del. C. § 169 ............................................................................................7

11 U.S.C. § 101(23) .............................................................................4, 8, 9

11 U.S.C. § 101(24) ...........................................................................1, 4, 11

11 U.S.C. § 101(41) .........................................................................4, 11, 12

11 U.S.C. § 105 ..........................................................................................22

11 U.S.C. § 105(a) ................................................................................21, 24

11 U.S.C. § 108 .....................................................................22, 24, 27, 28

11 U.S.C. § 362 ................................................................................... passim

11 U.S.C. § 1501 .........................................................................19, 20, 28, 29

11 U.S.C. § 1501(a) ...................................................................................19

11 U.S.C. § 1501(a)(1)–(5) ........................................................................29

11 U.S.C. § 1501(a)(3) ...............................................................................13

11 U.S.C. § 1501(b)(1) .................................................................................5

11 U.S.C. § 1502(4) ...................................................................................14

11 U.S.C. § 1504 ........................................................................................12

11 U.S.C. § 1506 ........................................................................................17

11 U.S.C. § 1509 ........................................................................................12

11 U.S.C. § 1515 ..................................................................................12, 13

11 U.S.C. § 1515(a) ...................................................................................12

11 U.S.C. § 1515(b) ..............................................................................12, 13

11 U.S.C. § 1516(b) ..............................................................................16, 17

11 U.S.C. § 1516(c) ....................................................................................................14

11 U.S.C. § 1517 ......................................................................................................1, 4

11 U.S.C. § 1517(b)(1) .........................................................................................14, 17

11 U.S.C. § 1519 .........................................................................................1, 4, 21, 23

11 U.S.C. § 1519(a) ....................................................................................................22

11 U.S.C. § 1519(a) ....................................................................................................21

11 U.S.C. § 1519(a)(3) ...............................................................................................22

11 U.S.C. § 1520 ........................................................................................................27

11 U.S.C. § 1521 ........................................................................................................27

11 U.S.C. § 1521(a)(7) ...............................................................................................27

11 U.S.C. § 1521(a)(7) ...............................................................................................22

11 U.S.C. § 1521(a)(7) ...............................................................................................21

11 U.S.C. § 1525 ........................................................................................................29

28 U.S.C. § 1410 ....................................................................................................5, 6, 7

28 U.S.C. § 1410(3) .................................................................................................6, 8

Civil Rehabilitation Act of Japan, Act No. 225 ............................................................1

**Other Authorities**

H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) ................................................21

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340-2 (1977).........................................30

01:22057771.20

Takata Corporation ("TKJP") is the duly authorized foreign representative (the "Foreign Representative") of itself and its above-captioned affiliates, Takata Kyushu Corporation ("TK9") and Takata Service Corporation ("TKS," and with TKJP and TK9, collectively, the "Japanese Debtors" and, together with their direct and indirect subsidiaries, "Takata"),[2] who are debtors in Civil Rehabilitation Proceedings (the "Japanese Proceedings") under the Civil Rehabilitation Act of Japan, Act No. 225 of December 22, 1999 (the "Civil Rehabilitation Act") before the 20th Department of the Civil Division of the Tokyo District Court Japan (the "Japanese Court").[3]

On the date hereof, the Foreign Representative commenced these chapter 15 cases (collectively, these "Chapter 15 Cases") by filing: (a) chapter 15 petitions; (b) a verified petition (the "Verified Petition"), requesting entry of a final order (the "Recognition Order"), after notice and a hearing, (i) recognizing the Japanese Proceedings as foreign main proceedings pursuant to section 1517 of title 11 of the United States Code (the "Bankruptcy Code"); (ii) recognizing TKJP as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the Japanese Proceedings; and (iii) granting such other and further relief as this Court deems just and proper; and (c) a motion requesting that the Court grant the Japanese Debtors certain provisional relief pursuant to section 1519 of the Bankruptcy Code (the "Provisional Relief Motion").  The Foreign Representative respectfully submits this Memorandum of Law in support of the Verified Petition and the Provisional Relief Motion.

---

[2]  On June 25, 2017 (United States time), certain of the Japanese Debtors' affiliates filed for bankruptcy under chapter 11 of the Bankruptcy Code.  Those affiliates are Takata Americas; TK Finance, LLC; TK China, LLC; TK Holdings Inc.; Takata Protection Systems Inc.; Interiors in Flight Inc.; TK Mexico Inc.; TK Mexico LLC; TK Holdings de Mexico, S. de R.L. de C.V.; Industrias Irvin de Mexico, S.A. de C.V.; Takata de Mexico, S.A. de C.V.; and Strosshe-Mex, S. de R.L. de C.V. (together, the "Chapter 11 Debtors").

[3]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Verified Petition.

## PRELIMINARY STATEMENT

1.      TKJP, together with its direct and indirect subsidiaries, is an automotive safety company that produces a broad spectrum of passive and active automotive safety technology, including seat belts, airbag systems, steering wheels, and other electronic devices.

2.      Recently, Takata has experienced financial distress due to issues relating to certain of its products.   Specifically, certain airbag inflators containing phase-stabilized ammonium nitrate (the "PSAN Inflators") manufactured by Takata have ruptured during deployment of the airbag.   The rupture of these PSAN Inflators prompted Takata and certain original equipment manufacturers (each an "OEM") to take actions to initiate wide-ranging recalls of vehicles globally, including in Japan and the United States, in coordination with regulatory authorities including the National Highway Transportation Safety Administration in the United States and the Ministry of Land, Infrastructure, Transport and Tourism in Japan.   The OEMs have asserted substantial liabilities against the Takata entities, including the Japanese Debtors, arising out of claims, rights of reimbursement, indemnification, setoff and other similar rights against Takata for the costs and expenses incurred by the OEMs arising out of the airbag system recall.

3.      On top of the massive cost of these recalls, Takata is subject to a plea agreement (the "Plea Agreement") resulting from a two-year investigation by the DOJ.   The Plea Agreement culminated with the entry of the Restitution Order by the United States District Court for the Eastern District of Michigan, which imposes significant fines and penalties that must be satisfied in full for Takata to have any hope of continuing its operations going forward.   While some of the penalties and Restitution Payments have already been satisfied, presently under the Restitution Order, Takata must satisfy in full $850 million of Restitution Payments by March 4, 2018.   Should Takata fail to do so, the DOJ retains the right to withdraw the Plea Agreement and

01:22057771.20

2

pursue criminal charges and penalties above and beyond those that were settled under the Plea Agreement against all Takata entities, including the Japanese Debtors.

4.       As described in the accompanying Verified Petition, TKJP appointed an independent advisory committee consisting of five legal and financial professionals (the "Steering Committee") in February 2016 for the purpose of formulating a comprehensive restructuring plan for Takata.  TKJP, including through the Steering Committee, engaged in extensive efforts to address the liabilities associated with the recalls of PSAN Inflators, in an effort to ensure the continued viability of Takata's business and to preserve and maximize the value of its business for stakeholders.  Takata first explored an out of court transaction because, among other things, Takata believed that would provide the most stability for Takata to ensure an uninterrupted, stable supply of its products to its customers.  During this process, Takata selected Key Safety Systems, Inc. ("KSS") as the potential sponsor for a restructuring of the Takata business.  Takata, however, was not able to garner enough support for an out-of-court restructuring.

5.       As a result, and in the face of a rising tide of liabilities, certain Takata entities commenced coordinated restructuring proceedings—the Chapter 11 Cases in the United States and the Japanese Proceedings—to pursue a global sale of substantially all of Takata's assets to KSS, but excluding the assets related to the PSAN Inflators business.  Takata and KSS have reached a tentative agreement in principle for a sale transaction with a base purchase price targeted at $1.588 billion, subject to certain adjustments.  Importantly, the transaction proposes that the obligation to pay the $850 million of Restitution Payments under the Plea Agreement will be satisfied through the sale proceeds from KSS.  In addition to the base purchase price, KSS has agreed to an "earn out" payment to Takata of up to $400 million depending upon

01:22057771.20

3

achievement of certain financial metrics post-closing.  Takata expects to obtain support for the transaction with KSS from OEMs that, in the aggregate, purchased approximately ninety percent (90%) of PSAN Inflators sold by Takata as of March 2017 and hold a substantial majority of the total unsecured claims against the Takata entities.

6.     Through the Verified Petition, the Foreign Representative asks the Court to: (a) grant recognition to the Japanese Proceedings as foreign main proceedings under section 1517 of the Bankruptcy Code; and (b) recognize TKJP as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Japanese Proceedings.  Doing so will assist the Japanese Court in administering the Japanese Proceedings and assist the Japanese Debtors in undergoing civil rehabilitation.  Recognition of the Japanese Proceedings is proper because: (a) venue is proper in this District; (b) the Japanese Proceedings are "foreign proceedings" pursuant to section 101(23) of the Bankruptcy Code; (c) TKJP is a proper "foreign representative"; (d) the Foreign Representative filed the proper documentation; and (e) granting the Verified Petition is consistent with the purpose of Chapter 15 of the Bankruptcy Code. Likewise, recognizing TKJP as a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code is proper because TKJP is a person (as such term is used in section 101(41) of the Bankruptcy Code) that has been duly authorized to act in that capacity by the Japanese Court.

7.     Through the Provisional Relief Motion, the Foreign Representative respectfully requests that the Court grant the Japanese Debtors certain protections of sections 108 and 362 of the Bankruptcy Code, made applicable to these Chapter 15 Cases by operation of section 1519. This protection will grant the Japanese Debtors a necessary reprieve from the myriad litigations

they face in the United States, primarily relating to the PSAN Inflators, so that they may successfully reorganize for the benefit of themselves and their creditors.

## FACTUAL BACKGROUND

8.      For a more complete description of the Japanese Debtors' business, corporate organization, debt structure, and circumstances leading to the Japanese Proceedings and the Chapter 15 Cases, the Court is respectfully referred to (a) the Verified Petition, (b) the *Declaration of Shankar Duraiswamy of Covington & Burling, LLP in Support of Provisional Relief* (the "Covington Declaration"), and (c) the *Declaration of Nobuaki Kobayashi in Support of Verified Petition for Recognition and Chapter 15 Relief* (the "Japanese Proceedings Declaration"), each of which is filed concurrently herewith and is incorporated herein by reference.  The Verified Petition, Covington Declaration, and Japanese Proceedings Declaration contain the relevant facts for the purposes of this Memorandum of Law.

## ARGUMENT

**A.      The Japanese Proceedings Are Entitled to Recognition as Foreign Main Proceedings.**

**1.      The Chapter 15 Cases Satisfy the Requirements for Recognition Under Chapter 15 of the Bankruptcy Code.**

9.      The Chapter 15 Cases satisfy the requirements for recognition as a foreign proceeding by the Court.  First, venue is proper in this District because TKJP's principal assets in the United States are located in Delaware, and venue in Delaware is consistent with the "interests of justice" and the "convenience of the parties."  See 28 U.S.C. § 1410.  Second, chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a United States bankruptcy court in connection with a foreign proceeding.  See 11 U.S.C. § 1501(b)(1).  As discussed herein, the Chapter 15 Cases satisfy the requirements for recognition of a foreign proceeding because (a) the Japanese Proceedings are "foreign proceedings," (b) the Chapter 15

Cases were commenced by a duly authorized "foreign representative," (c) the Verified Petition and all required supporting documentation was properly filed, and (d) the relief sought by the Verified Petition is consistent with the objectives of chapter 15.

### a.    Venue Is Proper in this District.

10.    Section 1410 of title 28 of the United States Code instructs that venue of a case brought pursuant to chapter 15 of the Bankruptcy Code may be commenced in the district

> (1) in which the debtor has its principal place of business or principal assets in the United States;
>
> (2) if the debtor does not have a principal place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in Federal or State court; or
>
> (3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative.

28 U.S.C. § 1410.

11.    The Japanese Debtors' principal assets in the United States are located in this District.  Likewise, venue in this District serves the interests of justice and provides convenience for the parties, consistent with the requirements of 28 U.S.C. § 1410(3).

12.    A debtor has "principal assets" in a district if it has more than half of its assets in such district.  See Bavelis v. Doukas (In re Bavelis), 453 B.R. 832, 869 (Bankr. S.D. Ohio 2011) (holding that a debtor had principal assets in the Southern District of Ohio where "more than 50% of [its] assets" were located in such district); In re Shelton, No. 01-20655, 2001 Bankr. LEXIS 2213, at *19 n.15 (Bankr. D. Idaho Oct. 12, 2001) (noting that principal assets requirement is met by "a simple determination of where the greater dollar value of all property of the estate is located"); Frank v. Neufeld (In re Neufeld), No. 12-02177, 2012 Bankr. LEXIS 5430 (Bankr. M.D. Pa. Nov. 16, 2012) (same).  But cf. In re Mid Atl. Retail Grp., Inc., No. 07-81745,

2008 Bankr. LEXIS 790 (Bankr. M.D.N.C. Jan. 4, 2008) (ruling that principal assets existed in a judicial district even when debtor only had 19% of its assets in the district).

13.     As described in the Verified Petition and Japanese Proceedings Declaration, TKJP's primary asset in the United States is its equity ownership of TK Holdings Inc. ("TKH"), a major United States-based affiliate of the Japanese Debtors and one of the Chapter 11 Debtors with cases pending before this Court.   See Verified Petition, ¶ 32; Japanese Proceedings Declaration, ¶ 40.   TKH is a Delaware corporation and pursuant to applicable Delaware law, the stock of TKH owned by TKJP is considered located in Delaware.   See 8 Del. C. § 169 ("For all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this State, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this chapter or otherwise, shall be regarded as in this State."); see also In re Global Ocean Carriers Ltd., 251 B.R. 31, 38 (Bankr. D. Del. 2000) (concluding that under Delaware law, a chapter 11 debtor that owned the capital stock of a Delaware corporation owned property in Delaware).   TKJP also holds an interest in a retainer held by the Japanese Debtors' Delaware counsel in these Chapter 15 Cases, Young Conaway Stargatt & Taylor, LLP, maintained in a Delaware bank account.[4] See Verified Petition, ¶ 32; Japanese Proceedings Declaration, ¶ 40.   Therefore, TKJP has its principal United States assets in Delaware, and venue is proper in Delaware pursuant to section 1410 of title 28 of the United States Code.

---

[4]     See, e.g., In re Octaviar Administration Pty Ltd., 511 B.R. 361, 373–74 (Bankr. S.D.N.Y. 2014) (noting that a chapter 15 debtor had property in the United States in the form of a retainer prior to filing a chapter 15 petition); In re Global Ocean Carriers Ltd., 251 B.R. 31 (Bankr. D. Del. 2000) (holding that chapter 11 debtors had interest in escrow funds paid as a retainer to United States counsel).

14.     TK9 and TKS do not have any assets in the United States, do not have any place of business in the United States, and are not parties to any litigation in the United States.  See. Verified Petition, ¶ 32; Japanese Proceedings Declaration, ¶ 40.  However, venue of Chapter 15 proceedings for TK9 and TKS in this district is consistent with the interests of justice and the convenience of the parties pursuant to 28 U.S.C. § 1410(3), given that their parent corporation, TKJP, is properly venued in this district, and the Chapter 11 Cases (concerning other of their affiliates) are taking place in this district.  Given the proper venue of TKJP in Delaware, and the fact that both TKJP and the Chapter 11 Debtors are seeking to implement the global KSS transaction, having the cases of the other Japanese Debtors (TK9 and TKS) in the same district will promote judicial economy and greatly conveniences all interested parties.

### b.     The Japanese Proceedings Are "Foreign Proceedings."

15.     The Japanese Proceedings are "foreign proceedings" as defined in the Bankruptcy Code.  Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).  Courts have construed this definition to encompass seven elements:

> (i) a proceeding;

> (ii) that is either judicial or administrative;

> (iii) that is collective in nature;

> (iv) that is in a foreign country;

> (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts;

> (vi) in which the debtor's assets and affairs are subject to the control and supervision of a foreign court; and

(vii) which proceeding is for the purpose of reorganization.

In re Irish Bank Resolution Corp. Ltd., No. 13-12159 (CSS), 2014 WL 9953792, at *12 (Bankr.

D. Del. Apr. 30, 2014), aff'd, 538 B.R. 692 (D. Del. 2015) (quoting In re Betcorp Ltd., 400 B.R.

266, 285 (Bankr. D. Nev. 2009)).  The Japanese Proceedings meet all seven of these elements.

16.     First, the Japanese Proceedings are "proceedings" as they were commenced with

the filing by each Japanese Debtor of a petition for civil rehabilitation with the Japanese Court.

Moreover, commencement of the Japanese Proceedings has now been approved through entry of

the Commencement Orders.  See Japanese Proceedings Declaration, Exhibit B (Commencement

Orders).

17.     Second, the Japanese Proceedings are "judicial" as they are subject to the ultimate

oversight of the Japanese Court.  See id.

18.     Third, the Japanese Proceedings are collective in nature and function much like

comparable proceedings in the United States and other jurisdictions that are considered to be

collective proceedings.  The functional goal of the Civil Rehabilitation Proceedings is for all

assets that are not subject to secured claims to be administered in the proceeding and the value of

those assets to be distributed to creditors on a pro rata basis based on statutorily dictated priority

schemes.  The Third Circuit found that an Australian liquidation proceeding bearing the same

characteristics was a "collective" proceeding.  In re ABC Learning Ctrs. Ltd., 728 F.3d 301, 308

(3d Cir. 2013) ("the liquidation is a collective proceeding, because the liquidator must consider

the rights of all the creditors in distributing assets, and must distribute assets according to

priorities on a pro rata basis"); see also In re British Am. Ins. Co., 425 B.R. 884, 902 (Bankr.

S.D. Fla. 2010) ("For a proceeding to be collective within the meaning of section 101(23), it

must be instituted for the benefit of creditors generally rather than for a single creditor or class of

creditors. 'A collective proceeding is one that considers the rights and obligations of all creditors.

01:22057771.20

9

This is in contrast, for example, to a receivership remedy instigated at the request, and for the benefit, of a single secured creditor.'" (citing In re Betcorp Ltd., 400 B.R. 266, 281 (Bankr. D. Nev. 2009))). Among other things, the Civil Rehabilitation Act provides that:

- the debtor is required to attach a list of known creditors and amounts owed when filing the petition with the court, Japanese Proceedings Declaration, ¶ 7;

- the known creditors identified on the debtor's list of claims are mailed notice by the court of the commencement of the proceeding and the deadline to submit claims, id., ¶ 9;

- the court may convene a meeting of creditors either on its own initiative or upon the request of the debtor, a creditors committee, or the holder of a substantial rehabilitation claim, id., ¶ 17;

- the debtor and other parties in interest are permitted an opportunity to contest claims filed in the proceeding, with the court ultimately having the ability to adjudicate any contested claims, id., ¶¶ 26-27;

- the debtor and creditors are permitted to propose a plan of rehabilitation, id., ¶ 29;

- a meeting is held and holders of claims in attendance have the ability to vote on the plan of rehabilitation or to submit votes by documents, id.;

- confirmation of a plan is subject to obtaining approval by a majority of holders of voting rights as determined through the claims reconciliation process, id. ¶ 30; and

- holders of claims may appeal the court's approval of the plan, id.

These comport with elements relied on by the court in In re British Am. Isle of Venice, Ltd. to determine that a British Virgin Island's insolvency proceeding was "collective." 441 B.R. 713, 719 (Bankr. S.D. Fla. 2010) ("The Act addresses, among other things, the provision of notice to creditors, the presentation and consideration of claims, the right of creditors to take part in the BVI Proceeding, and the distribution of assets to creditors holding approved claims.").

19.     *Fourth*, the Japanese Proceedings are pending in Japan, which is a foreign country. See Japanese Proceedings Declaration, ¶ 33 and Exhibit B (Commencement Orders).

20.    _Fifth_, the Japanese Proceedings are being conducted under the Civil

Rehabilitation Act, which is a Japanese statutory scheme related to financially distressed and

insolvent companies intended to promote their rehabilitation, while respecting the rights of

creditors.  See Japanese Proceedings Declaration, ¶¶ 5, 39.

21.    _Sixth_, the Japanese Debtors are subject to the supervision of the Supervisor.  See

Japanese Proceedings Declaration, ¶ 37 and Exhibit A (Supervisor Appointment Orders).

22.    _Seventh_, proceedings under the Civil Rehabilitation Act, which governs the

Japanese Proceedings, are intended for the purposes of rehabilitating debtors and their

businesses, rather than proceedings seeking to liquidate and dissolve debtors.  See Japanese

Proceedings Declaration, ¶ 5, 39.

23.    Moreover, at least one United States Court has previously recognized that a

proceeding under the Civil Rehabilitation Act constitutes a "foreign proceeding."[5]  Accordingly,

the Japanese Proceedings qualify as "foreign proceedings" under the Bankruptcy Code.

### c.    TKJP Is a Proper "Foreign Representative."

24.    The term "foreign representative" is defined in section 101(24) of the Bankruptcy

Code as follows:

> [A] person or body, including a person or body appointed on an
> interim basis, authorized in a foreign proceeding to administer the
> reorganization or the liquidation of the debtor's assets or affairs or
> to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24). In turn, the Bankruptcy Code defines "person" to include an individual,

partnership, or corporation, and TKJP is a Japanese corporation.  11 U.S.C. § 101(41).  On June

26, 2017, the Japanese Court issued an order appointing Mr. Katsuyuki Miyakawa, a Japanese

---

[5]    See In re Daiichi Chuo Kisen Kaisha, No. 15-121650 (Bankr. S.D.N.Y. Nov. 12, 2015) (providing for
recognition under Chapter 15 of the Bankruptcy Code of a Japanese Civil Rehabilitation proceeding).

lawyer, as the Japanese Debtors' supervisor (the "<u>Supervisor</u>").   Under the Japanese Court

Orders (as defined in the Japanese Proceedings Declaration and attached thereto as <u>Exhibits A</u>

and <u>B</u>), the Japanese Debtors are supervised by the Supervisor and cannot take any action that is

seen as outside of the ordinary course of business, including, but not limited to, initiating or

pursuing any legal proceeding, without the consent of the Supervisor.

        25.      On August 7, 2017 (Japan time), the Supervisor, pursuant to the powers conferred

upon him under the Civil Rehabilitation Act and the Japanese Court Orders, issued a consent

authorizing (i) the Japanese Debtors to file the Chapter 15 Cases, and (ii) TKJP to serve as the

foreign representative of the Japanese Debtors (the "<u>Supervisor Consent</u>").   The Foreign

Representative, a person within the meaning of section 101(41) of the Bankruptcy Code, was

duly appointed by the Supervisor, under the power granted to TKJP by the Japanese Court, to act

as the Foreign Representative.   <u>See</u> Japanese Proceedings Declaration, <u>Exhibit I</u> (Supervisor

Consent).

### d.       The Foreign Representative Filed Proper Documentation.

        26.      The Chapter 15 Cases were duly and properly commenced as required by

sections 1504 and 1509 of the Bankruptcy Code by the filing of the Chapter 15 Petitions and the

Verified Petition under section 1515(a) of the Bankruptcy Code.   <u>See</u> <u>In re Bear Stearns High-</u>

<u>Grade Structured Credit Strategies Master Fund, Ltd.</u>, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007)

("A case under chapter 15 is commenced by a foreign representative filing a petition for

recognition of a foreign proceeding under section 1515 of the Bankruptcy Code.").

        27.      Next, section 1515(b) of the Bankruptcy Code requires that a chapter 15 petition

be accompanied by one of the following:  (i) a certified copy of the decision commencing the

foreign proceeding and appointing the foreign representative; (ii) a certificate from the foreign

court affirming the existence of the foreign proceeding and the appointed foreign representative;

or (iii) if the above two are not available, then any other evidence satisfying the court that the foreign proceeding has been commenced and the foreign representative has been appointed.  11 U.S.C. § 1515(b).    The Foreign Representative has submitted evidence of the Japanese Proceedings and the appointment of TKJP as the Foreign Representative thereof.  See Japanese Proceedings Declaration, Exhibits B (Commencement Orders) and I (Supervisor Consent).

28.    Finally, a chapter 15 petition must be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative. Id. § 1515(c).  The Foreign Representative has filed concurrently herewith the *Statement of Foreign Representative in Support of Chapter 15 Petition for Recognition of Foreign Proceeding* for each of the Japanese Debtors, which contains a statement identifying the Japanese Proceedings as the only foreign proceedings currently pending with respect to the Japanese Debtors, but also acknowledging that the Foreign Representative intends to file an ancillary proceeding in Canada imminently.

29.    Because the Foreign Representative has satisfied the requirements set forth in section 1515 of the Bankruptcy Code, the Chapter 15 Cases have been properly commenced.

### e.    The Verified Petition Is Consistent with the Purpose of Chapter 15.

30.    One of the stated objectives of chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor."  11 U.S.C. § 1501(a)(3).  In addition, chapter 15 aims to provide "greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protect the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses."  In re Innua Canada Ltd., 2009 WL 1025090, at *3 (Bankr.

D.N.J. Arp. 15, 2009) (quoting <u>In re Oversight & Control Comm'n of Avanzit, S.A.</u>, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008)).

31.     The Chapter 15 Cases have been commenced for the purpose of obtaining the assistance of this Court to ensure the effective and economical administration of the Japanese Proceedings by, among other things, restricting certain creditors from taking certain actions in the United States that would undermine the unified, collective and equitable resolution of the Japanese Debtors' liabilities in the Japanese Proceedings before the Japanese Court.  As such, the Verified Petition is consistent with the purpose of chapter 15 and the cross-border coordination it promotes.

## 2.     The Japanese Proceedings are "Foreign Main Proceedings" Under the Bankruptcy Code.

32.     This Court should recognize the Japanese Proceedings as "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code.  The Bankruptcy Code provides that a foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has its center of main interests.  <u>See</u> 11 U.S.C. § 1517(b)(1).  While the Bankruptcy Code does not define "center of main interests," it provides a presumption that, absent evidence to the contrary, the foreign debtor's registered office is presumed to be the center of the debtor's main interests.  11 U.S.C. § 1516(c); <u>see</u> <u>In re Irish Bank</u>, 2014 WL 9953792, at *16 (holding that a debtor's center of main interests was in Ireland where there was no objection or evidence offered "to rebut the presumption that [the debtor's] 'center of main interests' is in Ireland"); <u>Bear Stearns</u>, 374 B.R. at 127, 130 (noting that presumption that debtor's center of main interests is the place of its registered office may be "rebutted by evidence to the contrary").  Additionally, in <u>Bear Stearns</u>, Judge Lifland stated that:

> [v]arious factors could be relevant to such a determination, including: the location of the debtor's headquarters; the location of

> those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

Id. at 128 (citing In re SPhinX, Ltd., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006)).

33.     Courts also take into consideration the expectations of creditors and other interested third parties, as a company's center of main interests must be "ascertainable to third parties." See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 714 F.3d 127, 136–38 (3d Cir. 2013) (analogizing a company's principal place of business to its center of main interests); In re Millennium Glob. Emerging Credit Master Fund Ltd., 458 B.R. 63, 72 (Bankr. S.D.N.Y. 2011) (same).

34.     Notably, the analysis of a foreign debtor's center of main interests is a flexible one, as "courts do not apply any rigid formula or consistently find one factor dispositive." In re Betcorp Ltd., 400 B.R. at 290.  When applying this totality of the circumstances test, courts "generally equate the center of main interests with the concept of a 'principal place of business' under United States law." See, e.g., In re Millenium Glob., 458 B.R. at 72 (noting that "plain English" meaning of "center of main interests" in American jurisprudence is "principal place of business" and that courts have used such terms "interchangeably").

35.     The center of main interests for the Japanese Debtors' enterprise is clearly in Japan.  Each of the Japanese Debtors is a Japanese corporation with its registered office in Japan. See Verified Petition, ¶ 27; Japanese Proceedings Declaration, ¶ 41.  Thus the Court may presume that the center of main interests for the Japanese Debtors is in Japan under section 1516(b) of the Bankruptcy Code.

36.     Additionally, a multitude of facts support the conclusion arrived at by the presumption provided for under section 1516(b) of the Bankruptcy Code.  The Takata business was started in Japan in 1933, when it began operations as a textile business in Shiga Prefecture, Japan. Verified Petition, ¶ 27.  TKJP was publicly listed in the First Section of the Tokyo Stock Exchange from 2006 until its delisting effective as of July 27, 2017. Id., ¶¶ 12, 27; Japanese Proceedings Declaration, ¶ 41.

37.     Japan is the country where the Japanese Debtors each have their head offices and is the nerve center of the Japanese Debtors' management, business, and operations.  Verified Petition, ¶¶ 27-28; Japanese Proceedings Declaration, ¶ 41.  The following (non-exhaustive) critical functions are performed for the Japanese Debtors in Japan:

> a.  the operations of the Japanese Debtors are ultimately directed from the head office in Japan;
>
> b.  corporate governance for the Japanese Debtors is directed from Japan;
>
> c.  the officers and directors of the Japanese Debtors are based in Japan;
>
> d.  strategic operating decisions and key policy decisions for the Japanese Debtors are made by staff located in Japan;
>
> e.  the Japanese Debtors' human resources functions are administered from Japan;
>
> f.  the Japanese Debtors' information technology and systems are directed from Japan; and
>
> g.  all public company reporting and investor relations for the Japanese Debtors are (or were) directed from Japan.

Verified Petition, ¶ 28; Japanese Proceedings Declaration, ¶ 41.  The Japanese Debtors also operate seven (7) manufacturing plants and one (1) research and development facility in Japan, they have approximately 1,300 employees in Japan, and their principal assets are located in Japan.   Verified Petition, ¶ 28; Japanese Proceedings Declaration, ¶ 42  The Japanese Debtors

do not directly conduct operations outside of Japan nor do they have material assets or employees outside of Japan.  Verified Petition, ¶ 28; Japanese Proceedings Declaration, ¶ 42.

38.     Finally, many of the creditors of the Japanese Debtors are based in Japan. Verified Petition, ¶ 29; Japanese Proceedings Declaration, ¶ 43.  This includes TKJP's bank lenders, holders of its unsecured bonds, many of the vendors and suppliers that Takata utilizes in operating its eight facilities, and the Japanese-based OEMs with whom TKJP transacts. Verified Petition, ¶ 29; Japanese Proceedings Declaration, ¶ 43.

39.     The Japanese Debtors' business contacts are most extensive in Japan, their business dealings are predominantly with Japanese creditors, and Japanese law governs much of their business relationships, as well as their internal affairs.  Accordingly, Japan is thus "ascertainable by third parties" as the Japanese Debtors' center of main interests.

40.     Accordingly, given that the Japanese Proceedings are pending in Japan (the Japanese Debtors' center of main interests), the Japanese Proceedings should be recognized as foreign main proceedings pursuant to section 1517(b)(1) of the Bankruptcy Code.

### 3.     Recognizing the Japanese Proceedings as Foreign Main Proceedings Is Consistent with the Purpose of Chapter 15 and Public Policy.

41.     Recognition of the Japanese Proceedings as foreign main proceedings is also consistent with the provisions of section 1506 of the Bankruptcy Code, which provides that "[n]othing in [chapter 15] prevents the court from refusing to take an action governed by [chapter 15] if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.  The relief requested by the Foreign Representative is not manifestly contrary to, but rather is consistent with, United States public policy.

42.     One of the fundamental goals of the Bankruptcy Code is the centralization of disputes involving the debtor.  See, e.g., In re Ionosphere Clubs, Inc., 922 F.2d 984, 989 (2d Cir.

1990) ("The Bankruptcy Code 'provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . . .'" (internal citations omitted)).  Indeed, as one court has noted, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction."  Cornfeld v. Investors Overseas Servs., Ltd., 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing that Canadian liquidation proceeding would not violate laws or public policy of New York or the United States).

43.     The Japanese Proceedings are similar to cases under chapter 11 of the Bankruptcy Code.  See, e.g., Paragraph ¶ 18, *supra*.  Recognizing the Japanese Proceedings and enjoining certain actions or proceedings with respect to the Japanese Debtors and their assets will assist the orderly administration of the Japanese Proceedings.  Such orderly administration is demonstrably consistent with the public policy of the United States, as embodied in the Bankruptcy Code.  Courts have recognized this in granting recognition to other Japanese reorganization proceedings.[6]  Moreover, Courts have, generally, recognized that "Japanese bankruptcy law is neither contradictory nor 'repugnant' to the laws and policies of this country. Indeed it is consonant with and complementary to the principal features which govern the United States' Bankruptcy Code."  In re Kojima, 177 B.R. 696, 702 (Bankr. D. Colo. 1995).[7]

---

[6]     See, e.g., In re Daiichi Chuo Kisen Kaisha, No. 15-121650 ( Bankr. S.D.N.Y. Nov. 12, 2015) (recognizing a proceeding under the Civil Rehabilitation Act as a "foreign proceeding").  See also In re MtGox Co., Ltd., No. 14-31229 (Bankr. N.D.Tex. Jun. 19, 2014) (recognizing a proceeding under the Bankruptcy Act of Japan as a "foreign proceeding"); In re The Sanko Steamship Co, Ltd., No. 12-12815 (Bankr. S.D.N.Y. Aug. 8, 2012) (recognizing a proceeding under Japan's Corporate Reorganization Act as a "foreign proceeding"); In re Elpida Memory, Inc., No. 12-10948 (Bankr. D. Del. Apr. 24, 2012) (same); In re Japan Airlines Corp., et al., No 10-10198 (Bankr. S.D.N.Y. Feb. 17, 2010) (same).

[7]     The Kojima court noted that elements of Japan's liquidation law were consistent with the Bankruptcy Code in the United States and its policy, including similarities in treatment of executory contracts, pursuit of avoidance actions, notice to creditors requesting them to file claims, approval or rejection of claims, and equal treatment of similarly situated creditors. See Kojima, 177 B.R. at 701-702.

44.     Absent the relief requested, actions may continue against the Japanese Debtors (and new actions may be commenced), which would interfere with the orderly determination of claims in the foreign proceeding and substantially frustrate the efforts to restructure the Takata business.  If creditors unilaterally pursue collection or enforcement efforts, such efforts could diminish the value of the Japanese Debtors' assets and cause significant delay and disruption to the Japanese Debtors' restructuring process.  The purpose of chapter 15 is to prevent such harm.  See 11 U.S.C. § 1501.  Furthermore, this could result in unnecessary enforcement costs or the piecemeal disposition of assets to the detriment of the Japanese Debtors and their stakeholders. Avoiding such potential outcomes through the recognition of the Japanese Proceedings and the enforcement of the Japanese Court Orders in the United States is consistent with United States public policy, and promotes the public policies embedded in the Bankruptcy Code.

45.     Further, recognition of the Japanese Proceedings would be consistent with the purpose of chapter 15 and its predicate, the UNCITRAL Model Law on Cross Border Insolvency.  Section 1501(a) of the Bankruptcy Code provides, in pertinent part, that:

> The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
>
> (1)     cooperation between—
>
> (A)     courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>
> (B)     the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

---

Many of these concepts are also incorporated into the Civil Rehabilitation Act.  *See* Japanese Proceedings Declaration, ¶ 14 (assumption/rejection of contracts); ¶ 18 (avoidance powers); ¶¶ 26-27 (notice of claims submission deadline and claims reconciliation process); and ¶ 28 (equal treatment of rehabilitation creditors required under a plan, unless a less favorable treatment is accepted).

(2)     greater legal certainty for trade and investment;

(3)     fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

(4)     protection and maximization of the value of the debtor's assets; and

(5)     facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501.

46.     The relief requested by the Foreign Representative is consistent with, and critical to effectuate, the objectives of chapter 15.  *First*, recognition of the Japanese Proceedings would foster cooperation between courts in Japan and the United States in respect of the Japanese Debtors' restructuring.  By granting recognition to the Japanese Proceedings and enforcing the Japanese Court Orders in the United States, this Court can effectively assist the Japanese Court in the orderly restructuring of the Japanese Debtors and their global affiliates.  The Japanese Debtors' creditors would generally be enjoined from commencing or continuing actions against the Japanese Debtors and their assets, thereby assisting in the uniform resolution of claims against the Japanese Debtors.

47.     *Second*, recognition of the Japanese Proceedings would promote the fair and efficient administration of a cross-border reorganization procedure that protects the interests of all creditors and interested parties.  By recognizing the Japanese Proceedings and granting the relief requested, the process of resolving claims against the Japanese Debtors would be centralized in Japan.  Claims would be treated in accordance with a plan that provides for equal treatment of holders of allowed general unsecured claims, similar to in a chapter 11 proceeding—and any disputes would be subject to the uniform jurisdiction of one tribunal, the

Japanese Court.  If certain creditors' actions with respect to the Japanese Debtors are not effectively stayed while the Japanese Debtors are pursuing their restructuring, the uniform and orderly voluntary administration of the Japanese Debtors in the Japanese Proceedings will be jeopardized.

> **B.**     **The Provisional Relief Requested by the Foreign Representative Is Within the Scope of Section 1519 of the Bankruptcy Code and Is Appropriate Under the Circumstances.**

48.    Pursuant to the Provisional Relief Motion, the Foreign Representative also seeks entry of an order (in the form annexed to the Provisional Relief Motion, the "Provisional Relief Order") granting the Japanese Debtors certain protections of sections 108 and 362 of the Bankruptcy Code, pursuant to sections 105(a), 1519(a), and 1521(a)(7) of the Bankruptcy Code, on a provisional basis pending entry of the Recognition Order.  Application of these provisions in these Chapter 15 Cases is crucial to prevent irreparable injury to the Japanese Debtors.  As detailed in the Covington Declaration, Japanese Proceedings Declaration and Verified Petition, TKJP has been named as a defendant in more than one hundred actions in various United States courts.  Covington Declaration, ¶ 4; Japanese Proceedings Declaration, ¶ 32; Verified Petition, ¶¶ 33-36.  If such litigation is not immediately stayed pending entry of the Recognition Order, the Japanese Debtors would be required to expend substantial time and resources litigating these actions, distracting them from their reorganization efforts and needlessly depleting assets solely to fund the costs of defending pre-petition litigation matters in a piecemeal and *ad hoc* manner, notwithstanding the fact that such litigation will be stayed in a matter of weeks, should the Court grant recognition of the Japanese Proceedings.   Covington Declaration, ¶¶ 4-9; Japanese Proceedings Declaration, ¶¶ 32, 35, 44; Verified Petition, ¶ 37.

49.    The purpose of the automatic stay is to protect a debtor "from the pressure and harassment of creditors seeking to collect their claims . . . [and to] provide[] breathing space to

permit the debtor to focus on rehabilitation or reorganization." See 3 Collier on Bankr. ¶ 362.03; see also H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) (noting that the stay "gives the debtor a breathing spell from his creditors"). In the absence of the provisional relief sought, the Japanese Debtors will be deprived of this benefit at a time when focusing on the restructuring is most critical. Likewise, without the protections of section 108 of the Bankruptcy Code, certain litigation-related deadlines that are not automatically tolled by the imposition of the automatic stay may lapse pending entry of the Recognition Order, which will prejudice the Japanese Debtors. Accordingly, the relief requested in the Provisional Relief Motion is necessary to protect against the interference with the Japanese Debtors' reorganization efforts.

### 1. The Relief Requested Is Authorized by Sections 1519(a)(1) and (a)(3), 1521(a)(7), and 105(a).

50. Section 1519(a) of the Bankruptcy Code authorizes the Court to grant the Foreign Representative certain specified relief pending the Court's ruling on the Verified Petition:

> (a) From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including —
>
> > (1) staying execution against the debtor's assets;
> >
> > (2) entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative . . . in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and
> >
> > (3) any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519(a).

51. Section 1519(a)(3) of the Bankruptcy Code expressly authorizes the Court to grant to the Foreign Representative any relief referenced in, among other provisions, section 1521(a)(7) of the Bankruptcy Code. Section 1521(a)(7), in turn, permits a court to grant

any relief, with certain limited exceptions not applicable here, that would be available to a

bankruptcy trustee, and therefore authorizes the Court to apply sections 105, 108, and 362 of the

Bankruptcy Code to these Chapter 15 Cases on a provisional basis.

> **2.  The Requested Provisional Relief Is Necessary and Appropriate under the Standards for Injunctive Relief.**

52.     Relief under section 1519 of the Bankruptcy Code is available where the foreign

representative can satisfy the standard for injunctive relief.  In the Third Circuit, the four factors

considered under this standard are: "(1) whether the movant has shown a reasonable probability

of success on the merits; (2) whether the movant will be irreparably injured by denial of the

relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving

party; and (4) whether granting the preliminary relief will be in the public interest."  U.S. v. Bell,

414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing ACLU of N.J. v. Black Horse Pike Reg'l Bd. of

Educ., 84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (en banc)).

53.     The Foreign Representative submits that this standard is satisfied here and that the

Bankruptcy Court should grant the requested provisional relief pursuant to section 1519 of the

Bankruptcy Code and enter the Provisional Relief Order.

> **a.  Substantial Likelihood of Recognition as Foreign Main Proceeding.**

54.     As set forth above, in the Verified Petition and the Japanese Proceedings

Declaration, the Foreign Representative has provided a solid basis for recognition of the

Japanese Proceedings, and has thereby amply demonstrated a reasonable probability that such

proceeding will be recognized as a foreign main proceeding.  Based on the facts that (a) all

proper supporting documentation was filed contemporaneously with the Verified Petition, (b) the

Japanese Proceedings are "foreign proceedings" and the Chapter 15 Cases were properly

commenced by a duly appointed Foreign Representative, and (c) the Japanese Proceedings are

01:22057771.20

23

pending in Japan, the location of the Japanese Debtors' center of main interest, there is a high likelihood that recognition of the Japanese Proceedings as foreign main proceedings will be granted.

**b.      The Japanese Debtors Will Suffer Irreparable Injury if the Provisional Relief Order Is Not Entered.**

55.      The Foreign Representative has commenced these Chapter 15 Cases to request the assistance of this Court in giving effect in the United States to the Japanese Proceedings and to assist the Japanese Court in connection with the proposed global transaction with KSS.  The Foreign Representative believes that staying prepetition litigations and any attempts to execute against the Japanese Debtors' assets in the United States is critical to prevent disruption to the Japanese Proceedings and the global restructuring effort.

56.      The automatic stay in section 362 of the Bankruptcy Code is one of the fundamental protections provided by bankruptcy law.  It halts all litigations, collection efforts, harassment, and foreclosure actions, and provides debtors with necessary breathing room from the financial pressures that caused the bankruptcy filing.  Similarly, the provisional application of section 108 will provide the Japanese Debtors with relief from deadlines that will not be subject to an automatic stay while the request for recognition of the Japanese Proceedings is pending.  The Court has discretion to grant relief under sections 108 and 362 on a provisional basis pursuant to sections 105(a), 1519(a)(3), and 1521(a)(7) of the Bankruptcy Code.

57.      As discussed in the Japanese Proceedings Declaration and the Covington Declaration, TKJP is subject to significant litigations in the United States.  Japanese Proceedings Declaration ¶ 32; Covington Declaration, ¶ 4.  Without the protections of section 362 of the Bankruptcy Code requested in the Provisional Relief Order, the Japanese Debtors face immediate and irreparable harm resulting from having to continue to proceed with the 100-plus

litigations brought by individual creditors, and any other associated collection or enforcement efforts that may emanate from those litigations (or may be brought by other creditors), frustrating the global goal of the Takata entities to preserve value for their creditors and other stakeholders. Covington Declaration, ¶¶ 4, 9; Japanese Proceedings Declaration, ¶ 35, 44.   Further, if the litigations pending against TKJP are not stayed, key personnel of the Japanese Debtors would be distracted from working towards the successful restructuring.   Covington Declaration, ¶¶ 4; Japanese Proceedings Declaration, ¶ 44.

58.     Finally, the immense cost of defending against these litigations would deplete the Japanese Debtors' resources before restructuring plans can be put into place, compromising the very purpose of the Japanese Proceedings and the Chapter 11 Cases.   This is especially true in light of the myriad discovery deadlines and obligations to which the Japanese Debtors are currently subject.   As outlined in the Covington Declaration, through the middle of September, in the airbag system recall litigation alone, TKJP will be faced with: (a) ten (10) responsive pleadings, motions, and other briefs that must be filed; (b) two (2) scheduled depositions; (c) one (1) currently scheduled status conference; and (d) ongoing obligations to respond to discovery requests and produce documents across a wide range of actions.   *See* Covington Declaration, ¶¶ 5-7.   Absent the provisional relief sought herein, TKJP will be required to expend significant financial resources to prepare and submit a substantial number of pleadings, attend various depositions, participate in court ordered conferences, and continue its ongoing discovery responses.   In the first six (6) months of 2017, TKJP has incurred approximately $877,000 per month on average in legal fees to Covington & Burling, LLP ("Covington"), its main litigation counsel dealing with the airbag system-related litigation.   *See* Covington Declaration, ¶ 9. Various other law firms and professionals have also been engaged to defend TKJP in litigation in

the U.S., including the airbag system-related litigation and antitrust matters.  The amount paid to Covington—which is substantial—is representative of, but not the entirety, of what TKJP incurs per month in legal defense costs.  These costs will continue to mount until a stay is granted under section 362 of the Bankruptcy Code.

59.     It is well-recognized that stays of litigations against a debtor prevent a debtor's assets from being "eaten away by creditors' lawsuits . . . before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors."  Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) (quoting Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n, 892 F.2d 575, 577 (7th Cir. 1989)).  This "breathing spell from creditors" provides relief from the "financial pressures that drove [the debtor] into bankruptcy" in the first place.  Id. see also Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.), 365 B.R. 401, 410 (S.D.N.Y. 2007) (enjoining creditor from litigating against Chapter 11 debtor's guarantor because debtor would be forced to aid guarantor's defense, causing "significant burden and distraction of key employees from its restructuring efforts"); In re Elpida Memory, Inc., Case No. 12-10947 (Bankr. D. Del. Mar. 21, 2012) (finding irreparable harm where litigation threatened to deplete the debtor's assets and distract from restructuring efforts in cross-border insolvency proceedings); In re R&G Fin. Corp., 441 B.R. at 411 (Bankr. D.P.R. 2010) (irreparable harm found where "[d]ebtor would be the entity legally and financially responsible in providing not only all the legal costs of [subsidiary's] defense . . . but also its limited managerial resources would also be diverted in assisting towards the preparation for such proceedings").  The relief requested in the Provisional Relief Order is therefore essential to preserving the Japanese Debtors' assets, for the benefit of all stakeholders, and promoting the goals of both the Japanese Proceedings and the global Takata restructuring.

01:22057771.20

### c.   There Will Be Little to No Harm to Parties Subject to the Provisional Relief Order if It Is Entered.

60.   In contrast to the hardships described above, the Japanese Debtors' creditors will not be significantly prejudiced by the requested provisional relief.  First, the relief requested in the Provisional Relief Order merely seeks a brief stay to enable the Court to rule on the Verified Petition.  The Foreign Representative does not seek to deprive any party of a substantive right to assert a claim against the Japanese Debtors.  The Japanese Debtors simply ask this Court to assist the Japanese Court in ensuring that claims are heard in an orderly and fair fashion, within the context of the Japanese Proceedings, rather than allowing parties to race to the courthouse to prosecute their claims.

61.   Further, the hearing on the Recognition Order will likely be held in approximately 30 days from the date hereof.  As a result, the provisional relief requested by the Japanese Debtors will only be in place for a limited time and will have little impact on creditors as a whole if, for some reason that is not anticipated, the Court determines not to grant recognition to the Japanese Proceedings.  Moreover, upon entry of the Recognition Order granting recognition to the Japanese Proceedings as foreign main proceedings, sections 103, 1520, and 1521 of the Bankruptcy Code would implement, among other provisions, the tolling provisions of section 108[8] and the automatic stay of section 362 of the Bankruptcy Code in the Chapter 15 Cases.  Thus, in the event the Recognition Order is entered, the relief provided for by the Provisional

---

[8]   As recognized by the court in *In re Fairfield Sentry Ltd.*, section 108 is automatically available to a foreign representative upon recognition of a foreign proceeding.  452 B.R. 52, 58 & 64 (Bankr. S.D.N.Y 2011) (holding that pursuant to section103(a) of the Bankruptcy Code, the provisions of Chapter 1 of the Bankruptcy Code, including section 108, are automatically applicable upon recognition of proceedings under Chapter 15).  Out of an abundance of caution, to the extent such relief is deemed not to be automatically applicable, the Foreign Representative submits that granting application of section 108 would also be warranted and appropriate under section 1521(a)(7) for the reasons set forth herein.  Accordingly, the proposed Recognition Order expressly states that section 108 of the Bankruptcy Code will apply in these Chapter 15 Cases.

01:22057771.20

Relief Order will be automatically implemented as of right. By contrast, if the relief sought in the Provisional Relief Motion is not granted, the Japanese Debtors are at material risk of immediate and irreparable harm from the impending litigations pending against them and will be subjected to these harms based on actions that will ultimately be stayed upon recognition. *See* Part 2(b)(2), *supra*.

62.      Granting the request for provisional relief will likely benefit the Japanese Debtors' creditor constituency as a whole because it will ensure that the Japanese Debtors' assets are not depleted merely from the process of defending litigations in the early stages of this comprehensive global restructuring transaction. In light of the volume of lawsuits, the possibility of more, and the magnitude of already-pending discovery that the Japanese Debtors face, the expense of undertaking these litigations is significant. Thus, declining to grant the provisional relief requested would hinder the fair administration of Japanese Proceedings and deplete the assets of the Japanese Debtors, to the detriment of all of their stakeholders.

### d.    Granting the Requested Relief Is Manifestly in Line with United States Public Policy.

63.      Granting the provisional relief requested in the Provisional Relief Motion will help advance the purposes of chapter 15 expressly set forth in section 1501 of the Bankruptcy Code. Unique to the Bankruptcy Code, chapter 15 contains a statement of purpose: "The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency," with the express objectives of cooperation between United States courts, trustees, examiners, debtors and debtors in possession, and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the

debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses.  11 U.S.C. § 1501(a)(1)–(5); In re SPhinX, Ltd., 351 B.R. at 112; In re Bear Stearns, 374 B.R. at 126.  The provisional relief requested ensures that the process of resolving claims against the Japanese Debtors is centralized in Japan, with claims ultimately being treated in accordance with a plan providing for equal treatment of creditors.  If the relief in the Provisional Relief Order is not granted, the Japanese Debtors will continue to be exposed to defending against significant litigations, as discussed in detail above.  The continued prosecution of such litigations during the nascent stages of the Japanese Proceedings would interfere with the orderly administration of the Japanese Proceedings, which is exactly the type of harm that chapter 15 is intended to prevent.  See 11 U.S.C. § 1501.

64.    In addition, the requested provisional relief promotes cooperation between foreign jurisdictions and comity among tribunals.  The Supervisor, through the power vested in him by the Japanese Court, has explicitly permitted the Japanese Debtors to seek the assistance of this Court with the administration of the Japanese Proceedings.  Providing the requested assistance would effectuate the public policy considerations underpinning section 1525 of the Bankruptcy Code, which mandates cooperation "to the maximum extent possible" between this Court and a foreign court.  See 11 U.S.C. § 1525.  Accordingly, the provisional relief requested is consistent with the public policy of chapter 15 of the Bankruptcy Code.

65.    Finally, implementing the provisional relief requested comports with the U.S. and Japanese public policies of fair treatment among creditors.  Granting the protections of section 362 to the Japanese Debtors will help to ensure that creditors in Japan and the United States are treated identically.  As stated in the legislative history to section 362 of the Bankruptcy Code:

> The automatic stay also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies

> against the debtor's property.  Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.  Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340-2 (1977).  Similar policy is reflected in Japanese insolvency law**.**

66.    Here, granting the provisional relief providing for the temporary application of sections 362 of the Bankruptcy Code will ensure that all United States-based creditors are treated uniformly and that a United States creditor does not gain an unfair advantage over creditors in Japan through the commencement of collection actions in the United States.  Thus, in accordance with the objective of cross-border cooperation, granting the provisional relief requested will help further important public policy considerations of both the United States and Japan in these Chapter 15 Cases to promote equal treatment of creditors.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Foreign Representative respectfully requests that the Court grant the

relief requested in the Verified Petition, and such other and further relief as is just and proper.


Dated: August 9, 2017                       YOUNG CONAWAY STARGATT & TAYLOR, LLP
Wilmington, Delaware

                                            */s/ Pauline K. Morgan*
                                            Robert S. Brady (No. 2847)
                                            Pauline K. Morgan (No. 3650)
                                            Ryan M. Bartley (No. 4985)
                                            Rodney Square
                                            1000 North King Street
                                            Wilmington, Delaware 19801
                                            Telephone:  (302) 571-6600
                                            Facsimile:  (302) 571-1253

                                            -and-

                                            NAGASHIMA OHNO & TSUNEMATSU
                                            Nobuaki Kobayashi (*pro hac vice admission pending*)
                                            JP Tower
                                            2-7-2 Marunouchi, Chiyoda-ku
                                            Tokyo 100-7036, Japan
                                            Telephone:  +81-3-6889-7000
                                            Facsimile:  +81-3-6889-8000

                                            *Counsel to the Foreign Representative*