## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 15 |
| TAKATA CORPORATION, et al.[1] | Case No. 17-11713 (BLS) |
| Debtors in a foreign proceeding. | (Joint Administration Requested) |

### *AMENDED* DECLARATION OF NOBUAKI KOBAYASHI IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION AND CHAPTER 15 RELIEF

I, Nobuaki Kobayashi, am a member of the firm of Nagashima Ohno & Tsunematsu (the "Firm") and a lawyer admitted to the practice of law in Japan. I declare, under penalty of perjury under the laws of the United States of America, the following to the best of my knowledge and belief:

1.      I have been admitted to the Japanese bar since 1983 and have extensive experience in the following areas of law: restructuring and insolvency, general corporate, mergers and acquisitions, civil and commercial disputes, and risk and crisis management/compliance. I have been a partner with the Firm since 2013. I was a guest lecturer from 2004 to 2007 and a visiting professor from 2007 to 2014 at Chuo Law School. I have also co-authored practice guides on Japanese insolvency law. I am fully familiar with the Japanese insolvency law and with the Japanese Proceeding of the Japanese Debtors.

2.      In August 2015, the Firm was retained by Takata Corporation ("TKJP"), Takata Kyushu Corporation, and Takata Service Corporation (collectively, the "Japanese Debtors" and

---

1   The chapter 15 debtors are Takata Corporation, Takata Kyushu Corporation, and Takata Service Corporation. The registered office for Takata Corporation and Takata Service Corporation is located at 2-12-31 Akasaka, Minato-ku, Tokyo, 107-0052, Japan. The registered office for Takata Kyushu Corporation is located at 2195-4 Oaza Befu, Higashitaku-machi, Taku-shi, Saga, 846-0012, Japan. The Foreign Representative is located at Takata Corporation, 2-3-14 Higashishinagawa, Shinagawa-ku, Tokyo, 140-0002, Japan.

with TKJP's direct and indirect subsidiaries, "Takata") to assist them in connection with a potential restructuring. On June 26, 2017, the Japanese Debtors each commenced civil rehabilitation proceedings (the "Japanese Proceeding") under the Civil Rehabilitation Act of Japan, Act No. 225 of December 22, 1999 (the "Civil Rehabilitation Act") before the 20th Department of the Civil Division of the Tokyo District Court Japan (the "Japanese Court"). As explained below, the Japanese Court, through its appointed Supervisor, Katsuyuki Miyakawa, a Japanese lawyer, has issued a consent empowering TKJP (the "Foreign Representative") to act as the Japanese Debtors' foreign representative in this case under Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code").

3.        I submit this declaration on behalf of the Foreign Representative to describe for the Court the nature of the restructuring process under Japanese law, to advise the Court as to the current status of the Japanese Proceeding, and in support of the following motions and other documents submitted by the Foreign Representative (collectively, the "First Day Pleadings"): (a) the *Verified Petition for Entry of an Order Recognizing Foreign Main Proceedings* (the "Verified Petition"); (b) the *Foreign Representative's Motion for Entry of an Order Granting Limited Provisional Relief* (the "Provisional Relief Motion"); (c) the *Foreign Representative's Motion for an Order Directing the Joint Administration of the Debtors' Chapter 15 Cases* (the "Joint Administration Motion"); and (d) the *Foreign Representative's Motion for Entry of an Order Scheduling the Recognition Hearing and Specifying the Form and Manner of Service* (the "Notice Procedures Motion").

4.        I have worked with the management team of Takata to take the lead on Takata's restructuring initiatives. In February, 2016, I was appointed as one of the five members of the independent advisory committee of legal and financial professionals appointed by TKJP's board

of directors for the purpose of formulating a comprehensive restructuring plan for Takata. In these capacities, I have worked with the management team of Takata on various issues including operational restructuring and financial restructuring and have advised the management team of Takata as needed. As a result, I am generally familiar with the operations, business affairs, assets and liabilities of the Japanese Debtors, as well as the matters that have led to the need for the Japanese Debtors to commence proceedings under the Civil Rehabilitation Act. Except as otherwise indicated, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from the Japanese Debtors' employees or retained advisors, and, if called as a witness, would competently testify thereto.

## I.      The Civil Rehabilitation Act

### A.      Introduction

5.      Under Japanese law, insolvency proceedings can be divided generally into two primary categories. The first category is called a terminal proceeding, which concludes via liquidation and dissolution. This type of proceeding is most commonly used by insolvent corporate debtors and individuals. The second type of proceeding, which includes the Civil Rehabilitation Act and Corporate Reorganization Act, seeks to reorganize and rehabilitate, rather than dissolve, corporations and rehabilitate individual petitioners in financial difficulties with the aim of ensuring the rehabilitation of the debtors' business or economic life.

6.      It is important to note that, under Article 3 of the Civil Rehabilitation Act, foreign national persons or foreign juridical persons have the same status as Japanese national persons or Japanese juridical persons, respectively, under the Civil Rehabilitation Act.

### B.      Commencement of a Rehabilitation Proceeding

7.      A proceeding under the Civil Rehabilitation Act is commenced by filing a petition with a Japanese District Court. Among other things, the debtor is required to include with the

petition a list of all known rehabilitation creditors.  Juridical persons may only file a rehabilitation proceeding if they have business offices or other offices or property in Japan. There are two grounds to commence a rehabilitation proceeding.  First, a debtor or a creditor may file a petition for commencement of rehabilitation proceedings when there is the risk that a fact constituting the grounds for commencement of bankruptcy proceedings (*i.e.*, the debtor is insolvent or generally and continuously unable to pay its debts that are due) would occur to a debtor.  Second, a debtor (but not its creditors) may file a petition for commencement of rehabilitation proceedings when a debtor is unable to pay its debts that are due without causing significant hindrance to the continuation of its business.

8.    If the District Court finds facts constituting grounds for the commencement of rehabilitation proceedings, the District Court will issue an order of commencement of rehabilitation proceedings (a "Commencement Order"), unless (i) expenses for rehabilitation proceeding are not prepaid, (ii) a bankruptcy or special liquidation proceeding is already pending, and it conforms to the general interests of creditors to allow it to proceed, (iii) it is obvious that a rehabilitation plan is unlikely to be prepared, approved or confirmed, or (iv) the filing was made for unjustifiable purposes or otherwise lacked good faith.  The Commencement Order also establishes various deadlines in the case with respect to the claims administration process and the submission of a rehabilitation plan.

9.    Upon entry of the Commencement Order, notice of the text of the Commencement Order and the periods for filing proofs of rehabilitation claims and for conducting an investigation of rehabilitation claims is provided.  First, public notice is made by publication in the Official Gazette, which is an official Japanese government publication issued daily and used in Japan for the promulgation of laws, ordinances, treaties and other national

commitments, the release of reports and materials compiled by various governmental organs, and the publication of pronouncements in accordance with legal provisions. As a general matter, any public notice required in a civil rehabilitation proceeding must be effected through publication in the Official Gazette. Second, notice is mailed to the debtor's known rehabilitation creditors included on the list filed with the debtor's petition. Finally, in certain instances, notice is not required to be provided to subordinated creditors when the District Court finds that there is insufficient property to pay in full senior creditors.

10.    Unlike a petition filed pursuant to chapter 11 of the Bankruptcy Code, filing a civil rehabilitation petition does not have the effect of an automatic stay. Instead, in the interim period between the filing of a petition for civil rehabilitation and the entry of the Commencement Order, the District Court may enter a temporary restraining order that (i) prohibits the debtor from taking certain actions, including payment of pre-petition claims, and (ii) provide a temporary stay of any actions against the debtor and its property until the commencement hearing can be held and the petition adjudicated except for (a) secured creditors, including creditors with general priority claims (as discussed below), and (b) holders of common benefit claims, which are claims incurred that are necessary to the conduct of the civil rehabilitation proceeding  However, as discussed below, the District Court in certain circumstances, may issue an order enjoining the ability of a secured creditor from exercising its rights against collateral.

**C.    Management and Oversight of the Debtor During the Civil Rehabilitation Proceeding**

11.    The Civil Rehabilitation Act permits the management of the debtor to remain in place during the course of a civil rehabilitation proceeding. However, the Civil Rehabilitation Act permits the District Court to order supervision of the debtor by a supervisor, and it is well established that the District Court orders the appointment of a supervisor. When a supervisor is

appointed, the order appointing the supervisor specifies the actions for which the debtor is required to obtain the consent of the supervisor, and this generally includes any actions outside of the ordinary course of the debtor's business, lending or borrowing money, granting security interests, waiving any rights, or releasing any debts owed to the debtor.  A supervisor may also be vested with authority to, among other things, investigate the property and business of the debtor and exercise avoidance powers.  Ultimately, the supervisor is subject to supervision by the District Court.  Similar to cases under chapter 11 of the Bankruptcy Code, if it finds it necessary, a court may also appoint an examiner to investigate the debtor, its assets and affairs, and claim by or against it.  In deciding whether to appoint a supervisor or examiner, the District Court does not require a finding of mismanagement or misuse of the company's assets.

12.    On the other hand, when a debtor administers or disposes of its property in an inappropriate manner or the District Court otherwise finds it particularly necessary for the rehabilitation of a debtor's business, the District Court may order the appointment of a trustee for the debtor's business and property.[2]  Similar to cases under chapter 11 of the Bankruptcy Code, a trustee appointed in a civil rehabilitation proceeding is vested with exclusive authority over the debtor's business and property.

13.    In addition, the Civil Rehabilitation Act allows creditors to form a creditors committee of between three and ten creditors.  If a creditors committee is formed, it may state opinions to the District Court, and the District Court may solicit the committee's opinion, in connection with matters before the District Court in the civil rehabilitation proceeding.  The debtor is obligated to receive the opinion of the committee in connection with the administration

---

[2]    Because the Japanese Debtors remain in possession of their property and no trustee has been appointed for any of them, this declaration, in most instances, does not address the rights provided to trustees in a civil rehabilitation proceeding.

of the debtor's property and business.  The committee is also entitled to receive reporting the debtor is required to make to the District Court and the supervisor and request that the District Court order the debtor to provide certain reporting,

###### D. Operation of the Debtor's Business During the Civil Rehabilitation Proceeding; Sale Transactions for Substantially All Assets

14.    A principal purpose of the Civil Rehabilitation Act is to provide for the rehabilitation of a debtor and continuation of its business as a going concern.  As a result, during a civil rehabilitation proceeding, a debtor has the right to carry out its business and administer and dispose of its property, subject to obtaining any consent of a supervisor appointed by the District Court as required under any order appointing such supervisor and subject to any other limitations imposed on the debtor by the District Court.  The Civil Rehabilitation Act also provides the debtor with the right to choose the cancellation or performance of bilateral contracts which had not been performed by either party at the time of the commencement of the civil rehabilitation proceedings, which is similar in concept to the ability of a debtor in chapter 11 case to assume or reject executory contracts.  In carrying out its business during a civil rehabilitation proceeding, the debtor has the obligation, vis a vis creditors, to exercise that right in a fair and sincere manner.

15.    A debtor may also seek to transfer all or part of its assets in a business transfer pursuant to Articles 42 and 43 of the Civil Rehabilitation Act before the confirmation by the District Court of the rehabilitation plan.  This type of transaction would be similar to a sale of substantially all assets under section 363 of the Bankruptcy Code.  If a business transfer is proposed, the debtor must obtain the District Court's approval.  To grant approval, the District Court must find that the business transfer is necessary for the rehabilitation of the debtor's business, and the District Court will hear opinions of known rehabilitation creditors (but if a

creditor committee is appointed, the District Court is only required (but not constrained) to only hear the committee's opinion), and the opinion of the debtor's labor union prior to granting or denying such a request.  Further, if the debtor is unable to pay its debts in full with its property, the District Court may, upon the petition of the debtor, grant a permission of the business transfer in lieu of the approval of the business transfer by the shareholders meeting that is normally required under Japanese corporate law.  As discussed below, the District Court may forcibly extinguish security interests in connection with a business transfer provided that the secured creditor receives payment for the equivalent value of its collateral.

### E.    Reporting on and Protecting the Debtor's Assets, Liabilities and Affairs

16.    A debtor in a civil rehabilitation proceeding has various reporting obligations under the Civil Rehabilitation Act.  The debtor must, without delay after commencement, appraise the value of its assets and prepare an inventory of assets and balance sheets, each as of the commencement date of the case, and provide a report to the District Court of the same.  The District Court may, upon the petition of a party in interest or on its own, appoint a third party to value the property.  This report is used by the District Court and creditors for, among other things, evaluating a proposed rehabilitation plan.  Further, the debtor must submit a written report to the District Court without delay after commencement detailing the circumstances that led to commencement of the civil rehabilitation proceeding, the past and existing status of the debtor's business and other matters.  Finally, the debtor is obligated to provide the District Court with periodic reporting regarding the status of the administration of its property and business.  In practice, these reports are typically provided monthly.

17.    Additionally, the Civil Rehabilitation Act provides for the convocation of meetings of creditors for various purposes, including to provide creditors certain information regarding the debtor, its property and the administration of the civil rehabilitation proceeding.  A

meeting of creditors can be called by the District Court on its own initiative or in response to a petition from the debtor, a creditors committee, or the holder of a claim in an amount equal to at least one-tenth of the value of total voting claims held by known rehabilitation creditors.

18.     The Civil Rehabilitation Act also vests the supervisor (or a trustee, if appointed) with the right to avoid certain transactions that occurred prior to entry of the Commencement Order—generally where avoidance is found to be in the common interest of the rehabilitation creditors, and parties who may be subject to these avoidance actions are able to avail themselves of certain statutory defenses, including with respect to the provision of equivalent value and good faith/lack of knowledge of prejudice to rehabilitation creditors.    Ultimately, these avoidance powers are subject to proceedings before the Japanese courts where the party subject to an avoidance action may appear and be heard.    These avoidance powers (and certain attendant defenses) are similar in concept to the ability to avoid preferential and fraudulent transfers under the Bankruptcy Code.

### F.     Claims Classification, Administration, and Reconciliation

19.     Basically, the claims against the debtor in a civil rehabilitation proceeding fall into one of three categories—common benefit claims, general priority claims, and rehabilitation claims.    The general treatment of these claims in civil rehabilitation proceedings is discussed below.

20.     <u>Common Benefit and General Priority Claims</u>.    Common Benefit Claims are claims that, generally speaking, are incurred after the commencement of (or in some instances, after filing a petition to commence) civil rehabilitation proceedings and are necessary to, or provide a benefit for, the common interest of rehabilitation creditors.    These include costs of administering the civil rehabilitation proceeding and operating the debtor's business during the proceeding.    These are similar to administrative expense claims under section 503(b) of the

Bankruptcy Code.  General Priority Claims are generally speaking, claims which are given priority status under applicable non-bankruptcy law in Japan, including the payment of taxes and employee related expenses and liabilities.  These are similar to priority claims under section 507 of the Bankruptcy Code.  Common benefit claims and general priority claims are not treated as rehabilitation claims, are not subject to any stay on collection or a requirement to file a proof of claim, and may be paid at any time during a civil rehabilitation Proceeding.

21.    <u>Rehabilitation Claims</u>.    Rehabilitation claims generally include any pre-commencement claim that is not secured or entitled to general priority.  All holders of rehabilitation claims are entitled to participate in a civil rehabilitation proceeding with respect to their rehabilitation claims, provided that they are each subject to the requirement to file proof of their rehabilitation claims.  Once a civil rehabilitation proceeding is commenced, a debtor is prohibited from paying rehabilitation claims except as provided for in a rehabilitation plan (with limited exceptions) and holders of rehabilitation claims are stayed from attempting to enforce and collect upon their claims.  The Civil Rehabilitation Act creates exceptions to the prohibition on payment of rehabilitation claims for (i) claims held by small and medium-sized enterprises whose major trading partner is the debtor and non-payment of the rehabilitation claim would create a significant hardship on the claimholder's business, and (ii) small amount of rehabilitation claims where payment would facilitate, or failure to pay would materially hinder, the rehabilitation of the debtor's business.

22.    <u>Secured Creditors</u>.    In general, the commencement of a civil rehabilitation proceeding does not prevent a secured creditor from realizing upon its collateral even if the claim secured by its collateral falls into the category of rehabilitation claim.  In certain instances, however, the District Court has the ability to stay the exercise of rights in collateral for a

reasonable period if the District Court finds that a stay of such rights conforms to the common interests of rehabilitation creditors and is not likely to cause undue damage to the secured creditor.

23.     Additionally, a court may forcibly extinguish a security interest where the District Court finds that such property is indispensable to the conduct of the debtor's business, but may only do so if the debtor makes payment of the equivalent value of the subject collateral.  In practice, a debtor will typically attempt to negotiate a consensual disposition of the secured creditor's collateral and its security interest prior to seeking an extinguishment order.  In the event that a debtor requests extinguishment of a security interest, holders of all security interests in the subject collateral are provided direct notice of the request to extinguish a security interest and have, among other things, the right to contest the valuation of the collateral.

24.     Another exception to the general rule that secured creditors may freely exercise their rights exists with respect to claims secured by a right of set-off.  Where a rehabilitation creditor's claim is secured by a right of set-off, the rehabilitation creditor must exercise its right of set-off prior to the expiration of the period set for filing proofs of claim, which is set by the Commencement Order.  The Civil Rehabilitation Act also limits the rights to exercise set-off in certain instances specified in the act that, generally, relate to a close proximity between the time that the claim or debt was acquired by the creditor and the time that the debtor experienced its financial difficulties.

25.     Where a holder of a rehabilitation claim secured by collateral is not fully secured and holds a deficiency rehabilitation claim, that holder is entitled to vote on a rehabilitation plan to the extent of the amount of its unsecured, deficiency rehabilitation claim.

26.    <u>Rehabilitation Claims Process</u>.  As discussed above, the Commencement Order establishes a deadline within which holders of rehabilitation claims must submit proof of their claims, and a notice of entry of the Commencement Order, which includes the deadline to submit proofs of claim, is served on the holders of known rehabilitation claim and is also published in the Official Gazette. Based on the standard timeline established by the Tokyo District Court for civil rehabilitation proceedings, this deadline is usually 30 days after entry of the Commencement Order, but it is subject to the discretion of the District Court.  Where a holder of a rehabilitation claim has failed to timely submit a claim but the reason for failure to submit a claim is not attributable to the holder, the claims submission deadline can be extended for that creditor for a period of one month after such reason ceases to exist.  However, proofs of claim may not be submitted under this extended deadline after an order has been entered to submit a proposed rehabilitation plan to creditors for voting.  Only creditors who have timely submitted rehabilitation claims may participate in voting on the rehabilitation plan and receive distributions thereunder.

27.    The Commencement Order also establishes a period within which rehabilitation claims may be investigated.  During this period, the debtor examines the amount and basis of each rehabilitation claim and prepares and submits to the District Court a list identifying whether it approves or objects to the various claims filed by rehabilitation creditors, and their attendant voting rights for the rehabilitation plan (the "<u>Statement of Approval or Disapproval</u>").  Any holder of filed rehabilitation claims may also object to filed rehabilitation claims or the debtor's determination in the Statement of Approval or Disapproval.  Holders of rehabilitation claims that are disapproved by the debtor in the Statement of Approval or Disapproval or to which a holder of a filed rehabilitation claim has objected, must petition to the District Court for an assessment

of their claim, and the District Court will conduct proceedings to determine the proper amount of the claim, wherein the parties denying or disputing the rehabilitation claim and the holder of such claim are heard by the District Court.  If the claim is not denied or disputed in the Statement of Approval or Disapproval or through an objection of a holder of a filed rehabilitation claim, the submitted claim and attendant voting rights will be accepted.

      **G.**    **Rehabilitation Plan**

      28.    The debtor must prepare and submit to the District Court and rehabilitation creditors a rehabilitation plan by the deadline provided under the Commencement Order.  A rehabilitation plan must specify the modifications of any rights of rehabilitation creditors, which can include the reduction and release of debts, the assumption of debt, and extending the time to repay debts by up to 10 years (except where special circumstances exist), and shall specify the treatment of common benefit and general priority claims.  The modification of the rights of rehabilitation creditors must be equal among creditors, unless a creditor has consented to a lesser treatment; provided that subordinated rehabilitation creditors are not entitled to equal treatment with non-subordinated rehabilitation creditors.  The plan may also provide for modifications to the capital stock of the debtor, including provisions related to the issuance of new shares in the debtor.

      29.    Generally a plan must be filed within a court-specified period that takes place after the deadline to submit proofs of claim has been expired.  The debtor is required to submit a plan prior to the expiration of that period, and holders of filed rehabilitation claims also have the ability to submit their own rehabilitation plan in that period.  The District Court will consider any plan submitted to it by the applicable deadline and, if certain threshold requirements for confirmation are met, will refer such plan to rehabilitation creditors to vote on it.  Among other things, the order referring the plan to a vote will specify the manner in which votes will be

solicited, which may include both a creditors meeting and authorization for written submissions, and what notice will be provided to rehabilitation creditors.

30.    The rehabilitation plan must be accepted by (i) the majority of voting right holders who are in attendance at the creditors' meeting or creditors who have voted in advance by completing the necessary form, as authorized by the District Court, and (ii) creditors who hold voting rights that account for not less than one-half of the total amount of voting rights.  If a plan is accepted by the requisite majority of voting rights, the District Court will enter an order confirming the rehabilitation plan unless (i) the rehabilitation proceedings or the plan violates any applicable law, (ii) the plan is unlikely to be performed, (iii) the resolution to accept the plan was adopted by unlawful means, or (iv) the plan is in conflict with the common interest of the rehabilitation creditors.  In the event that there are any rehabilitation creditors whose claim is subordinated by an agreement between the creditor and the debtor, holders of consensually-subordinated and non-subordinated rehabilitation claims are entitled to vote on a plan as separate classes.  If the requisite majorities are not obtained with respect to either the class of consensually-subordinated claims or the class of non-subordinated rehabilitation claims, the District Court may nonetheless enter an order confirming the plan by including a provision in the plan that the holders of claims in the non-consenting class shall receive a recovery equal to what they would have recovered if bankruptcy proceedings (liquidation) has been commenced and otherwise providing for a fair and equitable treatment of the non-consenting class.  An order confirming a rehabilitation plan may immediately be appealed, although the grounds for appeal are limited in certain instances with respect to holders of subordinated rehabilitation claims.

31.     Once the order confirming the rehabilitation plan becomes final and binding, the rehabilitation plan becomes effective.  Thereafter, the debtor pays its debts according to the plan and will be discharged from any remaining pre-commencement obligations.

## II.    The Japanese Proceedings

32.     The Takata entities were forced to pursue their global restructuring as a result of the wide-ranging recall of airbag inflators containing phase-stabilized ammonium nitrate (the "PSAN Inflators") manufactured by Takata that ruptured during deployment of the airbag and the financial difficulties arising out of that recall.  Prior to the time the Japanese Debtors commenced their proceedings under the Civil Rehabilitation Act, TKJP had been named in approximately one hundred (100) personal injury and wrongful death lawsuits relating to the PSAN Inflators in state and federal courts within the United States.  TKJP was also named in a number of putative nationwide class actions in the United States alleging economic damages on behalf of current and former owners, lessors, and automotive recyclers who owned or leased at some time vehicles that utilized PSAN Inflators.  TKJP was also the subject of actions brought by the states of Hawaii and New Mexico and the territory of the U.S. Virgin Islands arising out of the PSAN Inflator recall.  These actions have required TKJP to commit a significant amount of financial and non-financial resources to respond to this litigation.

33.     On June 26, 2017 (Japanese time), the Japanese Debtors filed petitions for commencement of civil rehabilitation proceedings in the Japanese Court (the "Japanese Petitions"). On the same day, the Japanese Court issued orders (the "Supervisor Appointment Orders") appointing Mr. Katsuyuki Miyakawa, a Japanese attorney, as the Japanese Debtors' supervisor (the "Supervisor").  Copies of the Supervisor Appointment Orders, as entered by the Japanese Court, and English translations of them are attached hereto as Exhibit A.

34.     On June 28, 2017, the Japanese Court issued orders (the "<u>Commencement Orders</u>," together  with the Supervisor Appointment Orders, the "<u>Japanese Court Orders</u>")[3] approving the commencement of the Japanese Debtors' proceedings under the Civil Rehabilitation Act and, among other things, established the following deadlines:

     a.    **<u>August 25, 2017</u>**:  Deadline to submit proofs of rehabilitation claims;

     b.    **<u>October 12, 2017</u>**:  Deadline to submit inventory of assets and balance sheets;

     c.    **<u>October 30, 2017</u>**:  Deadline to submit Statement of Approval or Disapproval;

     d.    **<u>November 13, 2017</u>**:  Expiration of the period to investigate proofs of rehabilitation claims; and

     e.    **<u>November 27, 2017</u>**:  Deadline to submit Proposed Rehabilitation Plan.

Provided that such deadlines are subject to change by the Japanese Court as the Japanese Proceedings progress.

35.     Under the Civil Rehabilitation Act, entry of the Commencement Order results in a stay of any act by holders of unsecured claims arising prior to entry of the Commencement Order from attempting to enforce their claims against the Japanese Debtors.  Under Japanese law, the stay that is in place in the Japanese Proceedings extends to all assets wherever located, including assets located in the United States.  Notwithstanding the stay provided for under Japanese law, the litigations in the United States described above have continued to proceed against TKJP following the commencement of the Japanese Proceedings.  Continuing to fund defense of these litigations places a significant financial burden on TKJP and distracts TKJP from focusing on the Takata restructuring and pursuit of the proposed sale transaction with Key Safety Systems, Inc.

---

[3]    Copies of the Commencement Orders, as entered by the Japanese Court, and English translations of them are attached hereto as <u>Exhibit B</u>.

36.    In accordance with Article 35 of the Civil Rehabilitation Act, the Japanese Court provided notice of the entry of the Commencement Order and the deadline to submit rehabilitation proofs of claim to all known rehabilitation creditors identified in the Japanese Debtors' petitions for commencement.  Additionally, to date, TKJP has posted on its website (www.takata.com) Japanese and English versions of, among other things, (i) a press release concerning its global restructuring, (ii) a notice of its petition for commencement of the Japanese Proceedings, (iii) a notice of entry of Commencement Orders in the Japanese Proceedings, (iv) "questions and answers" regarding the filing of proof of a rehabilitation claim, initially posted on July 10, (v) revised "questions and answers," posted on August 7, 2010, and (vi) instructions for filing the proof of rehabilitation claim, posted on August 7, 2010.  Copies of these documents available through the English language version of the Takata web page are included as Exhibits C through H to this Declaration.

37.    Under the terms of the Japanese Court Orders, the Japanese Debtors cannot take any action that is seen as outside of the ordinary course of business, including, but not limited to, initiating or pursuing any legal proceeding, without the consent of the Supervisor.  On August 7, 2017 (Japan time), the Supervisor, pursuant to the powers conferred upon him under the Civil Rehabilitation Act and the Japanese Court Orders, issued a consent authorizing (i) the Japanese Debtors to file the Chapter 15 Cases, and (ii) TKJP to serve as the foreign representative of the Japanese Debtors (the "Supervisor Consent").[4]

38.    Based on my review of the Japanese Orders and the Supervisor Consent and my understanding of applicable Japanese law, I believe that the Japanese Debtors have duly commenced proceedings under the Civil Rehabilitation Act, that TKJP has been duly appointed

---

[4]    Copies of the Supervisor Consent, in the original Japanese and an English translation, are attached hereto as Exhibit I.

to serve as a foreign representative of the Japanese Debtors, and that TKJP has full authority to commence these Chapter 15 Cases and seek recognition and the provisional relief requested in accordance with Japanese law.

39.     I have reviewed and been informed of the "foreign main proceeding" and "foreign representative" requirements necessary for recognition of a proceeding under Chapter 15.  Based upon my experience and understanding of the relevant laws of Japan, it is my belief that the petition filed by the Japanese Debtors seeking the commencement of a proceeding under the Civil Rehabilitation Act qualifies as a foreign judicial proceeding under a law relating to insolvency or the adjustment of debts, which is collective in nature and has the purpose of restructuring the Japanese Debtors' business (rather than liquidating it). The assets and affairs of the Japanese Debtors are currently subject to control or supervision by the Supervisor and, in turn, the Japanese Court, and will remain under such control and supervision during the Japanese Proceedings.

### III.    Matters Related to the Chapter 15 Cases

40.     Based on my role as one of the lead restructuring attorneys for the Japanese Debtors, I am familiar with the assets and liabilities of the Japanese Debtors.  It is my understanding that the Japanese Debtors' primary assets in the United States consist of their ownership of shares in TK Holdings, Inc., a Delaware corporation, and a retainer provided to Young Conaway Stargatt & Taylor, LLP, who is Delaware Bankruptcy Counsel for the Japanese Debtors.  TKS and TK9 do not own any assets located in the United States.

41.     I believe that the center of main interest of the Japanese Debtors is located in Japan.  As an initial matter, each of the Japanese Debtors is a Japanese corporations and each has both its registered office and head office located in Japan.  Second, TKJP was publicly listed on the Tokyo Stock Exchange until July 27, 2017.  Third, the Japanese Debtors perform all of their

critical management, business, and operations functions from Japan, including, without limitation, the following:

a.      the operations of the Japanese Debtors are directed from their respective head offices, each of which are in Japan;

b.      corporate governance for the Japanese Debtors is directed from Japan;

c.      the officers and directors of the Japanese Debtors are based in Japan;

d.      strategic operating decisions and key policy decisions for the Japanese Debtors are made by staff located in Japan;

e.      the Japanese Debtors' human resources functions are administered from Japan;

f.      the Japanese Debtors' information technology and systems are directed from Japan; and

g.      all public company reporting and investor relations for the Japanese Debtors are (or were) directed from Japan.

42.     The Japanese Debtors also operate seven (7) manufacturing plants and one (1) research and development facility in Japan, they have approximately 1,300 employees in Japan, and their principal assets are located in Japan.  The Japanese Debtors do not directly conduct operations outside of Japan, nor do they have material assets, offices, or employees outside of Japan.

43.     Finally, many of the creditors of the Japanese Debtors are based in Japan.  This includes TKJP's bank lenders, holders of its unsecured bonds, many of the vendors and suppliers that Takata utilizes in operating its facilities, and the Japanese-based OEMs with whom TKJP transacts.

44.     As detailed above, TKJP faces significant prepetition litigation against it pending in the United States and which has continued to proceed.   Pursuit of these actions, while Takata is seeking to reorganize, will frustrate the global goal of the Takata entities to preserve value for

their stakeholders, including to ensure that the PSAN Inflator recall can be properly and fully implemented, by distracting Takata management from efforts to save the business. Additionally, TKJP and TKH are named as codefendants in many of these actions, and there is a risk to TKH and its Chapter 11 Cases if actions continue to proceed against its corporate parent TKJP, while TKH is protected by the automatic stay. Granting recognition to the Japanese Proceedings and implementing a provisional stay against United States-based litigation will promote the goals of both the Japanese Proceedings and the global Takata restructuring.

45.     The Foreign Representative has filed a motion to jointly administer the Chapter 15 Cases. Based on the following facts, joint administration is warranted in these cases. The Japanese Debtors are affiliated entities with closely-related financial affairs and business operations, and joint administration will ease the administrative burden on the Court and the parties. The notices, motions, hearings, orders and other pleadings in these cases will likely affect each of the Japanese Debtors. The failure to administer these cases jointly would result in duplicative pleadings filed for each issue and service of substantially identical pleadings. Such unnecessary duplication would impose avoidable expenses on all parties and unnecessarily burden the Clerk of the Court. Further, the supervision of the administrative aspect of these cases by the United States Trustee for the District of Delaware will be simplified through joint administration. Joint administration will permit this Court to use a single docket for the jointly-administered cases and combine notices to certain of the Japanese Debtors' creditors and other parties in interest of the Japanese Debtors. Joint administration will protect parties in interest by ensuring that they will be appropriately apprised of all matters before the Court for each of the Japanese Debtors. Requiring separate administration of the Chapter 15 Cases would subject the Japanese Debtors and potential creditors to substantial administrative burden, and could distract

the Japanese Debtors at a time when pursuing the successful resolution of the Japanese Proceedings is critical. Accordingly, entry of an order granting the relief requested in the Joint Administration Motion is in the best interest of the Japanese Debtors and all parties in interest.

46.     The Foreign Representative has filed the Notice Procedures Motion seeking an order approving the form and manner of service of the notice of (a) the Chapter 15 Petitions, Verified Petition and other related pleadings involving the Chapter 15 Cases, (b) the deadline by which objections to the Foreign Representative's request for entry of a final order granting the relief sought in the petitions for relief (the "Recognition Order") must be received, (c) the hearing for the Court to consider the Chapter 15 Petitions and the Verified Petition, (d) the order (if entered) authorizing the relief requested in the provisional relief motion, and (e) the existence of the Japanese Proceedings and important deadlines in connection therewith. The Japanese Debtors have certain creditors, potential creditors, and other parties in interest that must be provided with, among other things, the proposed final Recognition Order, the deadline to object to the proposed Recognition Order, and the hearing on the proposed Recognition Order. Under the facts and circumstances of the Japanese Proceedings and Chapter 15 Cases, service of the notice in the manner proposed in the Notice Procedures Motion will provide the Japanese Debtors' various parties in interest due and sufficient notice and service of such matters and any associated objection deadline and hearing dates. The proposed form and manner of service of notice outlined in the Notice Procedures Motion serve as an efficient and effective way to provide notice to key parties, and will not burden the Foreign Representative or the Japanese Debtors and their estates with the significant costs associated with copying and mailing various documents filed in these cases to parties whose rights remain unaffected by the Japanese Proceedings and these Chapter 15 Cases. Accordingly, entry of an order granting the relief

01:22064945.10

21

requested in the Notice Procedures Motion is in the best interests of the Japanese Debtors and all parties in interest.

*[Remainder of page intentionally left blank]*

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct to the best of my knowledge, information and belief.

Dated: August 11, 2017
       Tokyo, Japan

_____
Nobuaki Kobayashi

*[Signature Page to Japanese Proceeding Declaration]*

## **Exhibit A**

**Supervisor Appointment Orders**

平成２９年（再）第２０号　再生手続開始申立事件

決　　定

東京都港区赤坂二丁目１２番３１号
　再生債務者　タカタ株式会社
　代表者代表取締役　髙田　重久

主　　文

1　タカタ株式会社について監督委員による監督を命ずる。
2　監督委員として，次の者を選任する。
　　東京都千代田区丸の内３丁目３番１号　新東京ビル２２５区
　　東京丸の内法律事務所
　　弁護士　宮川　勝之
3　監督委員は，再生債務者が，民事再生法１２０条１項に規定する行為によって生ずべき相手方の請求権を共益債権とする旨の裁判所の許可に代わる承認をすることができる。
4　再生債務者が次に掲げる行為をするには，監督委員の同意を得なければならない。ただし，再生計画認可決定があった後は，この限りでない。
　⑴　再生債務者が所有又は占有する財産に係る権利の譲渡，担保権の設定，賃貸その他一切の処分（常務に属する取引に関する場合を除く。）
　⑵　再生債務者の有する債権について譲渡，担保権の設定その他一切の処分（再生債務者による取立てを除く。）
　⑶　財産の譲受け（商品の仕入れその他常務に属する財産の譲受けを除く。）
　⑷　貸付け
　⑸　金銭の借入れ（手形割引を含む。）及び保証
　⑹　債務免除，無償の債務負担行為及び権利の放棄
　⑺　別除権の目的である財産の受戻し
　⑻　事業の維持再生の支援に関する契約及び当該支援をする者の選定業務に関する契約の締結
5　再生債務者は，平成２９年６月２６日以降毎月末日締切りにより，再生債務者の業務及び財産の管理状況についての報告書をその翌月１０日までに当裁判所及び監督委員に提出しなければならない。
　　ただし，再生計画認可決定があった後は，この限りではない。

　　　　　　　平成２９年６月２６日

　　　　　　　東京地方裁判所民事第２０部

　　　　　　　　　　　裁判長裁判官　舘　内　比　佐　志

　　　　　　　　　　　裁判官　上　拂　大　作

　　　　　　　　　　　裁判官　小　西　慶　一

これは謄本である。

　同日同庁

　　裁判所書記官　伊　與　喜克郎

[English Translation]

2017 (sai) No. 20 Petition for Commencement of Rehabilitation Proceedings

# Order

Rehabilitation Debtor: Takata Corporation

Representative Director: Shigehisa Takada

2-12-31 Akasaka, Minato-ku, Tokyo

# Main Text

1. Order is hereby given for Takata Corporation to be supervised by a supervisor.
2. The following person is appointed as the supervisor.
    Attorney Katsuyuki Miyakawa
    Tokyo-Marunouchi Law Offices
    Shin-Tokyo Building, Suite 225, 3-3-1 Marunouchi, Chiyoda-ku, Tokyo
3. The supervisor is authorized to give approval, in lieu of court permission, to the rehabilitation debtor's making counterparty claims arising from any of the rehabilitation debtor's acts provided in Article 120, Paragraph 1 of the Civil Rehabilitation Act common benefit claims.
4. The rehabilitation debtor must obtain consent of the supervisor when conducting the following acts; provided, however, that this shall not apply after the rehabilitation plan is confirmed.
    (1) Transfer of rights, creation of a security interest, lease or any other disposal  with respect to property rehabilitation debtor owns or possesses (excluding any case relating to a transaction that falls within the scope of ordinary business);
    (2) Transfer, creation of a security interest or any other disposal with respect to claims held by the rehabilitation debtor (excluding collection by the rehabilitation debtor);
    (3) Acquisition of property (excluding product procurement or acquisition of other property that falls within the scope of ordinary business);
    (4) Lending;
    (5) Borrowing of money (including discounting of a bill) and guaranteeing;
    (6) Forgiving of debt, gratuitous debt assumption or waiver of a right;
    (7) Redemption of collateral for a right of separate satisfaction; and
    (8) Execution of an agreement concerning support for maintenance and rehabilitation of business and an agreement concerning services for selection of a person providing such support

[English Translation]

5.  From June 26, 2017 onwards, with the last day of each month as the cut-off date, the rehabilitation debtor must submit to the court and the supervisor a report on the state of the administration of the rehabilitation debtor's business and property, by the 10th day of the following month.
Provided, however, that this shall not apply after the rehabilitation plan is confirmed.


June 26, 2017
The 20th Civil Division of the Tokyo District Court    Presiding Judge     Hisashi Tateuchi
Judge                Daisaku Ueharai
Judge                Keiichi Konishi


This is a certified copy.
June 26, 2017
Tokyo District Court
Court Clerk     Yoshikatsuro Iyo

# **Certificate of Translation**

I, Tomohiro Okawa, Attorney-at-Law, hereby certify that this is a true and accurate translation from Japanese to English of the Order to appoint Supervisor issued by the Tokyo District Court, Case No. Heisei 29 (2017) (Sai) 20, Case of Petition for Commencement of Civil Rehabilitation Proceedings.

Date: July 10, 2017

Tomohiro        Okawa

平成２９年（再）第２１号　再生手続開始申立事件

決　　定

佐賀県多久市東多久町大字別府２１９５番地４
再生債務者　タカタ九州株式会社
代表者代表取締役　桂田　治夫

主　　文

1　タカタ九州株式会社について監督委員による監督を命ずる。
2　監督委員として，次の者を選任する。
　　東京都千代田区丸の内３丁目３番１号　新東京ビル２２５区
　　東京丸の内法律事務所
　　弁護士　宮川　勝之
3　監督委員は，再生債務者が，民事再生法１２０条１項に規定する行為によって生ずべき相手方の請求権を共益債権とする旨の裁判所の許可に代わる承認をすることができる。
4　再生債務者が次に掲げる行為をするには，監督委員の同意を得なければならない。ただし，再生計画認可決定があった後は，この限りでない。
　⑴　再生債務者が所有又は占有する財産に係る権利の譲渡，担保権の設定，賃貸その他一切の処分（常務に属する取引に関する場合を除く。）
　⑵　再生債務者の有する債権について譲渡，担保権の設定その他一切の処分（再生債務者による取立てを除く。）
　⑶　財産の譲受け（商品の仕入れその他常務に属する財産の譲受けを除く。）
　⑷　貸付け
　⑸　金銭の借入れ（手形割引を含む。）及び保証
　⑹　債務免除，無償の債務負担行為及び権利の放棄
　⑺　別除権の目的である財産の受戻し
　⑻　事業の維持再生の支援に関する契約及び当該支援をする者の選定業務に関する契約の締結
5　再生債務者は，平成２９年６月２６日以降毎月末日締切りにより，再生債務者の業務及び財産の管理状況についての報告書をその翌月１０日までに当裁判所及び監督委員に提出しなければならない。
　　ただし，再生計画認可決定があった後は，この限りではない。

平成２９年６月２６日
東京地方裁判所民事第２０部

裁判長裁判官　　舘　　内　　比　佐　志

裁判官　　上　　拂　　大　　作

裁判官　　小　　西　　慶　　一

これは正本である。

同日同庁

　　裁判所書記官　　伊　與　喜克郎

[English Translation]

2017 (sai) No. 21 Petition for Commencement of Rehabilitation Proceedings

# Order

Rehabilitation Debtor: Takata Kyushu Corporation

Representative Director: Haruo Katsurada

2195-4, Befu, Higashitaku-machi, Taku, Saga Prefecture

# Main Text

1. Order is hereby given for Takata Kyushu Corporation to be supervised by a supervisor.
2. The following person is appointed as the supervisor.
   Attorney Katsuyuki Miyakawa
   Tokyo-Marunouchi Law Offices
   Shin-Tokyo Building, Suite 225, 3-3-1 Marunouchi, Chiyoda-ku, Tokyo
3. The supervisor is authorized to give approval, in lieu of court permission, to the rehabilitation debtor's making counterparty claims arising from any of the rehabilitation debtor's acts provided in Article 120, Paragraph 1 of the Civil Rehabilitation Act common benefit claims.
4. The rehabilitation debtor must obtain consent of the supervisor when conducting the following acts; provided, however, that this shall not apply after the rehabilitation plan confirmed.
   (1) Transfer of rights, creation of a security interest, lease or any other disposal with respect to property rehabilitation debtor owns or possesses (excluding any case relating to a transaction that falls within the scope of ordinary business);
   (2) Transfer, creation of a security interest or any other disposal with respect to claims held by the rehabilitation debtor (excluding collection by the rehabilitation debtor);
   (3) Acquisition of property (excluding product procurement or acquisition of other property that falls within the scope of ordinary business);
   (4) Lending;
   (5) Borrowing of money (including discounting of a bill) and guaranteeing;
   (6) Forgiving of debt, gratuitous debt assumption or waiver of a right;
   (7) Redemption of collateral for a right of separate satisfaction; and
   (8) Execution of an agreement concerning support for maintenance and rehabilitation of business and an agreement concerning services for selection of a person providing such support

[English Translation]

5.  From June 26, 2017 onwards, with the last day of each month as the cut-off date, the rehabilitation debtor must submit to the court and the supervisor a report on the state of the administration of the rehabilitation debtor's business and property, by the 10th day of the following month.
    Provided, however, that this shall not apply after the rehabilitation plan is confirmed.


June 26, 2017
The 20th Civil Division of the Tokyo District Court
Presiding Judge        Hisashi Tateuchi
Judge                  Daisaku Ueharai
Judge                  Keiichi Konishi


This is a certified copy.
June 26, 2017
Tokyo District Court
Court Clerk     Yoshikatsuro Iyo

## Certificate of Translation

I, Tomohiro Okawa, Attorney-at-Law, hereby certify that this is a true and accurate translation from Japanese to English of the Order to appoint Supervisor issued by the Tokyo District Court, Case No. Heisei 29 (2017) (Sai) 21, Case of Petition for Commencement of Civil Rehabilitation Proceedings.

Date: July 10, 2017

Tomohiro        Okawa

平成２９年（再）第２２号　再生手続開始申立事件

## 決　　定

東京都港区赤坂二丁目１２番３１号
再生債務者　タカタサービス株式会社
代表者代表取締役　川﨑　修

## 主　　文

1　タカタサービス株式会社について監督委員による監督を命ずる。
2　監督委員として，次の者を選任する。
　　東京都千代田区丸の内３丁目３番１号　新東京ビル２２５区
　　東京丸の内法律事務所
　　弁護士　宮川　勝之
3　監督委員は，再生債務者が，民事再生法１２０条１項に規定する行為によって生ずべき相手方の請求権を共益債権とする旨の裁判所の許可に代わる承認をすることができる。
4　再生債務者が次に掲げる行為をするには，監督委員の同意を得なければならない。ただし，再生計画認可決定があった後は，この限りでない。
　⑴　再生債務者が所有又は占有する財産に係る権利の譲渡，担保権の設定，賃貸その他一切の処分（常務に属する取引に関する場合を除く。）
　⑵　再生債務者の有する債権について譲渡，担保権の設定その他一切の処分（再生債務者による取立てを除く。）
　⑶　財産の譲受け（商品の仕入れその他常務に属する財産の譲受けを除く。）
　⑷　貸付け
　⑸　金銭の借入れ（手形割引を含む。）及び保証
　⑹　債務免除，無償の債務負担行為及び権利の放棄
　⑺　別除権の目的である財産の受戻し
　⑻　事業の維持再生の支援に関する契約及び当該支援をする者の選定業務に関する契約の締結
5　再生債務者は，平成２９年６月２６日以降毎月末日締切りにより，再生債務者の業務及び財産の管理状況についての報告書をその翌月１０日までに当裁判所及び監督委員に提出しなければならない。
　　ただし，再生計画認可決定があった後は，この限りではない。

平成２９年６月２６日

東京地方裁判所民事第２０部

裁判長裁判官　　舘　内　比　佐　志

裁判官　　上　拂　大　作

裁判官　　小　西　慶　一

これは正本である。

　　同日同庁

　　裁判所書記官　　伊　與　喜克郎

[English Translation]

2017 (sai) No. 22  Petition for Commencement of Rehabilitation Proceedings

# Order

Rehabilitation Debtor: Takata Service Corporation

Representative Director: Osamu Kawasaki

2-12-31 Akasaka, Minato-ku, Tokyo

# Main Text

1. Order is hereby given for Takata Service Corporation to be supervised by a supervisor.
2. The following person is appointed as the supervisor.
   Attorney Katsuyuki Miyakawa
   Tokyo-Marunouchi Law Offices
   Shin-Tokyo Building, Suite 225, 3-3-1 Marunouchi, Chiyoda-ku, Tokyo
3. The supervisor is authorized to give approval, in lieu of court permission, to the rehabilitation debtor's making counterparty claims arising from any of the rehabilitation debtor's acts provided in Article 120, Paragraph 1 of the Civil Rehabilitation Act common benefit claims.
4. The rehabilitation debtor must obtain consent of the supervisor when conducting the following acts; provided, however, that this shall not apply after the rehabilitation plan is confirmed.
   (1) Transfer of rights, creation of a security interest, lease or any other disposal  with respect to property rehabilitation debtor owns or possesses (excluding any case relating to a transaction that falls within the scope of ordinary business);
   (2) Transfer, creation of a security interest or any other disposal with respect to claims held by the rehabilitation debtor (excluding collection by the rehabilitation debtor);
   (3) Acquisition of property (excluding product procurement or acquisition of other property that falls within the scope of ordinary business);
   (4) Lending;
   (5) Borrowing of money (including discounting of a bill) and guaranteeing;
   (6) Forgiving of debt, gratuitous debt assumption or waiver of a right;
   (7) Redemption of collateral for a right of separate satisfaction; and
   (8) Execution of an agreement concerning support for maintenance and rehabilitation of business and an agreement concerning services for selection of a person providing such support

[English Translation]

5.  From June 26, 2017 onwards, with the last day of each month as the cut-off date, the rehabilitation debtor must submit to the court and the supervisor a report on the state of the administration of the rehabilitation debtor's business and property, by the 10th day of the following month.

    Provided, however, that this shall not apply after the rehabilitation plan is confirmed.


June 26, 2017

The 20th Civil Division of the Tokyo District Court

| | |
|---|---|
| Presiding Judge | Hisashi Tateuchi |
| Judge | Daisaku Ueharai |
| Judge | Keiichi Konishi |


This is a certified copy.

June 26, 2017

Tokyo District Court

Court Clerk    Yoshikatsuro Iyo

# **Certificate of Translation**

I, Tomohiro Okawa, Attorney-at-Law, hereby certify that this is a true and accurate translation from Japanese to English of the Order to appoint Supervisor issued by the Tokyo District Court, Case No. Heisei 29 (2017) (Sai) 22, Case of Petition for Commencement of Civil Rehabilitation Proceedings.

Date: July 10, 2017

Tomohiro        Okawa

## Exhibit B

**Commencement Orders**

平成２９年（再）第２０号 再生手続開始申立事件

決　　　定

東京都港区赤坂二丁目１２番３１号

再生債務者　タカタ株式会社

代表者代表取締役　高田　重久

主　　　文

1　タカタ株式会社について再生手続を開始する。

2　(1)　再生債権の届出期間　平成２９年８月２５日まで

　　(2)　認否書の提出期限　平成２９年１０月３０日

　　(3)　再生債権の一般調査期間
　　　　　平成２９年１１月６日から平成２９年１１月１３日まで

　　(4)　報告書等（民事再生法１２４条，１２５条）の提出期限
　　　　　平成２９年１０月１２日

　　(5)　再生計画案の提出期限　平成２９年１１月２７日

3　　再生債務者が会社分割（再生計画による場合を除く。）をするには，当裁判所
の許可を得なければならない。

理　　　由

　証拠によれば，再生債務者は，民事再生法２１条１項に該当する事実が認められ，
同法２５条各号に該当する事実は認められない。

平成２９年６月２８日午後５時

東京地方裁判所民事第２０部

裁判長裁判官　舘　　内　　比　佐　志

裁判官　上　　拂　　大　　作

裁判官　小　　西　　慶　　一

　これは正本である。

　同日同庁

　　裁判所書記官　伊　與　喜克郎



[English Translation]

2017 (sai) No. 20 Petition for Commencement of Rehabilitation Proceedings

# Order

Rehabilitation Debtor: Takata Corporation
Representative Director: Shigehisa Takada
2-12-31 Akasaka, Minato-ku, Tokyo

# Main Text

1. Rehabilitation proceedings for Takata Corporation shall commence.
2. (1) Period for filing proof of rehabilitation claim:
      Until August 25, 2017
   (2) Deadline for submission of statement of approval or disapproval:
      October 30, 2017
   (3) Ordinary period for investigation of rehabilitation claims:
      From November 6, 2017 until November 13, 2017
   (4) Deadline for submission of reports, etc. (Articles 124 and 125 of the Civil Rehabilitation Act):
      October 12, 2017
   (5) Deadline for submission of rehabilitation plan:
      November 27, 2017
3. The rehabilitation debtor must obtain permission from the court in order to undertake a corporate split (excluding corporate split pursuant to the rehabilitation plan).

# Reasons

According to the evidence, with respect to the rehabilitation debtor, facts falling under Article 21, Paragraph 1 of the Civil Rehabilitation Act are found, while facts falling under the items of Article 25 of the Civil Rehabilitation Act are not found.

June 28, 2017, 5:00 p.m.
The 20th Civil Division of the Tokyo District Court
Presiding Judge        Hisashi Tateuchi
Judge                  Daisaku Ueharai
Judge                  Keiichi Konishi

This is the original copy.
Tokyo District Court
Court Clerk            Yoshikatsuro Iyo

# **Certificate of Translation**

I, Tomohiro Okawa, Attorney-at-Law, hereby certify that this is a true and accurate translation from Japanese to English of the Order to commence rehabilitation proceedings issued by the Tokyo District Court, Case No. Heisei 29 (2017) (Sai) 20, Case of Petition for Commencement of Civil Rehabilitation Proceedings.

Date: July 10, 2017

Tomohiro        Okawa

平成２９年（再）第２１号 再生手続開始申立事件

決　　　定

佐賀県多久市東多久町大字別府２１９５番地４
再生債務者　タカタ九州株式会社

代表者代表取締役　桂田　治夫

主　　　文

1　タカタ九州株式会社について再生手続を開始する。

2　(1)　再生債権の届出期間　平成２９年８月２５日まで

　　(2)　認否書の提出期限　平成２９年１０月３０日

　　(3)　再生債権の一般調査期間
　　　　　平成２９年１１月６日から平成２９年１１月１３日まで

　　(4)　報告書等（民事再生法１２４条，１２５条）の提出期限
　　　　　平成２９年１０月１２日

　　(5)　再生計画案の提出期限　平成２９年１１月２７日

3　　再生債務者が会社分割（再生計画による場合を除く。）をするには，当裁判所
の許可を得なければならない。

理　　　由

　証拠によれば，再生債務者は，民事再生法２１条１項に該当する事実が認められ，
同法２５条各号に該当する事実は認められない。


　　　　平成２９年６月２８日午後５時

　　　　東京地方裁判所民事第２０部

　　　　　　　　裁判長裁判官　舘　内　比　佐　志


　　　　　　　　裁判官　上　拂　大　作


　　　　　　　　裁判官　小　西　慶　一

　　これは正本である。

　　　　同日同庁

　　　　　裁判所書記官　伊　與　喜克郎



[English Translation]

2017 (sai) No. 21 Petition for Commencement of Rehabilitation Proceedings

## Order

Rehabilitation Debtor: Takata Kyushu Corporation
Representative Director: Haruo Katsurada
2195-4 Oaza Befu, Higashitaku-machi, Taku-shi, Saga

## Main Text

1. Rehabilitation proceedings for Takata Kyushu Corporation shall commence.
2.   (1) Period for filing proof of rehabilitation claim:
              Until August 25, 2017
     (2) Deadline for submission of statement of approval or disapproval:
       October 30, 2017
     (3) Ordinary period for investigation of rehabilitation claims:
       From November 6, 2017 until November 13, 2017
     (4) Deadline for submission of reports, etc. (Articles 124 and 125 of the Civil Rehabilitation Act):
       October 12, 2017
     (5) Deadline for submission of rehabilitation plan:
       November 27, 2017
3. The rehabilitation debtor must obtain permission from the court in order to undertake a corporate split (excluding corporate split pursuant to the rehabilitation plan).

## Reasons

According to the evidence, with respect to the rehabilitation debtor, facts falling under Article 21, Paragraph 1 of the Civil Rehabilitation Act are found, while facts falling under the items of Article 25 of the Civil Rehabilitation Act are not found.


June 28, 2017, 5:00 p.m.
The 20th Civil Division of the Tokyo District Court
Presiding Judge    Hisashi Tateuchi
Judge              Daisaku Ueharai
Judge              Keiichi Konishi


This is the original copy.
Tokyo District Court
Court Clerk        Yoshikatsuro Iyo

# **Certificate of Translation**

I, Tomohiro Okawa, Attorney-at-Law, hereby certify that this is a true and accurate translation from Japanese to English of the Order to commence rehabilitation proceedings issued by the Tokyo District Court, Case No. Heisei 29 (2017) (Sai) 21, Case of Petition for Commencement of Civil Rehabilitation Proceedings.

Date: July 10, 2017

Tomohiro        Okawa

平成２９年（再）第２２号　再生手続開始申立事件

決　　定

東京都港区赤坂二丁目１２番３１号

再生債務者　タカタサービス株式会社

代表者代表取締役　川﨑　修

主　　文

1　タカタサービス株式会社について再生手続を開始する。

2　(1)　再生債権の届出期間　平成２９年８月２５日まで

　　(2)　認否書の提出期限　平成２９年１０月３０日

　　(3)　再生債権の一般調査期間
　　　　　　平成２９年１１月６日から平成２９年１１月１３日まで

　　(4)　報告書等（民事再生法１２４条，１２５条）の提出期限
　　　　　　平成２９年１０月１２日

　　(5)　再生計画案の提出期限　平成２９年１１月２７日

3　再生債務者が会社分割（再生計画による場合を除く。）をするには，当裁判所
の許可を得なければならない。

理　　由

　証拠によれば，再生債務者は，民事再生法２１条１項に該当する事実が認められ，
同法２５条各号に該当する事実は認められない。


平成２９年６月２８日午後５時

東京地方裁判所民事第２０部

裁判長裁判官　舘　　内　　比　佐　志

裁判官　上　　拂　　大　　作

裁判官　小　　西　　慶　　一

　これは正本である。

　同日同庁

　　裁判所書記官　伊　與　喜克郎



[English Translation]

2017 (sai) No. 22 Petition for Commencement of Rehabilitation Proceedings

## Order

Rehabilitation Debtor: Takata Service Corporation
Representative Director: Osamu Kawasaki
2-12-31 Akasaka, Minato-ku. Tokyo

## Main Text

1. Rehabilitation proceedings for Takata Service Corporation shall commence.
2.   (1) Period for filing proof of rehabilitation claim:
   > Until August 25, 2017

   (2) Deadline for submission of statement of approval or disapproval:
   October 30, 2017
   (3) Ordinary period for investigation of rehabilitation claims:
   From November 6, 2017 until November 13, 2017
   (4) Deadline for submission of reports, etc. (Articles 124 and 125 of the Civil Rehabilitation Act):
   October 12, 2017
   (5) Deadline for submission of rehabilitation plan:
   November 27, 2017
3. The rehabilitation debtor must obtain permission from the court in order to undertake a corporate split (excluding corporate split pursuant to the rehabilitation plan).

## Reasons

According to the evidence, with respect to the rehabilitation debtor, facts falling under Article 21, Paragraph 1 of the Civil Rehabilitation Act are found, while facts falling under the items of Article 25 of the Civil Rehabilitation Act are not found.

June 28, 2017, 5:00 p.m.
Tokyo District Court, Civil Division, No. 20
Presiding Judge    Hisashi Tateuchi
Judge              Daisaku Ueharai
Judge              Keiichi Konishi

This is the original copy.
Tokyo District Court
Court Clerk        Yoshikatsuro Iyo

# **Certificate of Translation**

I, Tomohiro Okawa, Attorney-at-Law, hereby certify that this is a true and accurate translation from Japanese to English of the Order to commence rehabilitation proceedings issued by the Tokyo District Court, Case No. Heisei 29 (2017) (Sai) 22, Case of Petition for Commencement of Civil Rehabilitation Proceedings.

Date: July 10, 2017

Tomohiro        Okawa

## Exhibit C

**Press Release Regarding Takata Restructuring**



June 26, 2017

<u>News Release</u>

TAKATA  CORPORATION
TSE  7312

**TAKATA CORPORATION AND KEY SAFETY SYSTEMS REACH AGREEMENT IN PRINCIPLE REGARDING SALE OF SUBSTANTIALLY ALL OF TAKATA'S ASSETS**

**TO IMPLEMENT SALE AND ADDRESS COSTS AND LIABILITIES RELATED TO AIRBAG INFLATOR RECALLS, TAKATA CORPORATION AND ITS JAPANESE SUBSIDIARIES COMMENCE PROCEEDINGS UNDER CIVIL REHABILITATION ACT IN JAPAN, AND TK HOLDINGS, INC. AND CERTAIN NORTH AMERICAN AFFILIATES AND SUBSIDIARIES FILE FOR CHAPTER 11 IN U.S.**

*Company Working with Customer Group Composed of 14 Automotive Vehicle Manufacturers to Provide Takata Corporation and TK Holdings with Substantial Accommodations and Liquidity Enhancements to Finance Restructuring*

*Global Operations and Customer Shipments Expected to Continue Without Interruption and Company Will Continue to Produce Replacement Kits for Recalled Vehicles*

*Proceeds from Sale Will Be Used to Meet Requirements of Plea Agreement with U.S. Department of Justice, to Satisfy Administrative Costs and Expenses of the Restructuring, and to Fund Unsecured Creditor Recoveries*

**Tokyo and Sterling Heights, MI – June 26, 2017** – Takata Corporation ("Takata," "TKJP" or the "Company"), a leading global supplier of automotive safety systems such as seat belts, airbags and child seats, and Key Safety Systems ("KSS"), a global leader in mobility safety, headquartered in Sterling Heights, Michigan, USA, announced today that they have reached an agreement in principle to sponsor a restructuring plan for the sale of substantially all of Takata's global assets and operations to KSS for an aggregate purchase price of approximately ¥175 billion ($1.588 billion), subject to certain adjustments at closing.

Under the agreement, KSS will acquire substantially all of Takata's assets, except for certain assets and operations that relate to the Company's manufacturing and sale of phase-stabilized ammonium nitrate (PSAN) airbag inflators (collectively, the "PSAN Assets").    It is expected that Takata's PSAN-related operations will be run by a reorganized Takata following the transaction closing and eventually will be wound down.   Takata expects to continue to meet demand for airbag inflator replacements without interruption.

By combining substantially all of Takata with KSS, the transaction would form a leading global



safety-supply auto parts company with approximately 60,000 employees in 23 countries focused on serving customers and providing superior products and innovation in the rapidly evolving auto safety industry.

Jason Luo, President & CEO of KSS, said: "Takata has deep management talent, a dedicated work force and a long history of exceptional customer service.  Although Takata has been impacted by the global airbag recall, the underlying strength of its skilled employee base, geographic reach, and exceptional steering wheels, seat belts and other safety products has not diminished.  We look forward to finalizing definitive agreements with Takata in the coming weeks, completing the transaction and serving both our new and long-standing customers while investing in the next phase of growth for the new KSS."

Shigehisa Takada, Chairman & CEO of Takata, said: "KSS is the ideal sponsor as we address the costs related to airbag inflator recalls, and an optimal partner to the Company's customers, suppliers and employees.  The combined business would be well positioned for long-term success in the global automotive industry.  Throughout this process, our top priorities have been providing a steady supply of products to our valued customers, including replacement parts for recalls, and a stable home for our exceptional employees.  This agreement would allow that to continue."

The proposed structure for the potential transaction is intended to minimize supply chain disruption concerns for Takata's OEM customers.  The companies anticipate a quick and seamless integration, utilizing the combined strengths of their respective management teams to implement a smooth transition.

KSS will continue to support Takata's customers, suppliers and employees and embrace and honor Takata's Japanese heritage:

- KSS plans to retain substantially all of Takata's employees across the world on comparable employment terms as currently provided.

- KSS has held in-depth discussions with Takata's major OEM customers and has jointly developed a transaction structure and operating plan to facilitate ongoing supply of Takata parts.   This should provide continuity of supply to Takata's customers and confidence to Takata's employees, suppliers and other key stakeholders.

- KSS plans to continue to support and utilize Takata's presence in Japan, and does not intend to shut down any of Takata's manufacturing facilities there.   Furthermore, KSS intends to establish an Asia regional headquarters in Tokyo, which should create new jobs in Japan, and plans to retain Takata's existing non-PSAN supplier contracts to maintain an



uninterrupted supply chain.    KSS also intends to invest in many of Takata's other worldwide manufacturing facilities and technology and R&D centers.

KSS has substantially completed its due diligence, and Takata and KSS are working toward finalizing a definitive agreement in the coming weeks, with an expected transaction close in the first quarter of 2018.

Hideaki Sudo, Chairman of Takata's Steering Committee and Partner at Tokyo Fuji Law office, said, "Since February 2016, the Steering Committee has been working diligently, with assistance from our financial and legal advisors, to develop a path forward for Takata that resolves the recall costs and liabilities on a consensual basis in partnership with Takata's automotive customers.    After a rigorous global process, the Committee has recommended KSS as the best sponsor candidate based on a variety of factors including strategic fit, valuation, and certainty of closing.    We are pleased that Takata has accepted such recommendation. We appreciate the cooperation of the affected automotive manufacturers, who have worked closely with us to devise this restructuring plan, which we firmly believe is in the best interests of the Company and its stakeholders."

## Civil Rehabilitation and Chapter 11 Proceedings

Excluding recall-related costs and liabilities, Takata has continued to produce healthy profits and cash flows from its existing businesses.    Nevertheless, Takata has determined that it is in the best interests of the Company and its stakeholders to address the recall-related issues in conjunction with the proposed sale.    Accordingly, with the expected support of a group of its OEM customers representing more than 80% of Takata's annual sales (the "Customer Group") and KSS as plan sponsor, TKJP and its Japanese subsidiaries have commenced proceedings under the Civil Rehabilitation Act in Japan in the Tokyo District Court (the "Tokyo Court").    In addition, TKJP's main U.S. subsidiary, TK Holdings, Inc. ("TKH"), and certain of its North America affiliates and subsidiaries, filed for Chapter 11 in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court").

The Japanese OEMs have committed to provide Takata with valuable accommodations and liquidity enhancements during the Civil Rehabilitation and the Company is working with the Customer Group on an agreement to do so on a global basis.    Takata intends to use the Civil Rehabilitation Act and Chapter 11 processes to continue to work with its Customer Group and KSS to finalize and execute restructuring support agreements (each an "RSA") that would include comprehensive terms of the restructuring. The RSAs will reflect the commitment of the Customer Group and KSS to the restructuring transactions to be effectuated pursuant to the Chapter 11 Plan of Reorganization (the "Plan") that would be subject to approval of the Delaware Court, as well as the business transfer to be implemented by the Tokyo Court.    The transaction with KSS would also be subject to approval by the Tokyo Court and the Delaware Court, as well as a number of other conditions, including regulatory and other third-party approvals.



It is contemplated that upon the anticipated effective date of the Plan, Takata's global PSAN Assets will be transferred to TKH or one of its subsidiaries, as reorganized under the Plan ("RTK" or "Reorganized Takata"), and all of the PSAN Assets, including PSAN contracts, will be transferred to RTK.   It is expected that RTK will emerge from the Chapter 11 process and operate independently from KSS under the supervision of a Plan administrator and oversight board.   RTK will continue to manufacture PSAN airbag inflators for recalls and the ongoing production needs of Takata's customers.

It is expected that the proceedings under the Civil Rehabilitation Act in Japan and Chapter 11 process in the U.S. will be completed in the first quarter of 2018.

**Proceeds of Sale to Be Used to Address PSAN Related Costs and Liabilities and Capitalize RTK**

As contemplated and as expected to be detailed in the Plan, Takata intends to use the Civil Rehabilitation and Chapter 11 processes to address the costs and liabilities related to airbag inflator recalls, including to fund its remaining obligations under the terms of the plea agreement with the U.S. Department of Justice ("DOJ") that was announced on January 13, 2017 ("the DOJ Plea Agreement") and Consent Orders entered into by Takata with the National Highway Traffic Safety Administration ("NHTSA").

Pursuant to the DOJ Plea Agreement, Takata paid $25 million as a fine to the DOJ and was required to fund two restitution funds: (1) a fund of $125 million to meet liabilities to current or future personal injury claimants and (2) a fund of $850 million to satisfy a portion of the claims of OEM customers who purchased airbags containing PSAN inflators.   Each of the restitution funds will be administered by a special master in accordance with the DOJ Plea Agreement. The $125 million fund for personal injury claimants was funded on March 29, 2017.   Consistent with the DOJ Plea Agreement, the agreements in principle with the Customer Group and the proposed restructuring terms provide for the proceeds of the sale to KSS to be used to fund the $850 million OEM restitution fund.

After setting aside sufficient funds to capitalize RTK following completion of the Chapter 11 process, any remaining sale proceeds after satisfaction of the foregoing obligations and the payment of other claims entitled to priority or payment in full would be used to fund recoveries to holders of general unsecured claims.

Mr. Takada said, "We believe taking these actions in Japan and the U.S. is the best way to address the ongoing costs and liabilities of the airbag inflator issues with certainty and in an organized manner while ensuring that Takata's operations worldwide continue in the ordinary course and without interruption.   During the Civil Rehabilitation proceedings and Chapter 11 process and beyond, Takata remains fully committed to supporting all actions that advance vehicle safety.   We deeply regret the circumstances that have led to this situation, but we are



grateful to have reached a resolution that will allow us to continue to promote the safety of the driving public."

The commencement of Civil Rehabilitation proceedings in Japan and the Chapter 11 filing in the U.S. should have no effect on the ability of drivers to get replacements for recalled Takata airbag inflators free of charge.   Vehicle owners in the U.S. should continue to visit https://www.airbagrecall.com/ for more information on airbag inflator replacements.

## Debtor-in-Possession (DIP) Financing and Customer Accommodations

TKJP has obtained a commitment for up to a ¥25 billion (U.S. $227 million) revolving credit facility debtor-in-possession ("DIP") financing to be provided by Sumitomo Mitsui Banking Corporation.

Additionally, the Japanese OEMs have committed to provide Takata with valuable accommodations and liquidity enhancements during the Civil Rehabilitation and the Company is working with the Customer Group on an agreement to do so on a global basis.   Upon approval by the supervisor appointed by the Tokyo Court and approval by the Delaware Court, the DIP financing in Japan and the accommodations and additional liquidity support from the Customer Group in both Japan and the U.S., along with Takata's cash flow from operations, are expected to provide Takata with sufficient liquidity to continue to operate its business and serve automotive customers globally in the ordinary course and without any significant disruptions.

## Uninterrupted Global Operations

Shigehisa Takada, said "We are committed to ensuring that the restructuring process has as little impact as possible on our employees, customers and suppliers across the world, as well as on drivers whose safety is always our primary focus."

The Company has requested Court approval in the U.S. to continue to pay its employees without interruption and in the same manner as before the filing and expects the request to be granted as part of the Court's "first day" orders.   Also, under the Civil Rehabilitation Act, the salaries of the Company's employees will be statutorily protected.   As a result, the Company's salaried and hourly employees should continue to be paid on the normal schedule. Additionally, there are expected to be no changes to various employee benefit programs.

With the additional liquidity to be provided by the DIP financing in Japan and the accommodations and other liquidity enhancements to be provided globally by the Customer Group, the Company's suppliers can be assured that Takata has the ability to pay its



post-petition obligations on a timely basis and intends to do so as required under the Civil Rehabilitation Act and the U.S. Bankruptcy Code, which grants priority status to goods and services received after the Civil Rehabilitation and Chapter 11 filing date.

Mr. Takada added, "I would like to thank all of our constituents for their continued support during this process.   In particular, I and the rest of our management team recognize that the Company's success is dependent upon our talented and dedicated employees, and we are grateful for their hard work and loyalty.   We are taking these actions to ensure that Takata remains a stable and financially secure employer for thousands of workers in Japan, the U.S. and across the world."

**Information Resources**

Additional information regarding TKJP's restructuring is available at www.takata.com. Additional information regarding TKH's restructuring, including court filings and information about the claims process, is available at www.TKrestructuring.com, or by calling TKH's claims agent, Prime Clerk, at 1-844-822-9229 (Toll free in U.S. and Canada) or 1-347-338-6502 (International).

Nagashima Ohno & Tsunematsu and Weil, Gotshal & Manges LLP are serving as legal counsel to Takata. PricewaterhouseCoopers is serving as financial advisor, and Lazard is serving as investment banker to Takata.

Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel, KPMG is serving as financial advisor, Jefferies LLC is acting as lead financial advisor while UBS Investment Bank also provides financial advice to KSS.

* * * * *

**About Takata**

Takata Corporation is a leading global innovator and supplier of automotive safety systems, including airbag systems, seat belts, steering wheels, electronics, sensors, and child restraint systems, and supplies all major automotive manufacturers in the world. Headquartered in Tokyo, Japan, it operates 56 plants in 20 countries with approximately 46,000 global employees worldwide.

**About Key Safety Systems**

Key Safety Systems (KSS) is a global leader in mobility safety through the system integration



and performance of safety-critical components to the automotive and non-automotive markets serving the active safety, passive safety and specialty product sectors. Through highly specialized design, development, and manufacturing, KSS' technology is featured in more than 300 vehicle models produced by over 60 well-diversified customers worldwide. Since commencing business as a United States start-up, serving Detroit automakers in 1916, KSS continues today with an entrepreneurial and pioneering spirit. KSS is headquartered in Sterling Heights, Michigan, with a global network of more than ~13,000 employees in 32 sales, engineering, and manufacturing facilities. The company has 5 main technical centers located in the key regions of the Americas, Europe and Asia. It is a wholly owned subsidiary of Ningbo Joyson Electronic Corp. (SHA: 600699) ("Joyson Electronics").

**Forward-Looking Statements**

This press release contains, and oral statements made from time to time by our representatives may contain, forward-looking statements that are based upon our current expectations and assumptions concerning future events, which are subject to a number of risks and uncertainties that could cause actual results to differ materially from those anticipated.    The words "expect," "anticipate," "estimate," "forecast," "initiative," "objective," "plan," "goal," "project," "outlook," "priorities," "target," "intend," "evaluate," "pursue," "commence," "seek," "may," "would," "could," "should," "believe," "potential," "continue," or the negative of any of those words or similar expressions is intended to identify forward-looking statements.    All statements contained in this press release, other than statements of historical fact, including, without limitation, statements about our operations, financial condition and liquidity, strategies, business initiatives, prospects, expectations regarding future events and our financial performance and the development of the industry in which we operate, are forward-looking statements that involve certain risks and uncertainties.    While these statements represent Takata's current judgment on what the future may hold, and Takata believes these judgments are based upon reasonable assumptions, these statements are not guarantees of any events or financial results, and the Company's actual results may differ materially.

You should not place undue reliance on the forward-looking statements contained in this press release.    These forward-looking statements speak only as of the date on which the statements were made.    Takata undertakes no obligation to update publicly or otherwise revise any forward-looking statements, except where expressly required by law.

*** ENDS***



**Media Contacts**

***TAKATA***:

**U.S./U.K.**

Jared Levy/Devin Broda/Kelsey Markovich

Sard Verbinnen & Co

212-687-8080

media@takata.com

**Japan**

Dan Underwood

Ashton Consulting

+81 (0) 3 5425-7220

media@takata.com

**Germany/Europe**

Georg Lamerz

Hering Schuppener Consulting

+49.211.430.79-276

Takata-hs@heringschuppener.com

***KEY SAFETY SYSTEMS***:

**Global**

Jean-Luc Blancou

KSS

+1 586 726 4046

blancoj2@keysafetyinc.com

Chad Tendler, Nadia Damouni

Edelman

+1 917 868 6899

+1 646 239 5723

chad.tendler@edelman.com

nadia.damouni@edelman.com

**Japan**

Deborah Hayden

Edelman

+81 3 80-8741-0417

deborah.hayden@edelman.com

## Exhibit D

**Notice of Petition for Commencement of Japanese Proceedings**



June  26,  2017

<u>News Release</u>

TAKATA CORPORATION

TSE 7312

**Notice on Petition**
**for Commencement of Civil Rehabilitation Proceeding, etc.**

Takata Corporation (including its group companies where the content so requires "Takata") hereby announces that, at the meeting of its board of directors held on June 26, 2017, it resolved to file a petition for the commencement of civil rehabilitation proceeding, and filed the same with the Tokyo District Court. The petition was heard on the same date, and the Court immediately issued a temporary restraining order, under which repayments are prohibited, and a supervision order. The Court also appointed Mr. Katsuyuki Miyakawa, Attorney-at-Law, as the Supervisor.

Takata's consolidated subsidiaries, Takata Kyushu Corporation ("Takata Kyushu") and Takata Service Corporation ("Takata Service"), simultaneously filed petitions for the commencement of civil rehabilitation proceedings, and Takata's 12 overseas subsidiaries (including TK Holdings Inc., which is Takata's U.S. subsidiary ("TKH")) resolved to file petitions for the commencement of proceedings under Chapter 11 of the U.S. Bankruptcy Code ("Chapter 11") on June 25, 2017 (East U.S. time) and, on the same day, filed the petitions with the U.S. Bankruptcy Court of Delaware.

As a result, there is a possibility that Takata's claims against Takata Kyushu, Takata Services and TKH and each of Takata's subsidiaries' claims against Takata may not be collected.

Takata sincerely regrets any inconvenience caused by this petition for the creditors as well as the related parties who have been supporting and cooperating with Takata.

Takata is planning to rebuild its business with the support of Key Safety Systems ("KSS"), recommended by the Steering Committee as the sponsor, and will continue discussions with KSS regarding its support. Going forward, under the supervision of the Tokyo District Court and Mr. Miyakawa, Attorney-at-Law, the Supervisor appointed by the Court, Takata will make its best efforts to rebuild its business.

1. Background of, and Reasons for, Petition

The former Takata Corporation ("Former Takata"), a  predecessor of Takata, was established as Takata Kojo Corporation in November 1956 in Hikone-shi, Shiga Prefecture.



Thereafter, its trade name was changed to Takata Corporation, and it commenced the manufacture and sale of airbags in the 1980s. The Former Takata built production and sales bases around the world and developed the market, and resultantly, its airbags gained a large share of the world market. The present Takata Corporation is a company established in January 30, 2004 as Takata Business Planning Corporation, which succeeded to the Former Takata's business related to automotive safety components (such as seat belts and airbags) through a company split on April 1, 2004 and, its name was changed to Takata Corporation on the same date. Takata, as Takata group including its subsidiaries and affiliates, has endeavored to develop the market of automotive safety components, steadily increased its sales, and has become one of the world's leading manufacturers of automotive safety components. In November 2006, Takata's stock was listed on the first section of the Tokyo Stock Exchange.

However, from around 2007 onward, malfunctions related to inflators (i.e., parts that inflate airbags by generating inflating gas) in airbags Takata had manufactured started to be detected in cases such as where an inflator ruptured and a death accident was caused by metal fragments from the ruptured inflator. Therefore, in and after November 2008, automakers repeatedly implemented recalls of their models of vehicles equipped with airbags manufactured by Takata group in order to investigate the existence and cause of the malfunctions, and they gradually expanded the scope of vehicles for recall. Although Takata Corporation itself is not manufacturing inflators, since Takata is manufacturing airbags with inflators purchased from TKH, Takata's U.S. subsidiary, and selling the airbags to Japanese automakers, the models of vehicles equipped with airbags that Takata manufactured are also being recalled.

Takata group may become responsible for a certain proportion of the recall expenses that each automaker is required to pay, and if Takata becomes responsible, Takata may be required to incur significant amount of debt, which could cause a credit crunch and a deterioration in its cash flow. Furthermore, TKH agreed to the Consent Order with the National Highway Traffic Safety Administration (NHTSA) in November 2015 regarding the series of recalls relating to airbag products, whereby TKH assumed the obligation to pay a civil penalty of 70 million US dollars. In addition, Takata agreed to enter into a plea agreement with the U.S. Department of Justice ("DOJ") concerning the issues related to the integrity of Takata's reporting to automakers on the inflator performance verification tests, and a 25 million US dollar (equivalent to approximately 2.9 billion yen) fine was imposed on Takata under such plea agreement. In addition, Takata assumed an obligation to contribute 125 million US dollars to the restitution fund to compensate for damages to the victims of malfunctioning inflators manufactured by Takata group, and assumed an obligation to contribute 850 million US dollars (equivalent to approximately 97.8 billion yen) to compensate for the damage that each automaker incurred. Furthermore, in connection



with the aforementioned malfunctioning airbags that Takata manufactured, many lawsuits claiming remedies such as compensation for damages have been filed against Takata, and depending on the outcome of these lawsuits, Takata may assume additional obligations.

In order to respond to the financial and operational issues concerning the above airbag inflator, Takata established a Steering Committee in February 2016 for the purpose of formulating a comprehensive restructuring plan for Takata. Based on the view that seeking an out-of-court restructuring would contribute to the stable supply of Takata's products, the said Committee exchanged views on broad subjects with the stakeholders, including major creditors, and engaged in activities toward formulating a restructuring plan, including sponsor selection process, while adjusting various interests. During the course of the sponsor selection process, the Steering Committee retained a financial adviser and contacted business companies and funds globally.   As a result, considering, among others, the amount of financial support and stability of the proceeding, the Steering Committee recommended KSS as the potential sponsor for Takata.

However, despite multiple discussions with stakeholders, including major creditors, and potential sponsors, Takata was unable to reach an agreement for an out-of-court restructuring plan and, therefore, if Takata was to leave the circumstance as they are and continue the business by itself, Takata would face a cash shortage soon. Moreover, if this cash shortage were to materialize, the stable supply of Takata's products would be threatened, its corporate value would significantly fall, and there would be no way to be supported by any sponsorship or aim to rebuild its business by cooperating with various automakers and financial institutions, etc., and the people concerned, such as the creditors, would be further inconvenienced. Under such background, today, Takata was advised by the Steering Committee that it was reasonable for Takata to adopt, as its restructuring scheme, civil rehabilitation proceedings in Japan and Chapter 11 proceedings in the U.S. Therefore, in consideration of the above advice from the Steering Committee, Takata resolved to file petitions for the commencement of civil rehabilitation proceedings and entered into an agreement in principle with KSS regarding sale of substantially all of its assets, with the aim of rebuilding its business under the civil rehabilitation proceedings through accommodation from major automotive makers and DIP financing from financial institutions.

Both Takata Kyushu and Takata Services are wholly-owned subsidiaries of Takata. While they collect substantial amount of accounts due from Takata every month in connection with their business, payments will cease as a result of Takata's filing of the petition for the commencement of civil rehabilitation proceeding. If they continue their business as it stands, their cash shortage will be inevitable. Therefore, it was decided to file petitions for the commencement of civil rehabilitation proceedings for Takata Kyushu and Takata Service as well, with the aim of rebuilding their businesses under the civil



rehabilitation proceedings.

In addition, 12 overseas subsidiaries, including TKH, also incurred a large amount of indemnification and/or damages claim and credit deterioration due to the occurrence, etc. of death accidents caused by malfunctions related to the inflators above.   Under such circumstances, it was decided that such 12 overseas subsidiaries, including TKH, would also pursue business reorganization through the Chapter 11 proceedings by receiving the assistance of KSS.

Please refer to the "TAKATA CORPORATION AND KEY SAFETY SYSTEMS REACH AGREEMENT IN PRINCIPLE REGARDING SALE OF SUBSTANTIALLY ALL OF TAKATA'S ASSETS" dated today with respect to the details of the agreement in principle with KSS.


2. Aggregate Amounts of Indebtedness (as of March 31, 2017)

| | |
|---|---|
| Takata Corporation: | Approximately 182,633 million yen |
| Takata Kyushu K.K.: | Approximately 5,507 million yen |
| Takata Service Corporation: | Approximately 194 million yen |
| TK Holdings Inc.: | Approximately 1,642,589,908 US dollars |
| Takata Americas: | Approximately 0 US dollars |
| TK Finance, LLC: | Approximately 14,516 US dollars |
| TK China, LLC: | Approximately 3,508,034 US dollars |
| Takata Protection Systems Inc.: | Approximately 67,267 US dollars |
| Interiors in Flight Inc.: | Approximately 2,954,190 US dollars |
| TK Mexico Inc.: | Approximately 918,064 US dollars |
| TK Mexico LLC: | Approximately 29,970 US dollars |
| TK Holdings de Mexico S. de R.L. de C.V.: | Approximately 28,725,708 US dollars |
| Industrias Irvin de Mexico, S.A. de C.V.: | Approximately 678,059 US dollars |
| Takata de Mexico, S.A. de C.V.: | Approximately 18,490,657 US dollars |
| Strosshe-Mex, S. de R.L. de C.V.: | Approximately 41,636,954 US dollars |

(In the future, the foregoing aggregate amounts of indebtedness are likely to increase during rehabilitation proceedings.)


3. Valuations of Subsidiaries Stock

The book values of the shares of Takata Kyushu and Takata Service held by Takata are 70 million yen and 40 million yen, respectively, as of March 31, 2017.   In addition, the book values of the shares of TKH and Takata Americas held by Takata are 1 yen and 15,896,811,600 yen, respectively, as of March 31, 2017. Takata holds the shares of the other overseas affiliates indirectly through TKH or Takata Americas.



4. Claim Uncollectibility

(1) Takata

    As a result of the filings by Takata Kyushu, Takata Services and TKH of the petitions for the commencement of civil rehabilitation proceedings and rehabilitation proceedings under Chapter 11, there is now a possibility that Takata's claims below against these subsidiaries may not be collected.   The types and amounts of Takata's claims against these subsidiaries are as follows:

(i) Takata Kyushu

(As of March 31, 2017)

| Type of claim | Amount | Ratio against consolidated net assets* |
|---|---|---|
| Accounts due | 3,867  million  yen | 11.66% |
| Accounts receivables | 0.047  million  yen | 0.00% |
| Total | 3,867  million  yen | 11.66% |

* Since such claims are between the group companies, they are considered to have no effect on consolidated net assets.

(ii) Takata Services

(As of March 31, 2017)

| Type of claim | Amount | Ratio against consolidated net assets* |
|---|---|---|
| Accounts due | 13  million  yen | 0.03% |
| Accounts receivables | 25  million  yen | 0.07% |
| Total | 38  million  yen | 0.11% |

* Since such claims are between the group companies, they are considered to have no effect on consolidated net assets.

(iii) TKH

(As of March 31, 2017)

| Type of claim | Amount | Ratio against consolidated net assets* |
|---|---|---|
| Accounts due | 42,082  million  yen | 126.97% |
| Short-term loans | 8,975  million  yen | 27.08% |
| Accounts receivables | 3,969  million  yen | 11.97% |
| Total | 55,027  million  yen | 166.03% |

* Since such claims are between the group companies, they are considered to have no effect on



consolidated net assets.

(2) Takata's subsidiaries

As a result of the filing by Takata of the petition for the commencement of civil rehabilitation proceeding, there is now a possibility that the following claims of its subsidiaries against Takata may not be collected.    The types and amounts of subsidiaries' claims against Takata are as follows:

Types and amounts of claims against Takata

(As of March 31, 2017)

| Type of claim | Amount | Ratio against consolidated net assets (Note) |
|---|---|---|
| Loan receivables | 12,874 million yen | 38.84% |
| Accrued Interest | 2 million yen | 0.00% |
| Accounts receivables | 11,077 million yen | 33.42% |
| Accounts due | 3,652 million yen | 11.02% |
| Total | 27,607 million yen | 83.30% |

* Since such claims are between the group companies, they are considered to have no effect on consolidated net assets.

5. Future Outlook

Under the supervision of the Tokyo District Court and Mr. Katsuyuki Miyakawa, Attorney-at Law, who was appointed by the Tokyo District Court as the Supervisor, or under the U.S. Bankruptcy Court of Delaware, Takata will conduct, among others, the sale of substantially all of Takata's assets to KSS or its affiliates and, together with its subsidiaries that simultaneously filed petitions, will devote all its effort to restructure its businesses with the support from KSS.

6. Application for Examination of the Restructuring Plan, Etc., Provided in the Securities Listing Rule of the Tokyo Stock Exchange

Takata does not intend to file an application for the examination of the restructuring plan, etc., provided in Article 605, Paragraph 1 of the Securities Listing Regulation of the Tokyo Stock Exchange. Accordingly, the shares of Takata have been designated as "shares to be delisted" by the Tokyo Stock Exchange as of today, and in accordance with the rules of the Tokyo Stock Exchange, the shares will be officially delisted after a set period of time.

*** END ***



(Reference)

【Takata Corporation】

1. Outline of Petition

| (1) Date of Petition | June 26, 2017 |
|---|---|
| (2) Competent Court | The Tokyo District Court |
| (3) Name of Case | Heisei 29 (Sai) No. 20 |
| (4) Filing Counsels for Petitioner | Nagashima Ohno & Tsunematsu<br>JP Tower, 2-7-2 Marunouchi, Chiyoda-ku, Tokyo 100-7036, Japan<br>(Place of service)<br>    Nobuaki Kobayashi, Attorney-at-Law<br>    Yosuke Kanegae, Attorney-at-Law<br>    Akihisa Shiozaki, Attorney-at-Law<br>    Takashi Suzuki, Attorney-at-Law<br>    Tomohiro Okawa, Attorney-at-Law<br>    Aoyagi Toru, Attorney-at-Law<br>    Ryuhei Itaya, Attorney-at-Law<br>    Hiroki Takano, Attorney-at-Law<br>    Yuto Tanaka, Attorney-at-Law<br>    Hiromu Yagi, Attorney-at-Law<br><br>Tokyo Fuji Law Office<br>KDX Kojimachi Building 4F, 3-3 Kojimachi, Chiyoda-ku, Tokyo 102-0083, Japan<br>    Hideaki Sudo, Attorney-at-Law<br>    Manabu Adachi, Attorney-at-Law<br><br>Tokiwa-Law Office<br>KDDI Otemachi Bldg. 19F, 1-8-1 Otemachi, Chiyoda-ku, Tokyo 100-0004, Japan,<br>    Katsumi Aya, Attorney-at-Law<br>    Masato Asanuma, Attorney-at-Law<br><br>Baker & McKenzie<br>Ark Hills Sengokuyama Mori Tower 28F, 1-9-10 Roppongi, Minato-ku, Tokyo 106-0032, Japan<br>    Hiroshi Kasuya, Attorney-at-Law<br>    Junya Suzuki, Attorney-at-Law |



2. Current Status of Company

| (1) Trade Name | Takata Corporation | |
|---|---|---|
| (2) Location | 2-12-31 Akasaka, Minato-ku, Tokyo | |
| (3) Executives | Representative Director     Shigehisa Takada | |
| | Director     Tsutomu Yoshida | |
| | Director     Yoichiro Nomura | |
| | Director     Hiroshi Shimizu | |
| | Director     Motoo Yougai | |
| | Director     Hiroshi Nishioka | |
| | Corporate Auditor     Mitsugu Hamamura | |
| | Corporate Auditor     Kazuo Morita | |
| | Corporate Auditor (External)   Hironobu Yasuda | |
| | Corporate Auditor (External)   Masanori Sato | |
| (4) Main Business | Manufacture and sale of seat belts, airbags and steering wheels | |
| (5) Stated Capital | 41,862,008,250 yen | |
| (6) Date of Establishment | January 30, 2004 | |
| (7) Major Shareholders and their Stock Ownership Ratio (as of March 31, 2017) | Name or trade name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
| | TKJ Co., Ltd | 52.1 |
| | Shigehisa Takada | 2.9 |
| | Akiko Takada | 2.1 |
| | Sumitomo Mitsui Banking Corporation | 1.6 |
| | ST K.K. | 1.5 |
| | Honda Motor Co., Ltd. | 1.2 |
| | Kazuhiko Takada | 1.0 |
| | Setsuko Miyazawa | 0.9 |
| | Japan Trustee Services Bank, Ltd. (trust account 5) | 0.8 |
| | The Bank of Tokyo-Mitsubishi UFJ, Ltd. | 0.8 |



| | The Norinchukin Bank | 0.8 |
|---|---|---|
| | Sumitomo Mitsui Trust Bank, Limited | 0.8 |
| (8) Total Number of Shareholders | 25,113 (as of March 31, 2017) | |
| (9) Status of Shares | (Type of stock issued and number of issued shares of stock)<br>Common stock 83,161,700 shares | |
| (10) Number of Employees | 45,792 (consolidated)<br>As of March 31, 2017 | |
| (11) Labor Union | UA ZENSEN Takata Workers Union | |
| (12) Aggregate Amount of Indebtedness | Approximately 182,633 million yen (as of March 31, 2017) | |

(13) Operating Results and Financial Status of the Last Three (3) Fiscal Years (consolidated)

| Accounting Period | Fiscal year ended March 31, 2015 | Fiscal year ended March 31, 2016 | Fiscal year ended March 31, 2017 |
|---|---|---|---|
| Net Assets (millions of yen) | 148,766 | 124,586 | 33,142 |
| Total Assets (millions of yen) | 475,435 | 443,036 | 430,954 |
| Net Assets per share (yen) | 1,770.34 | 1,464.67 | 363.74 |
| Net Sales (millions of yen) | 642,810 | 718,003 | 662,533 |
| Operating Profit or Loss (millions of yen) | 32,958 | 42,133 | 38,958 |
| Ordinary Profit or Loss (millions of yen) | 40,657 | 35,206 | 42,999 |
| Net income or Loss (millions of yen) | △29,558 | △13,075 | △79,588 |
| Net Income or Loss per Share (yen) | △355.43 | △157.24 | △957.04 |
| Dividend per Share (yen) | 0.00 | 0.00 | 0.00 |



【Takata Kyushu Corporation】

1. Outline of Petition

| (1) Date of Petition | June 26, 2017 |
|---|---|
| (2) Competent Court | The Tokyo District Court |
| (3) Name of Case | Heisei 29 (Sai) No. 21 |
| (4) Filing Counsels for Petitioner | Nagashima Ohno & Tsunematsu<br><br>Tokyo Office JP Tower, 2-7-2 Marunouchi, Chiyoda-ku, Tokyo 100-7036, Japan (Place of service)<br><br>Nobuaki Kobayashi, Attorney-at-Law<br>Yosuke Kanegae, Attorney-at-Law<br>Akihisa Shiozaki, Attorney-at-Law<br>Takashi Suzuki, Attorney-at-Law<br>Tomohiro Okawa, Attorney-at-Law<br>Aoyagi Toru, Attorney-at-Law<br>Ryuhei Itaya, Attorney-at-Law<br>Hiroki Takano, Attorney-at-Law<br>Yuto Tanaka, Attorney-at-Law<br>Hiromu Yagi, Attorney-at-Law<br><br>Tokyo Fuji Law Office<br>KDX Kojimachi Building 4F, 3-3 Kojimachi, Chiyoda-ku, Tokyo 102-0083, Japan<br>Hideaki Sudo, Attorney-at-Law<br>Manabu Adachi, Attorney-at-Law<br><br>Tokiwa-Law Office<br>KDDI Otemachi Bldg. 19F, 1-8-1 Otemachi, Chiyoda-ku, Tokyo 100-0004, Japan,<br>Katsumi Aya, Attorney-at-Law<br>Masato Asanuma, Attorney-at-Law<br><br>Baker & McKenzie<br>Ark Hills Sengokuyama Mori Tower 28F, 1-9-10 Roppongi, Minato-ku, Tokyo 106-0032, Japan<br>Hiroshi Kasuya, Attorney-at-Law<br>Junya Suzuki, Attorney-at-Law |

2. Current Status of Company



| (1) Trade Name | Takata Kyushu Corporation | | |
|---|---|---|---|
| (2) Location | 2195-4, Beppu, Higasitaku-machi, Taku, Saga | | |
| (3) Representative | Representative Director, Haruo Katsurada | | |
| (4) Main Business | Manufacture of seat belts and air bags | | |
| (5) Stated Capital | 70,000,000 yen | | |
| (6) Date of Establishment | May 20, 1991 | | |
| (7) Major shareholders and their stock ownership ratio (as of March 31, 2017) | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) | |
| | Takata Corporation | 100 | |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of Takata Kyushu Corporation. | |
| | Personal relationship | The Director, Wataru Yamamoto and the Director, Makoto Ueno are employees of Takata Corporation. | |
| | Business relationship | Takata Kyushu Corporation manufactures seat belts and airbags of Takata Corporation. | |
| | Conditions applicable to the related party | Takata Kyushu Corporation is the consolidated subsidiary of Takata Corporation. | |
| (9) Operating Results and Financial Status of the Last Three (3) Years (nonconsolidated) | | | |
| Accounting Period | Fiscal year ended March 31, 2015 | Fiscal year ended March 31, 2016 | Fiscal year ended March 31, 2017 |
| Net Assets (millions of yen) | 4,842 | 5,098 | 5,617 |
| Total Assets (millions of yen) | 8,570 | 9,882 | 11,125 |
| Net Sales (millions of yen) | 35,556 | 39,238 | 46,914 |
| Operating Profit or Loss | 282 | 715 | 1,388 |



| (millions of yen) | | | |
|---|---|---|---|
| Ordinary Profit or Loss (millions of yen) | 302 | 730 | 1,440 |
| Net income or Loss (millions of yen) | 196 | 466 | 938 |
| Net income or Loss per share (yen) | 140,270.09 | 333,176.55 | 670,507.07 |



【Takata Service Corporation】

1. Outline of Petition

| (1) Date of Petition | June 26, 2017 |
|---|---|
| (2) Competent Court | The Tokyo District Court |
| (3) Name of Case | Heisei 29 (Sai) No. 22 |
| (4) Filing Counsels for Petitioner | Nagashima Ohno & Tsunematsu<br>Tokyo Office JP Tower, 2-7-2 Marunouchi, Chiyoda-ku, Tokyo 100-7036, Japan (Place of service)<br>    Nobuaki Kobayashi, Attorney-at-Law<br>    Yosuke Kanegae, Attorney-at-Law<br>    Akihisa Shiozaki, Attorney-at-Law<br>    Takashi Suzuki, Attorney-at-Law<br>    Tomohiro Okawa, Attorney-at-Law<br>    Aoyagi Toru, Attorney-at-Law<br>    Ryuhei Itaya, Attorney-at-Law<br>    Hiroki Takano, Attorney-at-Law<br>    Yuto Tanaka, Attorney-at-Law<br>    Hiromu Yagi, Attorney-at-Law<br><br>Tokyo Fuji Law Office<br>KDX Kojimachi Building 4F, 3-3 Kojimachi, Chiyoda-ku, Tokyo 102-0083, Japan<br>    Hideaki Sudo, Attorney-at-Law<br>    Manabu Adachi, Attorney-at-Law<br><br>Tokiwa-Law Office<br>KDDI Otemachi Bldg. 19F, 1-8-1 Otemachi, Chiyoda-ku, Tokyo 100-0004, Japan,<br>    Katsumi Aya, Attorney-at-Law<br>    Masato Asanuma, Attorney-at-Law<br><br>Baker & McKenzie<br>Ark Hills Sengokuyama Mori Tower 28F, 1-9-10 Roppongi, Minato-ku, Tokyo 106-0032, Japan<br>    Hiroshi Kasuya, Attorney-at-Law<br>    Junya Suzuki, Attorney-at-Law |

2. Current Status of Company



| (1) Trade Name | Takata Service Corporation | | |
|---|---|---|---|
| (2) Location | 2-12-31 Akasaka, Minato-ku, Tokyo | | |
| (3) Representative | Representative Director, Osamu Kawasaki | | |
| (4) Main Business | Manufacture and sale of seat belts and air bags component | | |
| (5) Stated Capital | 30,000,000 yen | | |
| (6) Date of Establishment | December 5, 1979 | | |
| (7) Major shareholders and their stock ownership ratio (as of March 31, 2017) | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) | |
| | Takata Corporation | 100 | |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of Takata Service Corporation. | |
| | Personal relationship | The Director, Osamu Kawasaki, the Director, Satoshi Kiyota, and the Director, Wataru Yamamoto are employees of Takata Corporation. | |
| | Business relationship | After Takata Corporation had ceased mass production of airbag and seat belt products, Takata Corporation transferred production and sales of the relevant products to Takata Service Corporation. | |
| | Conditions applicable to the related party | Takata Service Corporation is the consolidated subsidiary of Takata Corporation. | |
| (9) Operating Results and Financial Status of the Last Three (3) Years (nonconsolidated) | | | |
| Accounting Period | Fiscal year ended March 31, 2015 | Fiscal year ended March 31, 2016 | Fiscal year ended March 31, 2017 |
| Net Assets (millions of yen) | 939 | 713 | 779 |



| | | | |
|---|---|---|---|
| Total Assets (millions of yen) | 1,159 | 922 | 973 |
| Net Sales(millions of yen) | 915 | 1,098 | 1,048 |
| Operating Profit or Loss (millions of yen) | 335 | 484 | 465 |
| Ordinary Profit or Loss (millions of yen) | 336 | 485 | 466 |
| Net income or Loss (millions of yen) | 210 | 314 | 305 |
| Net income or Loss per share (yen) | 3,514.19 | 5,244.29 | 5,089.04 |



【Current Status of TKH and other 11 Overseas Subsidiaries】

| (1) Trade Name | TK Holdings Inc. | | |
|---|---|---|---|
| (2) Location | 2500 Takata Drive, Auburn Hills, MI 48326 | | |
| (3) Representative | Secretary, Ken Bowling | | |
| (4) Main Business | Automotive Safety System Supplier | | |
| (5) Stated Capital | 569,717,175 (US dollar) | | |
| (6) Date of Establishment | November 13, 1989 | | |
| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) | |
| | Takata Americas | 99.6 | |
| | Takata Corporation | 0.4 | |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of TK Holdings Inc. (including indirect ownership). | |
| | Personal relationship | Some of Takata Corporation's employees are seconded to TK Holdings Inc. | |
| | Business relationship | TK Holdings Inc. manufactures airbag inflators of Takata Corporation. | |
| | Conditions applicable to the related party | TK Holdings Inc. is the consolidated subsidiary of Takata Corporation. | |
| (9) Operating Results and Financial Status of the Last Three (3) Years (nonconsolidated) | | | |
| Accounting Period | Fiscal year ended March 31, 2015 | Fiscal year ended March 31, 2016 | Fiscal year ended March 31, 2017 |
| Net Assets ( (US dollar)) | 25,796,843 | △263,461,115 | △570,538,045 |
| Total Assets  (US dollar) | 957,735,827 | 1,016,852,491 | 1,072,051,863 |
| Net Sales (US dollar) | 1,752,450,977 | 1,969,739,757 | 1,999,083,367 |



| | | | |
|---|---|---|---|
| Operating Profit or Loss    (US dollar) | 178,204 | 100,478,326 | 23,341,281 |
| Ordinary Profit or Loss (US dollar) | 43,517,517 | 83,329,241 | 124,954,318 |
| Net income or Loss (US dollar) | △433,565,909 | △243,391,336 | △374,458,368 |



| (1) Trade Name | Takata Americas | |
|---|---|---|
| (2) Location | 2500 Takata Drive, Auburn Hills, MI 48326 | |
| (3) Representative | Secretary, Ken Bowling | |
| (4) Main Business | Holding company | |
| (5) Stated Capital | 456,331,510 (US dollar) | |
| (6) Date of Establishment | March 12, 2003 | |
| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
| | Takata International Finance B.V. | 68.3 |
| | Takata Corporation | 19.2 |
| | European Automotive Systems Limited | 12.5 |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of Takata Americas (including indirect ownership). |
| | Personal relationship | N/A |
| | Business relationship | N/A |
| | Conditions applicable to the related party | Takata Americas is the consolidated subsidiary of Takata Corporation. |



| (1) Trade Name | TK Finance, LLC | |
|---|---|---|
| (2) Location | 2500 Takata Drive, Auburn Hills, MI 48326 | |
| (3) Representative | Secretary, Ken Bowling | |
| (4) Main Business | Holding company | |
| (5) Stated Capital | 28,934,270 (US dollar) | |
| (6) Date of Establishment | May 9, 2003 | |
| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
| | Takata Americas | 100 |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of TK Finance, LLC (including indirect ownership). |
| | Personal relationship | N/A |
| | Business relationship | N/A |
| | Conditions applicable to the related party | TK Finance, LLC is the consolidated subsidiary of Takata Corporation. |



| (1) Trade Name | TK China, LLC | |
|---|---|---|
| (2) Location | 2500 Takata Drive, Auburn Hills, MI 48326 | |
| (3) Representative | Secretary, Ken Bowling | |
| (4) Main Business | Holding company | |
| (5) Stated Capital | 36,734,270 (US dollar) | |
| (6) Date of Establishment | May 9, 2003 | |
| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
| | TK Finance, LLC | 100 |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of TK China, LLC (including indirect ownership). |
| | Personal relationship | N/A |
| | Business relationship | N/A |
| | Conditions applicable to the related party | TK China, LLC is the consolidated subsidiary of Takata Corporation. |



| (1) Trade Name | Takata Protection Systems Inc. | |
|---|---|---|
| (2) Location | 2500 Takata Drive, Auburn Hills, MI 48326 | |
| (3) Representative | Secretary, Ken Bowling | |
| (4) Main Business | Automotive safety system supplier | |
| (5) Stated Capital | 9,110,270 (US dollar) | |
| (6) Date of Establishment | November 8, 1993 | |
| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
| | TKH | 100 |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of Takata Protection Systems Inc.    (including indirect ownership). |
| | Personal relationship | N/A |
| | Business relationship | N/A |
| | Conditions applicable to the related party | Takata Protection Systems Inc. is the consolidated subsidiary of Takata Corporation. |



| (1) Trade Name | Interiors in Flight Inc. | |
|---|---|---|
| (2) Location | 2500 Takata Drive, Auburn Hills, MI 48326 | |
| (3) Representative | Secretary, Ken Bowling | |
| (4) Main Business | Manufacturer of aircraft interiors | |
| (5) Stated Capital | 2,600,000 (US dollar) | |
| (6) Date of Establishment | July 19, 2013 | |
| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
| | Takata Protection Systems Inc. | 100 |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of Interiors in Flight Inc (including indirect ownership). |
| | Personal relationship | N/A |
| | Business relationship | N/A |
| | Conditions applicable to the related party | Interiors in Flight Inc. is the consolidated subsidiary of Takata Corporation. |



| (1) Trade Name | TK Mexico Inc. | |
|---|---|---|
| (2) Location | 2500 Takata Drive, Auburn Hills, MI 48326 | |
| (3) Representative | Secretary, Ken Bowling | |
| (4) Main Business | Holding company | |
| (5) Stated Capital | 73,500,010 (US dollar) | |
| (6) Date of Establishment | August 6, 2004 | |
| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
| | TKH | 100 |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporationowns all of the issued shares of TK Mexico Inc. (including indirect ownership). |
| | Personal relationship | N/A |
| | Business relationship | N/A |
| | Conditions applicable to the related party | TK Mexico Inc. is the consolidated subsidiary of Takata Corporation. |



| (1) Trade Name | TK Mexico LLC | |
|---|---|---|
| (2) Location | 2500 Takata Drive, Auburn Hills, MI 48326 | |
| (3) Representative | Secretary, Ken Bowling | |
| (4) Main Business | Holding company | |
| (5) Stated Capital | 236,261 (US dollar) | |
| (6) Date of Establishment | August 6, 2004 | |
| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
| | TK Mexico Inc. | 100 |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of TK Mexico LLC (including indirect ownership). |
| | Personal relationship | N/A |
| | Business relationship | N/A |
| | Conditions applicable to the related party | TK Mexico LLC. is the consolidated subsidiary of Takata Corporation. |



| (1) Trade Name | TK Holdings de Mexico S. de R.L. de C.V. | |
|---|---|---|
| (2) Location | Carretera Santa Rosa Km 3.5 Interior A, Apodaca, Nuevo León 66600 | |
| (3) Representative | Manager, Manuel Gomez | |
| (4) Main Business | Holding Company | |
| (5) Stated Capital | 949,231,060 (US dollar) | |
| (6) Date of Establishment | February 6, 2004 | |
| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
| | TK Mexico Inc. | 99.9 |
| | TK Mexico LLC | 0.1 |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of TK Holdings de Mexico S. de R.L. de C.V. (including indirect ownership). |
| | Personal relationship | N/A |
| | Business relationship | N/A |
| | Conditions applicable to the related party | TK Holdings de Mexico S. de R.L. de C.V. is the consolidated subsidiary of Takata Corporation. |



| | |
|---|---|
| (1) Trade Name | Industrias Irvin de Mexico, S.A. de C.V. |
| (2) Location | Carretera Presa la Amistad Km 7 Parque Industrial, Ciudad Acuña, Coahuila 26220 |
| (3) Representative | Treasurer, Carlos Alberto Valdez Andrade |
| (4) Main Business | Automotive safety system supplier |
| (5) Stated Capital | 116,011,203 (US dollar) |
| (6) Date of Establishment | October 9, 1985 |

| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
|---|---|---|
| | TK Holdings de Mexico, S. de R.L. de C.V. | 99.9 |
| | TK Mexico LLC | 0.1 |

| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of Industrias Irvin de Mexico, S.A. de C.V. (including indirect ownership). |
|---|---|---|
| | Personal relationship | N/A |
| | Business relationship | N/A |
| | Conditions applicable to the related party | Industrias Irvin de Mexico, S.A. de C.V. is the consolidated subsidiary of Takata Corporation. |



| (1) Trade Name | Takata de Mexico, S.A. de C.V. | |
|---|---|---|
| (2) Location | Carretera Pressa la Amistad Km 7, Parque Industrial, Ciudad Acuna, Coahuila 26220 | |
| (3) Representative | Treasurer, Carlos Alberto Valdez Andrade | |
| (4) Main Business | Automotive safety system supplier | |
| (5) Stated Capital | 580,477,727 (US dollar) | |
| (6) Date of Establishment | March 6, 1994 | |
| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
| | TK Holdings de Mexico, S. de R.L. de C.V. | 99.9 |
| | TK Mexico LLC | 0.1 |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of Takata de Mexico, S.A. de C.V. (including indirect ownership). |
| | Personal relationship | N/A |
| | Business relationship | N/A |
| | Conditions applicable to the related party | Takata de Mexico, S.A. de C.V. is the consolidated subsidiary of Takata Corporation. |



| (1) Trade Name | Strosshe-Mex, S. de R.L. de C.V. | |
|---|---|---|
| (2) Location | Carretera Libre Santa Rosa Km 3.5 Interior B, Apodaca, Nuevo León 66600 | |
| (3) Representative | Treasurer, Carlos Alberto Valdez Andrade | |
| (4) Main Business | Trading sales company | |
| (5) Stated Capital | 21,867,040 (US dollar) | |
| (6) Date of Establishment | July 2, 2004 | |
| (7) Major shareholders and their stock ownership ratio | Name | Percentage of shares held by a shareholder to the total issued and outstanding shares of the Company (%) |
| | TK Holdings de Mexico, S. de R.L. de C.V. | 99.9 |
| | TK Mexico LLC | 0.1 |
| (8) Relationship with Takata Corporation | Capital relationship | Takata Corporation owns all of the issued shares of Strosshe-Mex, S. de R.L. de C.V. (including indirect ownership). |
| | Personal relationship | N/A |
| | Business relationship | N/A |
| | Conditions applicable to the related party | Strosshe-Mex, S. de R.L. de C.V. is the consolidated subsidiary of Takata Corporation. |

## Exhibit E

**Notice of Entry of Commencement Orders**



June 28, 2017

<u>News Release</u>

TAKATA CORPORATION

TSE 7312

**Notice of Orders of Commencement for Civil Rehabilitation Proceedings**

Takata Corporation ("Takata") hereby announces that, today the Tokyo District Court granted orders for commencement of civil rehabilitation proceedings to Takata, Takata Kyushu Corporation, and Takata Service Corporation on their petitions filed and heard on June 26, 2017, for commencement of such proceedings (for details on these petitions refer to "Notice on Petition for Commencement of Civil Rehabilitation Proceeding, etc." issued by Takata on June 26, 2017).

1.  Order of Commencement of Civil Rehabilitation Proceedings

    Takata Corporation          Court case name: Heisei 29 (Sai) No. 20, Civil Rehabilitation matter

    Takata Kyushu Corporation    Court case name: Heisei 29 (Sai) No. 21, Civil Rehabilitation matter

    Takata Service Corporation    Court case name: Heisei 29 (Sai) No. 22, Civil Rehabilitation matter

2.  Schedule of civil rehabilitation proceedings

  (1). Filing period for rehabilitation claims          August 25, 2017

  (2). Submission deadline for inventory of
      assets and balance sheets
      (Civil Rehabilitation Act, Article 124 and 125)    October 12, 2017

  (3). Submission deadline for the statement
      of approval or disapproval          October 30, 2017

  (4). Period to examine Proofs          From November 6, 2017
      of rehabilitation claims, etc.          to November 13, 2017

  (5). Submission deadline for proposed rehabilitation plan  November 27, 2017

Note: This schedule is subject to change as the civil rehabilitation proceedings progress.

Under the supervision of the Tokyo District Court, the Supervisor, and the U.S. Bankruptcy Court of Delaware, Takata, together with its subsidiaries that simultaneously filed petitions, will make every effort to restructure its businesses.

*** ENDS***

## **Exhibit F**

**Initial (July 10) "Questions and Answers"**



July 10, 2017

Takata Corporation

Takata Kyushu Co., Ltd.

Takata Service Co., Ltd.

## Q&A on Proof of Rehabilitation Claim

Q1:  I have received a proof of claim form from the court.    What should I do?

A1:  If you hold claims against the Rehabilitation Debtor that arose from causes that occurred prior to the date of commencement of the civil rehabilitation (i.e., prior to June 28, 2017), please file a proof of claim.

Your proof of claim should be received no later than August 25, 2017.   For details on matters such as how to fill out the proof of claim form and points of note, please refer to the enclosed Instruction for Filing Proof of Rehabilitation Claim or the sample proof of claim form.

As is mentioned in the answer to Q2, you do not need to file a proof of claim if the court has given its approval for exceptional repayment of your claim.

Q2:  I understand that my claims will be paid in accordance with a court approval. Do I need to file a proof of claim?

A2:  If you have been separately contacted about your claim(s) for which court approval is given for exceptional repayment and the entire sum of your rehabilitation claim will be paid in accordance with previously existing terms and conditions, you do not need to file a proof of your rehabilitation claim.

Q3:  What will happen if I do not file a proof of claim?

A3:  If you do not file a proof of claim, you may be unable to participate in the proceedings; therefore, please file a proof of claim no later than August 25, 2017.

Q4:  How should I seal and stamp the proof of claim form?

A4:  For individuals, unregistered seals are acceptable. For corporations, the representatives seal is required to be affixed thereon.    Please refer to the notations on the sample enclosed with the proof of claim documents.

Q5:   May I give my signature instead of seal and stamp?   I do not have any seal or stamp.

A5:   If you are not Japanese, and do not have your seal and stamp, you may give your signature instead of seal and stamp.

Q6:   May I use English or other language instead of Japanese to fill in my proof of claim?   I cannot read or write Japanese.

A6:   Unfortunately, the proof of claim form must be filled in in Japanese language only, except your address and name (including corporate names).

Q7:   Should I file only one proof of claim?

A7:   Please return two copies of the proof of claim form in the envelope enclosed for their returnô one for the Court, and the other for the Rehabilitation Debtor.

Q8:   Do I need to file a proof of claim even for a claim of a small amount?

A8:   Yes, you need to do so, even if the claim is small.   As was mentioned above, if you do not file a proof of claim, you may be unable to participate in the proceedings.

Q9:   I am a creditor, but I have not received a notice from the Court. Also, I am not listed on the list of creditors.   What should I do?

A9:   If you contact us with your name and mailing address, arrangements will be made for the notice to be sent to you.

Q10: I have no claims for which I need to file a proof of claim.   Further, based on the foregoing information, I do not need to file a proof of claim, yet I received a proof of claim form.   What should I do?

A10: Proof of claim forms were sent to those who might possibly have claims against Takata, so it is possible that parties who are not creditors were contacted.   You do not need to file a proof of claim if you have no claim, or are a party to whom the Rehabilitation Debtor will make payments in accordance with a court approval.

End of document

**<u>Exhibit G</u>**

**Revised (August 7) "Questions and Answers"**



July 10, 2017
Updated on August 7, 2017
*Updated parts are underlined

Takata Corporation

Takata Kyushu Co., Ltd.

Takata Service Co., Ltd.

**Q&A on Proof of Rehabilitation Claim**

Q1:   I have received a proof of claim form from the court.   What should I do?

A1:   If you hold claims against the Rehabilitation Debtor that arose from causes that occurred prior to the date of commencement of the civil rehabilitation (i.e., prior to June 28, 2017), please file a proof of claim.
Your proof of claim should be received no later than August 25, 2017.   For details on matters such as how to fill out the proof of claim form and points of note, please refer to the enclosed Instruction for Filing Proof of Rehabilitation Claim or the sample proof of claim form.
As is mentioned in the answer to Q2, you do not need to file a proof of claim if the court has given its approval for exceptional repayment of your claim.

Q2:   I understand that my claims will be paid in accordance with a court approval. Do I need to file a proof of claim?

A2:   If you have been separately contacted about your claim(s) for which court approval is given for exceptional repayment and the entire sum of your rehabilitation claim will be paid in accordance with previously existing terms and conditions, you do not need to file a proof of your rehabilitation claim.

Q3:   What will happen if I do not file a proof of claim?

A3:   If you do not file a proof of claim, you may be unable to participate in the proceedings; therefore, please file a proof of claim no later than August 25, 2017.

Q4:   How should I seal and stamp the proof of claim form?

A4:   For individuals, unregistered seals are acceptable. For corporations, the representative's seal is required to be affixed thereon.   Please refer to the notations on the sample enclosed with the proof of claim documents.

Q5:   May I give my signature instead of seal and stamp?   I do not have any seal or stamp.

A5:   If you are not Japanese, and do not have your seal and stamp, you may give your signature instead of seal and stamp.

Q6:   May I use English or other language instead of Japanese to fill in my proof of claim?   I cannot read or write Japanese.

A6:   Unfortunately, the proof of claim form must be filled in in Japanese language only, except your address and name (including corporate names).

Q7:   Should I file only one proof of claim?

A7:   Please return two copies of the proof of claim form in the envelope enclosed for their return—one for the Court, and the other for the Rehabilitation Debtor.

Q8:   Do I need to file a proof of claim even for a claim of a small amount?

A8:   Yes, you need to do so, even if the claim is small.   As was mentioned above, if you do not file a proof of claim, you may be unable to participate in the proceedings.

Q9:   I am a creditor, but I have not received a notice from the Court. Also, I am not listed on the list of creditors.   What should I do?

A9:   If you contact us with your name and mailing address, arrangements will be made for the notice to be sent to you.

Q10: I have no claims for which I need to file a proof of claim.   Further, based on the foregoing information, I do not need to file a proof of claim, yet I received a proof of claim form.   What should I do?

A10: Proof of claim forms were sent to those who might possibly have claims against Takata, so it is possible that parties who are not creditors were contacted.   You do not need to file a proof of claim if you have no claim, or are a party to whom the Rehabilitation Debtor will make payments in accordance with a court approval.

2

Q11: May I use English or other language instead of Japanese for the Power of Attorney?

A11: Unfortunately, the Power of Attorney is required to be written in Japanese.   You can find our SAMPLE POWER OF ATTORNEY with English translations on it at the following URL.
[URL]【http://www.takata.com/pdf/170809Power_of_Attorney.pdf】

Q12: I have received a proof of claim form from the court recently, but it is difficult for me to file a proof of claim by the deadline, August 25, 2017.   May I file a proof of claim after August 25, 2017?

A12: Proof of Claims filed after the deadline are acceptable, if the delays in filings are caused by reasons that are not attributable to the creditors.   Considering the circumstances of foreign creditors, Takata will make best efforts to ask the court to accept proof of claims from foreign creditors that are received by October 10, 2017.

End of document

## **Exhibit H**

**Instruction for Filing Rehabilitation Claims**

平成２９年（再）第２０号 再生手続開始申立事件

# 再 生 手 続 開 始 通 知 書

平成２９年６月２８日

東京地方裁判所民事第２０部

裁判所書記官　伊　與　喜克郎

　当裁判所は，平成２９年６月２８日午後５時，次の者について，下記事項のとおり再生手続を開始したので通知する。（申立日　平成２９年６月２６日）

　　東京都港区赤坂二丁目１２番３１号

　　再生債務者　タカタ株式会社

　　代表者代表取締役　高田　重久

　　再生債務者代理人弁護士　小林　信明

記

１　再生手続開始決定の主文

　　タカタ株式会社に対して再生手続を開始する。

２　再生債権の届出期間

　　平成２９年８月２５日まで

３　債権の一般調査期間

　　平成２９年１１月６日から平成２９年１１月１３日まで

４　再生計画案の提出期間

　　平成２９年１１月２７日まで

５　監督委員

　　東京都千代田区丸の内３丁目３番１号　新東京ビル２２５区

　　東京丸の内法律事務所

　　弁護士　宮川　勝之

事 件 番 号　平成２９年（再）第２０号
再生債務者　タカタ株式会社

# 再生債権届出に関する説明書

　上記債務者に対し，再生手続開始の決定がありましたので，再生手続開始決定通知書及び再生債権届出書用紙をお送りします。

　債権の届出をする方は，下記の説明事項及び同封の記入例をご覧のうえ，届出期限までに同封の返信用封筒でお送りください。

## 《届出期限》　平成２９年８月２５日　必着

---

**【届出及び認否の結果に関しての問い合わせ先】**

　東京都品川区東品川二丁目３番１４号　東京フロントテラス

　タカタ株式会社　再生管理室

　　　　　　　　　　電　話　03-6455-8404　　ＦＡＸ　03-6455-8426

＊お問い合わせはできるだけＦＡＸをご利用ください。

---

注意事項

1　　届出期間内に債権届出をしないと債権を失うことがあります。
2　　債権者が届出をした，債権の内容及び議決権についての調査結果（認否）は，債務者が作成する『認否書』に記載されます。

　　　認否書は，裁判所のほか，債務者の事務所や営業所等に備え置かれます。

---

**【債権届出書の送り先】**

〒140-0002　東京都品川区東品川二丁目３番１４号　東京フロントテラス
タカタ株式会社　再生管理室　気付
東京地方裁判所平成２９年（再）第２０号事件書類受領事務担当

---

－ 1 －

## 提出方法

(1) 同封の再生債権届出書（〈裁判所用〉〈債務者用〉各１通）を一括して同封の返信用封筒で返送してください。

(2) 代理人名義で届け出る場合は，委任状１通を添付のうえ（様式は適宜のもので結構です。）再生債権届出書の『代理人名』に記名押印してください。

(3) 法人の場合であっても，資格証明書の添付は不要です。

(4) 証拠書類の添付は不要です。ただし，再生債務者から求められた場合は，速やかに再生債務者宛に提出してください。

(5) 保証人への請求等のため，債権届出日を明らかにしたい方は，配達証明郵便等を御利用ください。

## 記入要領　　※記入例を参考に記入してください。

(1) 債権者の表示

〈個人の場合〉

ア　『印』に本人の印鑑（認印でも結構です。）を押してください。印鑑証明書の添付は不要です。

イ　『住所／本店所在地』に，現在の住所を記入してください。今後，裁判所からの通知はこの住所宛に郵送します。

〈法人の場合〉

ア　『印』に法人の代表印を押してください。印鑑証明書の添付は不要です。

イ　『住所／本店所在地』に，登記簿記載の本店所在地を記入してください。

ウ　『営業所等の所在地』には，本件取引の窓口となっている営業所，事務所等が，①『本店所在地』と異なる場合はその所在地を必ず記入し，②『本店所在地』と同じ場合は「同上」にチェックしてください。

　　今後，裁判所からの通知は『営業所等の所在地』記載の住所宛に郵送します。

(2) 利息金又は遅延損害金

　　開始決定日の前日までの部分は確定金額を記入してください。開始決定日以後の部分も届け出る場合，この部分は「額未定」となりますので，記入例のように□にチェックするだけで結構です。

(3) 担保権付債権

ア　『担保権の実行で不足する見込額』については，できる限り，資料として，計算書や不動産評価書等を添付してください。担保設定が複数ある場合は，どの物件かが分かるように設定内容についての明細書を添付してください。

イ　担保権者は，担保権の実行で不足する見込額についてのみ議決権を行使することができます（民事再生法８８条）。

　　<u>『担保権の実行で不足する見込額』の記載がない場合や「額未定」と記載されている場合は，再生計画案の決議をする債権者集会時までに不足額が確定しない限り議決権額を０（ゼロ）として届け出たものと扱いますのでご注意ください。</u>

(4) 届け出る債権が，約定劣後再生債権（民事再生法３５条４項）である場合は，その旨を『債権の種類』又は『債権の内容及び原因』に記入してください。

以　上

**＜債務者用＞**

事 件 番 号　平成２９年（再）第２０号
再生債務者　タカタ株式会社

届出期限　平成29年8月25日
調査期間　平成29年11月6日～平成29年11月13日

# 再 生 債 権 届 出 書

平成　　年　　月　　日（届出書作成日）

東京地方裁判所民事第２０部合議係　御中

## 債権者の表示

【住所／本店所在地】
〒　　－

【営業所等の所在地】（法人のみ記入）
□同上　□〒　　－

【氏名／名称】　　　　　　　　　　　　　　　印

【代表者名】（法人のみ記入）　　　　【事務担当者名】

※代理人名義で届け出る場合は，下欄を記入してください（委任状添付）。

【代理人住所】

【代理人名】　　　　　　　　　　　　　　　印

| 裁 判 所 記 入 欄 |
| --- |
| 東京地方裁判所 民事第20部 |
| 平成　年　月　日 受付 |

【電話】　　　－　　　－

【FAX】　　　－　　　－

【代理人電話】

【代理人FAX】

| 債 権 届 出 額 | 合計 | 円 |
| --- | --- | --- |
| 議 決 権 の 額 | 上記金額（ただし，87条2項，3項に該当する部分を除く。また，別除権付き債権の議決権額は後記のとおり。） | |

| 進行番号 | 債権の種類 （例）売掛金 貸付金 手形金 | 債権の金額 元金の残額をご記入ください。 複数口は，別紙明細目録にご記入ください。 債権の内容及び原因　（記入例参照） | 約定利息金・遅延損害金 該当する□にチェックをつけてください。 開始決定の前日までは確定金額， 開始決定後は額未定分です。 |
| --- | --- | --- | --- |
| 1 | | 円 | □平成　年　月　　日から 平成　年　月　　日まで （利率年　　％）　　　　円 □開始決定後の金員 |
| 2 | | 円 | □平成　年　月　　日から 平成　年　月　　日まで （利率年　　％）　　　　円 □開始決定後の金員 |
| 3 | | 円 | □平成　年　月　　日から 平成　年　月　　日まで （利率年　　％）　　　　円 □開始決定後の金員 |
| 4 | | 円 | □平成　年　月　　日から 平成　年　月　　日まで （利率年　　％）　　　　円 □開始決定後の金員 |

*※ 届出書のコピーをお手元に保存されますと，問い合わせ等の際に便利です。*

※　複数口の債権及び手形金債権のある方は，次の欄にご記入ください。
　　（記載欄が不足する場合は，この用紙をコピーなどして追加してください。）

**債権明細目録**　　（前記進行番号　　　　　の　　　　　　　債権につき）

| 債権の種類 | 債権の金額 | 債権の内容及び原因 |
|---|---|---|
| | 円 | |
| | 円 | |
| | 円 | |
| | 円 | |
| | 円 | |

**手形明細目録**　　（振出人が債務者以外の場合は，備考欄に振出人名を記入）

| 手形番号 | 額面金額 | 支払期日 | 振出日 | 金融機関名 | 備考 |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

※　前記の債権について，担保権のある方は，次の項目にご記入のうえ，説明書記載の
　　資料を添付してください。複数口ある場合は，どの物件かが分かるようにして，担保
　　権や債権の内容及び原因が分かる明細書を添付してください。

〔債権の種類〕　　　前記進行番号　　　　　の　　　　　　　債権

〔担保権の種類〕　□抵当権　□根抵当権　□質権　□商事留置権
　　　　　　　　　□その他（　　　　　　　　　　　　　　　　　　　　　　　　）

〔担保権の実行で不足する見込額〕合計　　　　　　　　　　円 ※必ず記入してください

〔議決権額〕　　　　上記金額又は確定した不足額が上記金額を超えるときは当該確定不
　　　　　　　　　　足額

※　前記の債権について，執行力ある債務名義をお持ちの方は，どの債権であるかを特
　　定のうえ，その通数を記入し，写しを添付してください。

　　□執行力ある債務名義あり（債権の種類：　　　　　　　　　　）合計　　　　通

*※ 届出書のコピーをお手元に保存されますと，問い合わせ等の際に便利です。*

＜裁判所用＞

事 件 番 号　平成２９年（再）第２０号
再生債務者　タカタ株式会社

届出期限　平成29年8月25日
調査期間　平成29年11月6日～平成29年11月13日

# 再 生 債 権 届 出 書

平成　　年　　月　　日（届出書作成日）

東京地方裁判所民事第２０部合議係　御中

## 債権者の表示

【住所／本店所在地】

〒　　　－

【営業所等の所在地】(法人のみ記入)

□同上　□〒　　　－

【氏名／名称】
　　　　　　　　　　　　　　　　　　　　　　　　　印

【代表者名】(法人のみ記入)　　　　　　　　【事務担当者名】

※代理人名義で届け出る場合は，下欄を記入してください（委任状添付）。

【代理人住所】

【代理人名】
　　　　　　　　　　　　　　　　　　　　　　　　　印

| 裁 判 所 記 入 欄 |
|---|
| 東京地方裁判所<br>　　民事第20部 |
| 平成　年　月　日<br>　　　　受　付 |

| 債 権 届 出 額 | 合　計 | 円 |
|---|---|---|
| 議 決 権 の 額 | 上記金額(ただし，87条2項，3項に該当する部分を除く。また，別除権付き債権の議決権額は後記のとおり。) | |

| 進行番号 | 債権の種類<br>(例) 売掛金<br>貸付金<br>手形金 | 債権の金額<br>元金の残額をご記入ください。<br>複数口は，別紙明細目録にご記入ください。<br>債権の内容及び原因 (記入例参照) | 約定利息金・遅延損害金<br>該当する□にチェックをつけてください。<br>開始決定の前日までは確定金額，<br>開始決定後は額未定分です。 |
|---|---|---|---|
| 1 | | 円 | □平成　年　月　日から<br>　平成　年　月　日まで<br>　(利率年　　％)　　　円<br>□開始決定後の金員 |
| 2 | | 円 | □平成　年　月　日から<br>　平成　年　月　日まで<br>　(利率年　　％)　　　円<br>□開始決定後の金員 |
| 3 | | 円 | □平成　年　月　日から<br>　平成　年　月　日まで<br>　(利率年　　％)　　　円<br>□開始決定後の金員 |
| 4 | | 円 | □平成　年　月　日から<br>　平成　年　月　日まで<br>　(利率年　　％)　　　円<br>□開始決定後の金員 |

※ 届出書のコピーをお手元に保存されますと，問い合わせ等の際に便利です。

※　複数口の債権及び手形金債権のある方は，次の欄にご記入ください。
　（記載欄が不足する場合は，この用紙をコピーなどして追加してください。）

## 債権明細目録　（前記進行番号　　　の　　　　　　債権につき）

| 債権の種類 | 債権の金額 | 債権の内容及び原因 |
|---|---|---|
| | 円 | |
| | 円 | |
| | 円 | |
| | 円 | |
| | 円 | |

## 手形明細目録　（振出人が債務者以外の場合は，備考欄に振出人名を記入）

| 手形番号 | 額面金額 | 支払期日 | 振出日 | 金融機関名 | 備考 |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

※　前記の債権について，担保権のある方は，次の項目にご記入のうえ，説明書記載の
　資料を添付してください。複数口ある場合は，どの物件かが分かるようにして，担保
　権や債権の内容及び原因が分かる明細書を添付してください。

〔債権の種類〕　　　前記進行番号　　　　の　　　　　　債権

〔担保権の種類〕　□抵当権　　□根抵当権　　□質権　　□商事留置権
　　　　　　　　　□その他　（　　　　　　　　　　　　　　　　　　　）

〔担保権の実行で不足する見込額〕合計　　　　　　　　　円 ※必ず記入してください

〔議決権額〕　　　上記金額又は確定した不足額が上記金額を超えるときは当該確定不
　　　　　　　　　足額

※　前記の債権について，執行力ある債務名義をお持ちの方は，どの債権であるかを特
　定のうえ，その通数を記入し，写しを添付してください。

　　□執行力ある債務名義あり（債権の種類：　　　　　　　　）合計　　　通

※　届出書のコピーをお手元に保存されますと，問い合わせ等の際に便利です。

＜債務者用＞

事 件 番 号　平成○○年（再）第○○○号
再生債務者　株式会社○○○○

# 再 生 債 権 届 出 書

平成○○年○○月○○日（届出書作成日）

東京地方裁判所民事第２０部合議係　御中

## 債権者の表示

【住所／本店所在地】

〒 100 － 0000

東京都○○区○○一丁目２番３号

【営業所等の所在地】（法人のみ記入）

□同上　☑〒 100 － 0000　　東京都○○区○○

1－2－4　○○ビル４階　○○営業所

| 【氏名／名称】 | | 【電話】 |
| --- | --- | --- |
| ○○○○株式会社　　　　　　　㊞ | | 03-1111-0001 |

| 【代表者名】（法人のみ記入） | 【事務担当者名】 | 【FAX】 |
| --- | --- | --- |
| 東 京 太 郎 | 埼 玉 次 郎 | 03-1111-0002 |

※代理人名義で届け出る場合は，下欄を記入してください（委任状添付）

| 【代理人住所】 | 東京都△△区△△11－22－99 | 【代理人電話】 03-2222-0001 |
| --- | --- | --- |
| 【代理人名】 | 千 葉 三 郎　　　　　㊞ | 【代理人FAX】 03-2222-0002 |

| 債 権 届 出 額 | 合計 | 4,005,013 円 |
| --- | --- | --- |
| 議 決 権 の 額 | 上記金額（ただし，87条2項，3項に該当する部分を除く。また，別除権付き債権の議決権額は後記のとおり）。 | |

| 進行番号 | 債権の種類<br>（例）売掛金<br>貸付金<br>手形金 | 債権の金額<br>元金の残額をご記入ください。<br>複数口は，別紙明細目録にご記入ください。<br>債権の内容及び原因　（記入例参照） | 約定利息金・遅延損害金<br>該当する□にチェックをつけてください。<br>開始決定の前日までは確定金額，<br>開始決定後は額未定です。 |
| --- | --- | --- | --- |
| 1 | 売掛金 | 2,500,000 円<br>平成○年○月○日から平成○年○月○日までの間の商品○○ほか | □平成　年　月　日から<br>　平成　年　月　日まで<br>　（利率年　　％）　　　　　円<br>□開始決定後の金員 |
| 2 | 貸 金 | 500,000 円<br>平成○年○月○日貸付，弁済期平成○年○月○日，利率○％ | ☑平成○○年○○月○○日から<br>　平成○○年○○月○○日まで<br>　（利率年　○○％）　　5,013 円<br>☑開始決定後の金員 |
| 3 | 手形金 | 1,000,000 円<br>別紙手形明細目録のとおり | □平成　年　月　日から<br>　平成　年　月　日まで<br>　（利率年　　％）　　　　　円<br>□開始決定後の金員 |
| 4 | | 円 | □平成　年　月　日から<br>　平成　年　月　日まで<br>　（利率年　　％）　　　　　円<br>□開始決定後の金員 |

裁判所記入欄

東京地方裁判所
　　民事第20部

平成　年　月　日
　　　　受　付

記入例

※　複数口の債権及び手形金債権のある方は，次の欄にご記入ください。
　（記載欄が不足する場合は，この用紙をコピーなどして追加してください。）

**債権明細目録**　（前記進行番号　**1**　の　　**売掛金**　　債権につき）

| 債権の種類 | 債権の金額 | 債権の内容及び原因 |
|---|---|---|
| 売掛金 | 1,000,000　円 | 平成〇年〇月〇日から平成〇年〇月〇日までの間商品〇〇ほか |
| 売掛金 | 1,500,000　円 | 平成〇年〇月〇日から平成〇年〇月〇日までの間商品〇〇ほか |
|  | 円 |  |
|  | 円 |  |
|  | 円 |  |

**手形明細目録**　（振出人が債務者以外の場合は，備考欄に振出人名を記入）

| 手形番号 | 額面金額 | 支払期日 | 振出日 | 金融機関名 | 備考 |
|---|---|---|---|---|---|
| AB98682 | 500,000 | 〇月〇日 | 〇月〇日 | 〇銀行〇支店 |  |
| AB98693 | 500,000 | 〇月〇日 | 〇月〇日 | 〇銀行〇支店 |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

※　前記の債権について，担保権のある方は，次の項目にご記入のうえ，説明書記載の
　資料を添付してください。複数口ある場合は，どの物件かが分かるようにして，担保
　権や債権の内容及び原因が分かる明細書を添付してください。

〔債権の種類〕　　前記進行番号　**2**　の　**貸金**　債権

〔担保権の種類〕　☑抵当権　□根抵当権　□質権　□商事留置権

　　　　　　　　□その他（　　　　　　　　　　　　　　　　　　）

〔担保権の実行で不足する見込額〕合計　　　400,000　円　　　担保権付債権について
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　の不足見込額を記載し
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　てください。

〔議決権額〕　　上記金額又は確定した不足額が上記金額を超えるときは当該確定不
　　　　　　　　足額

※　前記の債権について，執行力ある債務名義をお持ちの方は，どの債権であるかを特
　定のうえ，その通数を記入し，写しを添付してください。

　☑執行力ある債務名義あり（債権の種類：　**貸金**　）合計　**1**　通

[English translation for reference purpose only]

Heisei 29 (2017) (sai) No. 20 Petition for Commencement of Rehabilitation Proceedings

Notice of Commencement of Civil Rehabilitation Proceedings

June 28, 2017

The 20th Civil Division of the Tokyo District Court
Court Clerk    Yoshikatsuro Iyo

An order of commencement of civil rehabilitation proceedings for the entity below was issued at 5:00 pm on June 28, 2017 (The petition date is June 26, 2017). Accordingly we hereby inform you as follows:

Akasaka 2-12-31, Minato-ku, Tokyo
Rehabilitation Debtor    Takata Corporation
Representative Director    Shigehisa Takata
Attorneys-at-law representing the Rehabilitation Debtor    Nobuaki Kobayashi

1    Main text of the order of commencement of civil rehabilitation proceedings
This Court commences rehabilitation proceedings with respect to Takata Corporation.

2    Deadline for Filing Rehabilitation Claims:
On or before August 25, 2017

3    Ordinary Period for Investigation of Claims:
From November 6, 2017 to November 13, 2017

4    Deadline for Submission of Proposed Rehabilitation Plan:
On or before November 27, 2017

5    Supervisor
Shin-Tokyo Building, Suite 225, 3-1, Marunouchi 3 chome, Chiyoda-ku, Tokyo
The Tokyo-Marunouchi Law Offices
Katsuyuki Miyakawa, Attorney-at-law

Case Number: Heisei 29 (2017) (sai) No. 20

Rehabilitation Debtor: Takata Corporation

## Instructions for Filing Proof of Rehabilitation Claim

The Court hereby sends the "Notice of Commencement of Civil Rehabilitation Proceedings" and the "Proof of Rehabilitation Claim Form" to you since the order to commence the rehabilitation proceedings has been entered for the above Rehabilitation Debtor.

Please refer to the instructions below and the "Sample" enclosed herewith, and return the "Proof of Claim Form," using the envelope enclosed herewith, by the deadline below to file your proof of claim.

**Deadline for filing proof of claim: August 25, 2017**

Note

1. You may be unable to participate in the rehabilitation proceedings if you fail to file a proof of claim form by the deadline.
2. The findings of the Rehabilitation Debtor's examination (*i.e.*, approval or disapproval) of the rehabilitation claims and voting rights filed by creditors will be described in the "Claim Amount Accepted by the Rehabilitation Debtor" that will be prepared by the Rehabilitation Debtor, and kept at the Court and the Rehabilitation Debtor's place of business.

---

**Where to send the Proof of Claim Form**

TOKYO FRONT TERRACE, 2-3-14 Higashishinagawa, Shinagawa-ku, Tokyo 140-0002

Takata Corporation, Civil Rehabilitation Office

Attn: Manager in Charge of Receipt of the Documents regarding the Case of Heisei 29 (2017) (sai) 20, Tokyo District Court.

---

How to file

(1) Please return two copies of the Proof of Claim Form (one each for the Court and the Rehabilitation Debtor) using the envelope enclosed herewith.
(2) If you file a proof of claim in the name of your legal representative, please affix the name and seal of the legal representative in the column "Name of Legal Representative" with a power of attorney attached.
(3) You do not need to attach the certificate of qualification notwithstanding that you are a corporation.

(4) You do not need to attach the evidence on the rehabilitation claim at the time of filing; however, you need to submit the evidence promptly when requested by the Rehabilitation Debtor to do so.

(5) Please file the proof of claim by certified mail of the date of delivery if you need to establish the date of filing of the same (*e.g.*, to exercise your rights against a guarantor).

How to fill out the form   *Please refer to the "Sample" enclosed herewith

(1)  Creditor's Information

For Individuals

(a)  Please affix your seal (registered or unregistered) in the column "Seal."  You do not need to attach a certificate of the seal-impression.

(b)  Please fill in your current address in the column "Address."  The Court will send the relevant notifications to the address you specified there.

For Corporations

(a)  Please affix your representative's seal in the column "Seal."  You do not need to attach a certificate of the seal-impression.

(b)  Please fill in the registered address of the principal place of business in the column "Address."

(c)  In the column "Address of Business Office," (i) please specify the address of the point of contact for this matter with the Rehabilitation Debtor, if such address is different from the address registered as the principal place of business, and (ii) please check the box "Same as above" if the addresses above are the same.  The Court will send the relevant notifications to the address you specified there.

(2)  Interest or Late Charge

Please specify the fixed amount of the interest or late charge for those accrued by the day before the Commencement Order.  For interest or late charge that accrues on or after the date of the Commencement Order, please simply check the box as described in the "Sample" since the amount thereof has not been fixed.

(3)  Secured Claim

(a)  For the "Deficiency Amount," please attach the document(s) that demonstrates the estimated value of the security interests as far as possible, including, but not limited to, a calculation matrix and appraisal of a mortgaged real estate.  If there are two or more security interests

[English Translation for Reference Purpose Only]

created for rehabilitation claims, please attach the description regarding which property is given as collateral for each security interest so that the Court and the Rehabilitation Debtor can identify them.

(b) A secured creditor may exercise its voting right only for the estimated deficiency amount (unsecured amount) that cannot be satisfied by exercising the security interest (Article 88 of the Civil Rehabilitation Act).  Please note that if there is no description on the "Deficiency Amount" or it is stated as "not fixed," such creditor will be deemed to have filed its voting right amount as zero, unless the deficiency amount (unsecured amount) is determined by the date on which the creditors' meeting to resolve a proposed rehabilitation plan is held.

(4) If a filed claim falls under the category of the "consensually-subordinated rehabilitation claim" (Article 35, Paragraph 4 of the Civil Rehabilitation Act), please specify to that effect in either the column "Type of Claim" or "Basis for Claim."

End of the Document

# SAMPLE
# PROOF OF CLAIMS

事件番号　平成２９年（再）第２０号/ Case Number. Heisei 29 (2017) (Sai) 20

再生債務者　タカタ株式会社/ Rehabilitation Debtor Takata Corporation

## 再生債権届出書《記載例》
## /PROOF OF REHABILITATION CLAIM [SAMPLE]

平成○○年○○月○○日（届出書作成日/Date of Creation）

東京地方裁判所民事第 20 部　合議係　御中

/ To The 20th Civil Division of the Tokyo District Court

| 債権者の表示/ Creditor's Information |
|---|

【住所／本店所在地/ Place of Domicile or Place of Head Office】

〒100—0000 (zip code)　１—２—３，○○，○○-ku, Tokyo

【営業所等の所在地/ Place of Business】

☐同上/ditto ☑〒100—0000 (zip code)　１—２—４，○○，○○-ku, Tokyo

【氏名／名称/ Name of Creditor】

　　　　○○○○ Inc.　　　　　　　　　(Seal)

【代表者名/ Representative】　　　　　　【事務担当者名/ Person in charge】

東　京　太　郎/ Taro Tokyo　　　埼　玉　次　郎/ Jiro Saitama

※代理人名義で届け出る場合のみ、下の欄に記入してください（委任状添付）。

※Fill in the information of the legal counsel for the submission of this proof of claim, with Power of Attorney attached.

【住　　所/ Address】

１１—２２—９９，△△，△△-ku, Tokyo

【代理人名/ Name of Legal Counsel】

千　葉　三　郎/ Saburo Chiba　　　　　(Seal)

裁 判 所 使 用 欄 /COURT USE ONLY

【電話/ TEL】
03-1111-0001

【FAX】
03-1111-0002

【代理人電話/ TEL】
03-2222-0001

【代理人 FAX/ FAX】
03-2222-0002

| 届出債権額（議決権行使額・内訳は下欄のとおり）/Amount of Filed Rehabilitation Claim (the amount entiled to voting right and the breakdown of the amount as listed below) | 合計/ Total　4,005,013 円/JPY |
|---|---|

# SAMPLE
# PROOF OF CLAIMS

| 進行番号 / No. | 債権の種類 / Type of claims （例）売掛金　貸付金　手形金 / e.g. Trade receivable, Loan receivable, Bill | 債権の金額（元金の残額をご記入ください。複数口は別紙明細目録にご記入ください。）/ Amount of Rehabilitation Claim (Please fill in the amount of the outstanding principal.　If you have multiple types of claims, please fill in the Breakdown Table of Claims below.) ------------------------------------- 債権の内容及び原因（記入例参照）/ Cause for Claim | 約定利息金・遅延損害金/ Interest and Late Charge （該当する口にチェックをつけてください。決定の前日までは確定金額、決定後は額未定分です。/Check this box if any of them is relevant.　Fixed amount for those accrued by the day before the Commencement Order, and unspecified amount for those on and after the date of Commencement Order） |
|---|---|---|---|
| 1 | 売掛金 / Trade receivable | 2,500,000 円/JPY ------------------------------------- 平成〇年〇月〇日から平成〇年〇月〇日までの間の商品〇〇ほか/ Trade of goods from [MM DD, YY] to [MM DD, YY] | ☐　月　日から　月　日まで （利率年　%）　　　　円/ ☐ from [MM DD, YY] to [MM DD, YY] (　% per year) ☐開始決定後の金員/ ☐Amount after Commencement Order |
| 2 | 貸金 / Loan receivable | 500,000 円/JPY ------------------------------------- 平成〇年〇月〇日貸付、弁済期平成〇年〇月〇日、利率〇%/ Date of loan, Repayment due-date, Interest rate　% | ☑平成〇〇年〇〇月〇〇日から平成〇〇年〇〇月〇〇日まで （利率年〇%）　　5,013 円/ ☑ from 〇〇, 2017 to 〇〇, 2017] (　% per year) ☑開始決定後の金員 ☑Amount after Commencement Order |
| 3 | | 円 ------------------------------------- | ☐　月　日から　月　日まで （利率　%）　　　　円 ☐開始決定後の金員 |
| 4 | | 円 ------------------------------------- | ☐　月　日から　月　日まで （利率　%）　　　　円 ☐開始決定後の金員 |

# SAMPLE
# PROOF OF CLAIMS

※　複数口の債権及び手形金債権のある方は、次の欄にご記入ください。

※　If you have multiple types of claims, please fill in the Breakdown Table of Claims below.

（記載欄が不足する場合は、この用紙をコピーなどして追加してください。/ Copy this sheet if the table below is insufficient.）

債権明細目録/ Breakdown Table of Claims（前記進行番号　1　の　売掛金　債権につき/ Regarding No. 1 claim above.）

| 債権の種類/ Type of claim | 債 権 の 金 額/ Amount of claim | 債権の内容及び原因/ Cause for claim |
|---|---|---|
| | 円/JPY | |
| | 円/JPY | |
| | 円/JPY | |
| | 円/JPY | |
| | 円/JPY | |

手形明細目録（振出人が債務者以外の場合は、備考欄に振出人名をご記入ください。）/ Breakdown Table of Bills (Please fill in the name of bill issuer in the column Notes below if such issuer is not the Rehabilitation Debtor.)

| 手形番号/ No. of Bill | 額面金額/ Amount of Bill | 支払期日/ Due date | 振出日/ Date of Issuance | 金融機関 （支払場所） Place of payment | 備考/ Notes |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

※　前記の債権について、担保権のある方は、次の項目にご記入のうえ、説明書記載の資料を添付してください。複数口ある場合は、担保目録を作成のうえ、添付してください。

※　Please fill in the information below if a claim is secured by a lien or any type of security and attach hereto required documents specified in "Instructions for Filing Proof of Rehabilitation Claim."　Please prepare the list of liens and/or securities and attach hereto if you have multiple liens/securities.

# SAMPLE
# PROOF OF CLAIMS

〔債権の種類/ Type of claim〕　　　前記進行番号　2　の　貸金　債権
　　　　　　　　　　　　　　　　/ No. 2, Loan receivable above
〔担保権の種類/ Type of security〕　☑抵当権/ Mortgage
　　　　　　　　　　　　　　　　□根抵当権/ Revolving Mortgage
　　　　　　　　　　　　　　　　□質権/ Pledge　□商事留置権/ Possessory Lien
　　　　　　　　　　　　　　　　□その他（　　　　　　）/ Other (　　　　　　)
〔担保権の実行で不足する見込額/ Deficiency Amount〕　合計/ total　400,000円/ JPY
※　前記の債権について、執行力ある債務名義をお持ちの方は、どの債権であるか
　　を特定のうえ、その通数を記入し、写しを添付してください。
※　If you have a claim(s) with enforceable title of obligation with respect to the claims as
　　listed above, please specify such claim(s), fill in the number of the titles and attach hereto
　　those copies.
　　☑執行力ある債務名義あり〔債権の種類　貸金　〕
　/ Claim with enforceable title of obligation [Type of claim:　Loan]
　　　合計　1　通/ 1 in total

## **Exhibit I**

**Supervisor Consent**

平成 29 年（再）第 20 号・21 号・22 号　再生手続開始申立事件



同意申請書

（海外における再生手続承認の申立て）

平成 29 年 8 月 7 日

監督委員　弁護士　宮川　勝之　先生

再生債務者　　　　　　　タカタ株式会社

タカタ九州株式会社

タカタサービス株式会社

代理人弁護士　　　　　小林　信明

## 第1　同意を求める事項

再生債務者らが、

① アメリカ合衆国の連邦倒産裁判所に対して、同国の連邦破産法第 15 章の規定に基づいて、本再生手続の承認（仮の救済を含む。）を申し立てること

② カナダの裁判所に対して、同国における外国倒産処理手続の承認援助に係る法令に基づいて、本再生手続の承認（仮の救済を含む。）を申し立てること

③ 上記①及び②のアメリカ合衆国及びカナダにおける承認手続において、再生債務者であるタカタ株式会社に、再生債務者らの外国代表者（Foreign Representative）としての権限を行使させること

につき同意を求める。

1

**第2　同意を求める理由**

**1　本再生手続の承認（仮の救済を含む。）を求める必要性**

**（1）アメリカ合衆国において再生債務者に対する多数の訴訟が係属していること**

　再生債務者であるタカタ株式会社（以下「TKJP」という。）は、アメリカ合衆国において多数の訴訟の提起を受けており、これらの訴訟への対応を迫られている状態にある。

　まず、TKJP は、アメリカ合衆国の各州において、TKJP 並びにその子会社及び関連会社（以下「タカタ」と総称する。）が製造及び販売した、相安定化硝酸アンモニウムをプロペラントとして用いたインフレータを組み込んだエアバッグ・モジュール（以下「本エアバッグ」という。）の不具合に起因した死傷事故による損害を受けたと主張する者から、多数の損害賠償請求訴訟（以下「米国 PI 訴訟」という。）の提起及び訴訟外における損害賠償の請求を受けている。

　また、TKJP は、アメリカ合衆国の各州において、本エアバッグを搭載した車両の所有者若しくはリースを受けている者又は本エアバッグを搭載した車両を販売した中古品販売業者を代表すると主張する者から、かかる本エアバッグを搭載した車両の経済的価値が下落したことに基づく損害の賠償等を求める集団訴訟を提起されている（以下「米国経済損害集団訴訟」という。）。

　なお、米国 PI 訴訟及び米国経済損害集団訴訟において、TKJP は、共同被告とされた一部の OEM からも同時に求償請求（cross-claim）を受けており、TKJP は当該求償請求への対応も必要な状況となっている。

　加えて、本エアバッグの不具合とは直接の関係はないものの、タカタが、アメリカ合衆国において、競合他社と共謀の上、自動車用乗員安全拘束装置（エアバッグ、シートベルト及びステアリングホイール）に関して価格協定等の反競争行為を行ったことによって、当該装置の直接又は間接の購入者（ディーラー及び最終消費者等）が損

害を被ったとして、それらの購入者を代表すると主張する者から、かかる損害の賠償を求める集団訴訟（以下「米国独禁集団訴訟」といい、米国 PI 訴訟及び米国経済損害集団訴訟と合わせて「本件米国訴訟」という。）を提起されている。


(2) カナダにおいて再生債務者に対する多数の訴訟が係属していること

TKJP は、カナダにおいてもアメリカ合衆国と同様に、多数の訴訟の提起を受けており、これらの訴訟への対応を迫られている状態にある。

まず、TKJP は、カナダにおいても、本エアバッグの不具合に起因した死傷事故による損害を受けたと主張する複数の者からそれぞれ損害賠償請求訴訟の提起を受けている（以下「カナダ PI 訴訟」という。）。

また、TKJP は、カナダにおいても、本エアバッグを搭載した車両の所有者等を代表すると主張する者から、かかる本エアバッグを搭載した車両の経済的価値が下落したことに基づく損害の賠償等を求める訴訟を提起されている（以下「カナダ経済損害集団訴訟」という。）。TKJP は、カナダ経済損害集団訴訟においても、共同被告とされた一部の OEM から求償請求を受けている。

さらに、TKJP は、カナダにおいても、競合他社と共謀の上、自動車用乗員安全拘束装置に関して価格協定等の反競争行為を行ったことにより、当該装置の直接又は間接の購入者（ディーラー及び最終消費者等）が損害を被ったとして、それらの購入者を代表すると主張する者から、かかる損害の賠償を求める集団訴訟（以下「カナダ独禁集団訴訟」といい、カナダ PI 訴訟及びカナダ経済損害集団訴訟と合わせて「本件カナダ訴訟」という。また、本件米国訴訟及び本件カナダ訴訟を合わせて「本件訴訟」という。）を提起されている。


(3) 本件訴訟の手続が停止されない場合、再生債務者らの事業再建への重大な支障

3

**及び再生債権者間の不公平が生じること**

ア　再生債務者らは、その事業の再建を図り、また再生債権者への弁済原資を最大限
確保するため、現在、KSS Holdings, Inc.（以下「KSS」という。）との間で、タカ
タの世界各国の事業を KSS に譲渡する取引（以下「本件取引」という。）の交渉を
行っている。TKJP は、米国司法省との間で締結した司法取引契約に基づき、平成
30 年 3 月 4 日までに OEM を対象とした補償基金に 850 百万米ドルを拠出する義務を
負うところ、かかる義務を同期限までに履行するため、本件取引に係る最終契約を
早期に締結することが事業再建のために喫緊の課題となっている。

しかし、本件訴訟の手続が停止されない場合には、再生債務者らは、多数の本件
訴訟の対応に追われることとなり、タカタの事業再建に向けた努力に時間及び費用
を割くことができず、事業再建のために想定以上の時間を必要とせざるを得ない状
況に追い込まれることが明らかである。

以上より、本件訴訟の手続が停止されない場合には、再生債務者らはその対応を
強いられ、タカタの再建が遅れることにより事業価値は著しく劣化し、KSS も本件
取引から離脱する可能性が高まる等、タカタの再建に重大な支障が生じる可能性が
高いことは明らかである。

イ　また、再生債務者らは、本再生手続において再生計画の認可を受けることによ
って、その再生債権者が有する再生債権の一部について免責を受ける予定である。
しかし、アメリカ合衆国及びカナダにおいて本再生手続が承認されない場合には、
アメリカ合衆国及びカナダにおける再生債権者から、当該再生債権者の再生債権
に対してはかかる免責の効力が及ばないと主張される可能性があり、再生債権者
間に不公平を生ずる可能性がある。かかる結果が再生債権者間の公平を図る民事
再生法の趣旨に反することは明らかである。

4

（4）アメリカ合衆国及びカナダにおける承認（仮の救済を含む。）により、再生債務者らの事業再建が促進され、かつ再生債権者間の公平性が確保されること

　アメリカ合衆国及びカナダにおいて、本再生手続について外国主手続として外国倒産処理手続の承認を受けた場合には、本再生手続の効力がアメリカ合衆国及びカナダ内にも及び、また、アメリカ合衆国及びカナダの裁判所から、本再生手続を実行するにあたって適切な救済を得ることができる。そして、かかる救済には係属中の訴訟を停止させることが含まれるため、これにより本件訴訟の手続は停止されることとなる。また、アメリカ合衆国及びカナダの裁判所は、手続承認の申立てから承認の効力発生までの期間において、債務者の財産又は債権者の利益を保全するために必要である場合には、仮の救済を発令することができるため、再生債務者らはかかる仮の救済の申立てにより、直ちに本件訴訟の対応から解放される見込みである。

　さらに、本再生手続の効力がアメリカ合衆国及びカナダにも及ぶことにより、アメリカ合衆国及びカナダにおける再生債権者が、本再生手続における免責的効力が自身に及ばないことを主張することは困難となり、再生債権者をグローバルに公平に扱うことができる。

　以上より、アメリカ合衆国及びカナダにおいて本再生手続の承認を申し立てることにより、再生債権者の事業再建への支障を回避し、また、再生債権者間のグローバルな公平性を確保することが可能となる。


（5）小括

　以上より、アメリカ合衆国及びカナダにおいて本再生手続の承認（仮の救済を含む。）を申し立てる必要性が認められる。


2　アメリカ合衆国及びカナダにおける承認（仮の救済を含む。）を求める相当性

　上記のとおり、アメリカ合衆国及びカナダにおいて本再生手続の承認（仮の救済を含む。）を申し立てる必要性は高い一方で、本件訴訟を停止させるために他に考えられる手段は存在せず、またかかる申立てによって再生債務者らが被る法律上の不利益は基本的に存在しない。

## 3　TKJP を再生債務者らの外国代表者とすることについて

　「外国代表者（Foreign Representative）」とは、（アメリカ合衆国及びカナダから見て）外国倒産手続において、債務者の事業を管理運営し、又は債務者の代表者として行為する権限を与えられた者を意味し、外国倒産法において債務者である法人（Debtor in Possession）も外国代表者となることができる。外国代表者は、外国手続の承認を申し立てた後には、当該外国倒産手続の状況について裁判所に適宜報告等を行う義務を負う。

　TKJP は、再生債務者らの事業に精通しており、アメリカ合衆国及びカナダの裁判所に適切な報告等を行うことが十分期待できる。また、各再生債務者について異なる外国代表者を個別に選任するのではなく、TKJP を再生債務者らの共通の外国代表者とすることにより、アメリカ合衆国及びカナダにおける承認援助手続を効率的に進めることが可能となる。

## 第3　結語

　以上より、アメリカ合衆国及びカナダにおいて本再生手続の承認及び仮の救済を申し立てることは必要かつ相当であり、かつ、TKJP を再生債務者らの共通の外国代表者とすることが最も適切であるといえるため、本申請に及ぶ次第である。

以上

上記につき同意します。

　平成２９年　８月　７日


監督委員　弁護士　宮川　勝之

Case Nos. 2017 (*sai*) 20, 21 and 22
Case of Petition for Commencement of Civil Rehabilitation Proceedings

# Application for Consent

(Request for Recognition of Civil Rehabilitation Proceedings with Foreign Courts)

August 7 , 2017

To:    Supervisor, Katsuyuki Miyakawa, Attorney-at-Law

Rehabilitation Debtors:                              Takata Corporation

Takata Kyushu Corporation

Takata Services Corporation

Attorney-at-Law for the Rehabilitation Debtors:    Nobuaki Kobayashi

## I.    Matters for which Consent is Requested

The Rehabilitation Debtors hereby request consent for each of the following matters:

(i)    that a petition be filed with the United States Bankruptcy Court to seek recognition of the Rehabilitation Proceedings (including provisional relief), pursuant to Chapter 15 of the United States Bankruptcy Code;

(ii)    that a petition be filed with the Canadian court to seek recognition of the Rehabilitation Proceedings (including provisional relief), pursuant to the laws of Canada with respect to the recognition and assistance of foreign insolvency

1

proceedings; and

(iii)    that, for the recognition proceedings in the United States and Canada of (i) and (ii) above, Rehabilitation Debtor Takata Corporation be allowed to exercise the authority as the Foreign Representative of the Rehabilitation Debtors.

## II.    Reasons for Requesting Consent

**1.    Necessity of Requesting Recognition of the Rehabilitation Proceedings including Provisional Relief**

**(1)    There Are a Large Number of Lawsuits Pending against the Rehabilitation Debtor in the U.S.**

Rehabilitation Debtor Takata Corporation ("TKJP") is the subject of a large number of lawsuits in the United States, and is therefore under pressure to respond to these lawsuits.

First, in a number of states of the United States, TKJP is the subject of a number of liability claims (the "U.S. PI Lawsuits"), both in-court and out-of-court, instituted by persons claiming to have suffered damage due to wrongful deaths or personal injuries caused by defects in airbag modules which contained inflators that used phase-stabilized ammonium nitrate as a propellant (the "Airbags"), and which were manufactured and sold by TKJP, its subsidiaries, and its affiliate companies (hereinafter, collectively "Takata").

In addition, in a number of states of the United States, TKJP is the subject of class action lawsuits seeking damages etc. based on the fallen economic value of vehicles in which the Airbags were installed, instituted by persons claiming to represent the owners and lessees of vehicles in which the Airbags were installed and used car dealers that sold vehicles in which the Airbags were installed (the "U.S. Economic Loss Lawsuits").

Furthermore, in the U.S. PI Lawsuits and U.S. Economic Loss Lawsuits,

cross-claims have been simultaneously filed by some of the OEMs that are named as co-defendants, and so TKJP must respond to these cross-claims as well.

Moreover, although this is not directly related to the Airbag defects, Takata is also the subject of class action lawsuits seeking damages on the grounds that direct and indirect purchasers (dealers, end consumers etc.) have suffered damage as a result of Takata colluding with its competitors in the U.S., in price-fixing and other anticompetitive conducts with respect to vehicle passenger safety restraint devices (airbags, seatbelts, and steering wheels); these class action lawsuits have been instituted by persons claiming to represent such purchasers (the "U.S. Antitrust Lawsuits"; together with the U.S. PI Lawsuits and the U.S. Economic Loss Lawsuits, the "U.S. Lawsuits").

(2)     **There Are a Large Number of Lawsuits Pending against the Rehabilitation Debtor in Canada**

In Canada as in the United States, TKJP is the subject of a large number of lawsuits, and is under pressure to respond to these lawsuits.

First, in Canada as well, TKJP is the subject of liability lawsuits instituted by persons claiming to have suffered damage due to wrongful deaths or personal injuries caused by defects in the Airbags (the "Canada PI Lawsuits").

In addition, in Canada as well, TKJP is the subject of lawsuits seeking damages etc. based on the fallen economic value of vehicles in which the Airbags were installed, instituted by persons claiming to represent the owners etc. of vehicles in which the Airbags were installed (the "Canada Economic Loss Lawsuits").   In the Canada Economic Loss Lawsuits as well, cross-claims have been raised against TKJP by some of the OEMs that are named as co-defendants.

Furthermore, in Canada as well, TKJP is the subject of four class action lawsuits

3

seeking damages on the grounds that direct and indirect purchasers (dealers, end consumers etc.) of vehicle passenger safety restraint devices have suffered damage as a result of Takata's colluding with its competitors in price-fixing and other anticompetitive conduct with respect to such devices; theses class action lawsuits have been instituted by persons claiming to represent such purchasers (the "Canada Antitrust Lawsuits"; together with the Canada PI Lawsuits and the Canada Economic Loss Lawsuits, the "Canada Lawsuits"; further, the U.S. Lawsuits and the Canada Lawsuits are collectively the "Lawsuits").

(3)    **If the Proceedings of the Lawsuits are not Stayed, it will Create a Material Obstacle to the Rehabilitation Debtors' Reorganization and will Lead to Unfair Treatment among Rehabilitation Creditors**

A.    The Rehabilitation Debtors, for the purpose of restructuring their business and securing maximum recovery for their rehabilitation creditors, are presently engaged in negotiations with KSS Holdings, Inc. (.KSS"SSto conclude a transaction under which Takatawh businesses across the world would be transferred to KSS (the "Transaction"ran TKJP, under a plea agreement executed with the U.S. Department of Justice, owes a duty to contribute USD 850 million to a restitution fund for the benefit of OEMs by March 4, 2018, and in order to fulfill this duty by this deadline, the early execution of the definitive agreement pertaining to the Transaction has become a pressing issue for the restructuring.

However, if the Lawsuits are not stayed, the Rehabilitation Debtors will be under great pressure to respond to the Lawsuits and the Rehabilitation Debtors are clearly trapped in a situation in which they cannot spare any of the time or expenses they are expending for Takata's restructuring efforts, and more time than expected will inevitably become required for the restructuring.

It is clear from the foregoing that it will be highly probable that material obstacles to

4

Takata's restrucutring will emerge, given that if the Lawsuits are not stayed then the Rehabilitation Debtors will be forced to respond thereto, that their business value will be significantly deteriorated as a result of protracted Takata's restructuring, and that the likelihood of KSS walking away from the Transaction will increase.

B      Further, it is planned that the Rehabilitation Debtors, once their rehabilitation plans in the Rehabilitation Proceedings are approved, will have a portion of the rehabilitation claims held by rehabilitation creditors discharged.   However, if the Rehabilitation Proceedings are not recognized in the United States and Canada, it is possible that rehabilitation creditors in the United States and Canada will assert that the validity of such discharge does not extend to the rehabilitation claims held by them, and accordingly unfairness will emerge in the treatment among rehabilitation creditors. Such an outcome would be clearly contrary to the purport of the Civil Rehabilitation Act that ensures fairness in the treatment among rehabilitation creditors.

**(4)      Recognition of Proceedings (including Provisional Relief) in the United States and Canada would Promote Rehabilitation Debtors' Restructuring and Ensure Fairness in the Treatment among Rehabilitation Creditors**

If in the United States and Canada, the Rehabilitation Proceedings are recognized as foreign insolvency proceedings that are the main foreign proceeding, the effect of the Rehabilitation Proceedings will extend to the United States and Canada as well, and it will be possible to obtain appropriate reliefs from U.S. and Canadian courts in going through the Rehabilitation Proceedings.   Further, because such relief includes the staying of pending lawsuits, the Lawsuits would be stayed.   In addition, U.S. and Canadian courts, if necessary for the preservation of debtor assets or creditor interests in the period from the petition for recognition of proceedings until the point in time that such recognition comes into effect, can

issue an order of provisional relief, and thus it is highly likely that the Rehabilitation Debtors, by requesting recognition of the Rehabilitation Proceedings, will be released immediately upon filing the petitions from the burden of responding to the Lawsuits.

Furthermore, extending the effect of the Rehabilitation Proceedings to the United States and Canada will make it difficult for rehabilitation creditors in the United States and Canada to assert that the discharge effect of the Rehabilitation Proceedings does not have force over them, and will make it possible for rehabilitation creditors around the world to be treated fairly.

On the basis of the foregoing, seeking recognition of the Rehabilitation Proceedings in the United States and Canada will make it possible to avoid obstacles to the restructuring of Rehabilitation Debtor business, and to ensure the fair treatment among rehabilitation creditors around the world.

**(5)    Summary**

On the basis of the foregoing, we believe that the necessity to file a petition for recognition of the Rehabilitation Proceedings (including provisional relief) in the United States and Canada is found.

**2.    Appropriateness of Seeking Recognition (including Provisional Relief) in the United States and Canada**

As detailed above, not only it is highly necessary to seek recognition of the Rehabilitation Proceedings (including Provisional Relief) in the United States and Canada, but there is no other conceivable means of staying the Lawsuits, and there are essentially no legal downsides that would be suffered by the Rehabilitation Debtors to such request.

### 3.     Designating TKJP as the Foreign Representative for the Rehabilitation Debtors

"Foreign Representative" means a person granted the authority to manage and operate the business of a debtor or act as representative of a debtor in a foreign insolvency proceeding (foreign from the perspective of the United States and Canada), and a debtor in possession, including a legal entity under foreign bankruptcy law, can also constitute a foreign representative.   A foreign representative, after a petition is filed for recognition of a foreign insolvency proceeding, owes a duty to make reports and the like as appropriate on the status of such foreign insolvency proceeding.

TKJP has thorough knowledge of the business of the Rehabilitation Debtors, and, thus, TKJP can fully make appropriate reports and the like to U.S. and Canadian courts.   In addition, designating TKJP as the joint foreign representative for the Rehabilitation Debtors will efficiently facilitate recognition and assistance procedures in the United States and Canada, rather than designating separate foreign representatives for each of the Rehabilitation Debtors.

### III.    Conclusion

On the basis of the foregoing, we hereby have submitted this application in light of the fact that it is necessary and appropriate to seek recognition of the Rehabilitation Proceedings in the United States in Canada and that designating TKJP as the joint foreign representative for the Rehabilitation Debtors is considered the most appropriate.

End of Document

We consent to the foregoing.

   August 7, 2017

Supervisor:      Katsuyuki Miyakawa, Attorney-at-Law

## Certificate of Translation

I, Tomohiro Okawa, Attorney-at-Law, hereby certify that this is a true and accurate translation from Japanese to English of the "Application for Consent (Request for Recognition of Civil Rehabilitation Proceedings with Foreign Courts)" with the supervisor's consent for Case Nos. Heisei 29 (2017) (Sai) 20, 21 and 22 Case of Petition for Commencement of Civil Rehabilitation Proceedings.

Date: August 9, 2017

Tomohiro        Okawa