## **EXHIBIT 1**

**Certification of Japanese Sale Approval**



本申請につき、平成30年2月26日　許可があったことを証明する。
前同日　東京地方裁判所民事第20部　裁判所書記官　加賀谷　孝

副本

平成 29 年（再）第 20 号　再生手続開始申立事件

## 事業譲渡許可申立書
### （民事再生法 42 条）

東京地方裁判所民事第 20 部御中

平成 30 年 1 月 22 日

再生債務者　タカタ株式会社

代理人弁護士　小林　信明

**第1　申立ての趣旨**

再生債務者が、再生債務者の子会社であるタカタ九州株式会社（以下「TK9」という。）

及びタカタサービス株式会社（以下、「TKS」という。）とともに、Joyson KSS Auto

Safety S. A. 及びその子会社、関係会社（以下、個別に又は総称して「KSS」という。）

に対して、①添付資料 1 の Japan Asset Purchase Agreement（以下、本変更契約を

含むその後の変更も含み「Japan-APA」という。）、②添付資料 2 の First Amendment

to Asset Purchase Agreement、③添付資料 3 の Second Amendment to Asset Purchase

Agreement、及び④添付資料 4 の Third Amendment to Asset Purchase Agreement（以

下、②乃至④を合わせて「本変更契約」という。）に基づき、再生債務者の一部事業

を譲渡すること

につき許可を求める。

1

第2　申立ての理由

1　はじめに

　　再生債務者並びにその世界各国の子会社及び関連会社（以下総称して「再生債務者グループ」という。）は、相安定化硝酸アンモニウムを用いたインフレータ（以下「PSANインフレータ」という。）に関連する事業及び資産を除き、再生債務者グループがグローバルに行っている事業の実質的に全てをKSSに譲渡する予定である。かかるグローバルな事業譲渡は、再生債務者グループの事業のうち、①日本及びその他のアジア諸国等における事業の譲渡契約であるJapan-APA、②米国、メキシコ及び南米等における事業の譲渡契約（以下「US-APA」という。）、③欧州等における事業の譲渡契約（以下「EMEA-APA」という。）、及び④再生債務者の中国子会社であるTakata (Shanghai) Automotive Component Co., Ltd.（以下「TSAC」という。）における事業の譲渡契約（以下「TSAC-APA」という。今後締結予定である。）の4つの事業譲渡契約によって行われる予定である。そして、①Japan-APAについては平成29年11月16日付で締結済みであり、また、平成30年1月15日付で監督委員による同意を得ているため、本申立書においてJapan-APAに基づく事業譲渡を再生計画外で行うことの許可（民事再生法42条1項）を求める次第である。

2　Japan-APAの締結に至る経緯

(1)　再生債務者グループは、種々の製品、特にPSANインフレータを搭載したエアバッグ・モジュール（以下「本エアバッグ」という。）を製造し、自動車製造会社（以下「OEM」という。）に対して販売している。本エアバッグについては、ガスを発生させてエアバッグを膨張させる部品であるPSANインフレータが破裂し、その部品の金属片による死亡事故等が生じるなど、PSANインフレータに関連する不具合が判明した。そのため、平成20年11月以降、各OEMは、本エアバッグを搭載す

2

る車種について自主回収を含むリコールを実施し、その対象範囲も拡大していった。かかる状況を受けて、再生債務者の米国子会社である TK HOLDINGS INC.（以下「TKH」という。）は、平成 27 年 5 月及び 11 月、米国運輸省道路交通安全局（以下「NHTSA」という。）との間で、①本エアバッグ製品に関し追加的なリコールを実施すること、及び②TKH に対して 70 百万米ドルの民事制裁金を分割して支払う義務を課すこと等を主な内容とする同意指令（Consent Order）に合意した。国土交通省も、再生債務者に対し、その後まもなく日本国内の PSAN インフレータに関するリコールを拡大することを指導した。再生債務者グループは、上記の一連のリコール（以下「本リコール」という。）に関連して OEM が負担した費用等について、OEM から求償権その他の権利（以下「本リコール債権」という。）を請求され、又は請求されることが想定されており、その額が増額することが見込まれた。また、本エアバッグの不具合に関連して、再生債務者に対し、損害の賠償等を求める多数の訴訟が提起され、かつ、今後も同様の訴訟を提起されることが予想された。

(2)　再生債務者は、かかる状況を受けて、平成 28 年 2 月、再生債務者グループの再建計画を策定するため、事業再生の専門家 5 名から構成される外部専門家委員会（以下「SC」という。）を設置し、SC に対して再生債務者グループの再建計画の策定を委任した。SC は、再生債務者グループの最大の債権者であって、かつ、再生債務者グループが事業を継続する上で最も重要な取引先である OEM が、再生債務者グループによる製品の品質管理の観点から自力再建型ではなくスポンサー型の再建を希望したこと等に鑑み、再生債務者としてはスポンサーを選定することを決め、平成 28 年 5 月、再生債務者と協議の上、再生債務者グループのスポンサー選定を主導するフィナンシャル・アドバイザーとして、Lazard Frères & Co. LLC 及び Lazard Frères 株式会社（以下併せて「Lazard」という。）を選任した。SC

3

及びLazardは、再生債務者グループの事業がグローバルな規模で相互に深く関連
しており、また、重要な取引先であるOEMもグローバルでの供給体制を要求して
いることから、再生債務者グループ全体の売却価値を最大化するためには、その
事業全体（但しPSANインフレータに関連する事業及び資産を除く。）を一体とし
て売却することが望ましいと判断し、再生債務者と協議のうえ、グローバルで単
一のスポンサーを選定することとした。

(3)　Lazardは、平成28年6月、再生債務者グループに対して本リコール債権を有す
る主要なOEMの初期的な意向を聴取した上で、スポンサー候補者としてグローバ
ルベースで40社に接触し、スポンサー候補を幅広く探索した。その後、Lazard
の主導のもとで、多数のスポンサー候補が参加し、①再生債務者グループに対す
るデュー・ディリジェンス、②再生債務者グループの世界各国の工場施設等にお
ける現地訪問、③再生債務者グループによるマネジメント・プレゼンテーション、
④スポンサー候補、OEM及び再生債務者グループのマネジメントが参加する会議
を複数回行うなど、再生債務者グループのスポンサー選定手続が進められた。

(4)　平成29年1月13日、再生債務者は、米国司法省（以下「DOJ」という。）との間
で司法取引契約を締結し（以下「本司法取引」という。）、これに基づき本司法
取引に記載された行為の被害者であるOEMを対象とした補償基金に850百万米ド
ル（以下「DOJ補償金」という。）を拠出する義務を負うこととなった。上記(2)
のとおり、本司法取引の締結以前から再生債務者グループはスポンサーによる支
援に基づいて再建することが想定されていたため、本司法取引上、かかるDOJ補
償金の支払いは、スポンサー契約を平成30年2月27日までにクロージングしたう
えで、当該クロージングから5日以内に行わなければならないものとされてい
る。本司法取引上、再生債務者が、かかる拠出義務を上記期限までに履行するこ
とができない場合（当該拠出は、再生債務者の子会社・関連会社によって拠出す

4

ることも可能とされている。）には、米国司法省は本司法取引を解除することができ、米国司法省がかかる解除をした場合には、再生債務者グループに対して訴追を行う可能性があることに加えて、本司法取引によって和解的に解決した 850 百万米ドルの拠出金額を超える多額の罰金が科される可能性もある。そのため、再生債務者グループが DOJ 補償金を支払うことは、そのグローバルな事業を一体として再生するために必要不可欠である。もっとも、再生債務者グループは DOJ 補償金を自ら支払う財源がないため、平成 30 年 2 月 27 日までに、グローバルな事業を一体として支援し得るスポンサーとの間でスポンサー契約のクロージングをして、DOJ 補償金の金額を上回るスポンサー資金を受けることが不可欠となった。

(5) SC は、平成 29 年 2 月 3 日、①KSS が、買収価格として他のスポンサー候補の提示価格を相当程度上回る最高かつ最良のオファー（highest and best offer）を提示したこと、②KSS は競争法上のリスクが他の有力なスポンサー候補と比較して低いため、スポンサー契約をより確実に実行することができると考えられること、③KSS においてはデュー・ディリジェンスが相当程度進捗していること、及び④再生債務者グループの主要顧客であってスポンサーの顧客となる OEM により構成されるカスタマーグループ（以下「CG」という。）が、KSS を推薦する旨の意思を示したこと等を踏まえて、再生債務者に対し、再生債務者グループのスポンサー候補として KSS を推薦した。その後、再生債務者グループ、KSS 及び OEM との間で、再生債務者グループの事業を KSS に承継させるための契約条件に関する交渉が集中的に進められ、まずは、再生債務者及び KSS の間において、平成 29 年 6 月 26 日、再生債務者が再生手続開始の申立てを行う前に、再生債務者グループの資産及び事業の譲渡につき、法的拘束力のない基本合意が締結されるに至った。

(6) 再生債務者が同日に再生手続開始の申立てを行った以降も、再生債務者グループ

5

は、KSS との間で最終契約締結に向けて協議・交渉を進め、再生債務者グループ及び KSS は、監督委員の同意を得たうえで、平成 29 年 11 月 16 日付で US-APA 及び EMEA-APA を締結した。また、Japan-APA についても監督委員の同意を得ることを停止条件として添付資料 1 の内容で同日付で締結済みであり、また、平成 30 年 1 月 15 日付で監督委員による同意を得ている状況である。


3　Japan-APA 締結の必要性

(1)　Japan-APA に基づく事業譲渡を行うことが再生債務者の事業の再生のために必要であること（民事再生法 42 条）

　　前記 2(1)のとおり、再生債務者グループは多額の本リコール債権の請求及び本エアバッグの不具合に関連する訴訟の提起を受けて財務的な危機に瀕しており、抜本的な事業再建を図る必要がある。そして、再生債務者グループの最大債権者であり、かつ、再生債務者グループの事業を継続する上で最も重要な取引先である OEM は、再生債務者グループによる製品の品質管理及びグローバル供給体制の維持という観点から、グローバルな事業を売却できるスポンサー型の再建を支持している。また、再生債務者は本司法取引に基づき、KSS への売却のクロージングを条件として 850 百万米ドルもの DOJ 補償金を拠出する義務を負っているところ、前記 2(4)のとおり、再生債務者グループが DOJ 補償金を支払うことはそのグローバル事業を再生するために必要不可欠であり、そのためにはスポンサーとの間で事業譲渡契約をクロージングし、DOJ 補償金の金額を上回る事業譲渡代金の支払を受けることもまた不可欠である。

　以上より、再生債務者グループが KSS との間で Japan-APA に基づく事業譲渡を行うことは、再生債務者の事業の再生のために必要である（民事再生法 42 条）。

(2)　計画外事業譲渡による必要があること

　　前記 2(4)のとおり、再生債務者グループは、本司法取引に基づき、平成 30 年 2 月

27 日までにスポンサーとの間でスポンサー契約をクロージングし、かかるスポンサー契約のクロージングから 5 日以内に DOJ 補償金を拠出する義務を負っている。一方で、再生債務者の再生計画案の提出期限は平成 30 年 2 月 28 日であるため、かかる DOJ 補償金の履行期限を踏まえれば、再生計画に基づく事業譲渡を待つことはできず、計画外事業譲渡（民事再生法 42 条）によって早期に事業譲渡を実行する必要がある。

## 4  グローバルな事業譲渡全体の相当性

(1)  KSS が公正な手続により適正にスポンサーとして選定されたこと

　再生債務者グループのスポンサー選定手続は、前記 2 のとおり、SC の下で、事業再生局面におけるスポンサー選定について実績及び専門的知見のあるフィナンシャル・アドバイザーの Lazard によって主導されたものである。また、SC 及び Lazard は、再生債務者のスポンサー候補者として考えうる候補者に広くグローバルで接触するとともに、再生債務者グループの最大の債権者であり、かつ、再生債務者グループの事業を継続する上で最も重要な取引先でもある OEM にも、スポンサー候補者がほかにいるようであれば推薦するよう求めた。したがって、スポンサーの選定過程においては、適切かつ公平な手続が履践されているといえる。

　また、最終的にスポンサーとして選定された KSS は、買収価格として他のスポンサーによる提示価格を相当程度上回る最高価格である 15 億 8800 万米ドルを提示しており、かかる価格は本司法取引に基づく 8 億 5000 万米ドルの拠出義務を履行するに足りるものである。また、KSS は競争法上のリスクが他の有力なスポンサー候補と比較して低いため、グローバルの供給体制を維持したままでスポンサー契約をより確実に実行することができ、また、競争当局からの当該取引の承認に要する期間もより短期間となることが予想される。さらに、再生債務者グループは、OEM との協議の結果、再生債務者グループの最大の債権者であってかつ主要顧客である OEM は KSS への事業譲

7

渡を支持していると理解している。加えて、KSS は、エアバッグ等の自動車安全部品をグローバルで製造・供給している会社であるため、再生債務者グループの事業を譲り受けて、事業を遂行する十分な能力を有しているといえる。

## (2) グローバルな事業譲渡全体の構造

　再生債務者グループは、PSAN インフレータに関連する事業及び資産を除き、再生債務者グループがグローバルに行っている事業の実質的に全てを KSS に譲渡し、KSS は再生債務者グループのグローバルの事業を一体として取得する予定である。かかるグローバルな事業譲渡は、①日本及びその他のアジア諸国等における事業の譲渡契約である Japan-APA、②米国、メキシコ及び南米等における事業の譲渡契約である US-APA、③欧州等における事業の譲渡契約である EMEA-APA、及び④再生債務者の中国子会社である TSAC における事業の譲渡契約である TSAC-APA（前記 1 のとおり、今後締結予定である。）の 4 つの事業譲渡契約によって行われる予定である。KSS との取引がグローバルな性質を有するものであることに鑑み、これらの事業譲渡契約においては、他の事業譲渡契約上の実行条件が成就又は放棄されていることが、それぞれの事業譲渡の実行条件のうちの一つとされており、また、他の事業譲渡契約が解除された場合には、それぞれの事業譲渡契約も解除することができるものとされているため、実質的に一体としての契約をなす。

　これらの事業譲渡のスキームについて、①Japan-APA における売主らは再生手続における計画外事業譲渡（民事再生法 42 条）の方法で行い、②US-APA における米国等における売主は米国における法的倒産手続である Chapter 11 における Chapter 11 Plan（民事再生法における再生計画に相応する。）に基づく資産譲渡（asset sale）の方法によって行い、③EMEA-APA 及び④TSAC-APA における売主については、私的整理の枠組みにおける事業譲渡によって行うことが想定されている。

　　　　KSS は、前記 2(1)のとおり、再生債務者グループが PSAN インフレータの不具合に関連して本リコール及び訴訟の提起を受けていることを踏まえて、PSAN インフレータに関連するリスクを KSS から遮断するために、再生債務者グループの法人のうち、（ⅰ）PSAN インフレータの製造・流通・販売等に関係する法人については、PSAN インフレータに関連する事業・資産・債権債務関係（潜在債務を含む。）を再生債務者グループに残す（すなわち KSS が承継しない）ことを前提とした事業譲渡の方法により PSAN インフレータに関連しない事業を承継し、（ⅱ）PSAN インフレータの製造・流通・販売等に関係しない法人については株式譲渡の方法により法人そのものを承継することを要求した。また、KSS は、（ⅲ）再生債務者グループの法人のうち KSS にとって事業価値の乏しい一部の法人については承継対象から除外することを要求した。グローバルな事業譲渡における KSS への譲渡対象法人の確定及び譲渡方法については、上記の（ⅰ）乃至（ⅲ）の KSS の要求を踏まえたものとなっており、再生債務者グループの各法人がどのように扱われているかについては添付資料 5 を参照されたい。


(3)　事業譲渡代金のグローバルな分配の合理性

　　　　前記 2(5)のとおり、再生債務者グループがグローバルで KSS から受け取る事業譲渡代金のベースとなる金額の総額（KSS がスポンサー手続の最終提案書において提案した金額）は、15 億 8800 万米ドル（以下「本事業譲渡代金総額」という。）である。再生債務者グループから KSS へのグローバルな事業譲渡は、前記 4(2)のとおり、Japan-APA、US-APA、EMEA-APA 及び TSAC-APA の 4 つの事業譲渡契約に基づいて行われるため、本事業譲渡代金総額は、これらの各事業譲渡契約に配分される必要がある。

　　　　各事業譲渡契約への譲渡金額の配分額の算出はフィナンシャル・アドバイザーである Lazard のサポートの下、また、KSS のフィナンシャル・アドバイザーである Jefferies LLC との合意に基づき算出された。かかる配分額の算出にあたって、まず、

9

①再生債務者グループのうち私的整理のもとで（株式譲渡ではなく）事業譲渡が行われる欧州・メキシコ・中国の各法人に関しては第三者専門機関が評価した公正市場価値を配分し（なお、第三者専門機関が評価した公正市場価値を採用することについてはKSSからの要望であった。）、②法的整理手続のもとで譲渡されるその他の法人（子会社の株式譲渡を含む。）に関しては、（ⅰ）本事業譲渡代金総額から①を控除した残額について、関係会社間の貸借やのれんの控除等の調整を行った後の調整後純資産について、グループ全体に占める割合に基づいてまず配分し、（ⅱ）調整後純資産の割合に基づいて配分された金額が当該法人の清算価値を下回る場合には、清算価値に満つるまで、調整後純資産の割合に基づいて配分された金額が清算価値を上回る法人に配分された金額から、プロラタベースで、清算価値を下回る法人に対して再配分される。

　このように、法的整理手続のもとで譲渡される法人については純資産を基準として配分を行っているが、これは再生債務者グループの事業譲渡後の事業計画が、KSSから開示されておらず、そのため事業計画をもとに算定した将来キャッシュ・フローに基づく配分が不可能である状況において、(ⅰ)純資産は直近の監査済み財務諸表に基づくものとして客観性があり、かつ、(ⅱ)各法人ごとに数字を取得することができるため、譲渡代金の配分を行いやすいという利点があり、算定基準として合理性を有する。なお、本事業譲渡代金総額の配分の基準となった純資産は、監査済み財務諸表上の数値をそのまま使用したものではなく、各法人ごとの価値を正確に把握する観点から、連結調整額の調整やのれん等の控除等の調整を行った後の金額を基準としている。

　かかる本事業譲渡代金総額のグローバルな配分の方法は、各事業譲渡契約において譲渡対象となる法人の価値に従って客観的になされたものであり、合理性を有する。

**(4)　DOJ 補償金のグローバルな分配の合理性**

　前記 2(4)のとおり、再生債務者は、グループとして、DOJ との間で締結した本司法取引に基づき、OEM を対象とした補償基金に 850 百万米ドルの DOJ 補償金を拠出することを予定している。かかる DOJ 補償金を再生債務者グループのどの法人が拠出するかについてのグローバルな配分は、以下の基準に従って行われる。

①　すなわち、まず、PSAN インフレータを具備するエアバッグの製造・販売に関与している法人（以下「DOJ 補償金負担法人」という。）を特定し、DOJ 補償金の一部を負担させる。DOJ 補償金は、PSAN インフレータを具備したエアバッグを購入した OEM の損害を補償するという性格を有することから、DOJ 補償金負担法人に DOJ 補償金を拠出させるのが合理的であると考えられる（DOJ 補償金負担法人間の具体的な配分方法については、②及び③に記載のとおり。）。

②　DOJ 補償金負担法人のうち、再生債務者グループのうち各事業譲渡契約における主要売主（ultimate parent）である再生債務者、TK Holdings Inc.（以下「TKH」という。）、Takata Europe（以下「TKEUR」という。）、Takata AG（以下「TKAG」という。）及び Takata Sachsen GmbH（以下「TKSAC」という。）を除く各法人は、税負担や清算費用等の本件の取引に付随して要する費用を控除した後の本事業譲渡代金総額からの配分金額の全額を当該法人からの DOJ 補償金として拠出する。

③　そして、850 百万米ドルから上記各法人が拠出した DOJ 補償金を差し引いた残額については、DOJ 補償金負担法人のうち、再生債務者グループのうち各事業譲渡契約における主要な売主（ultimate parent）である再生債務者、TKH、TKAG 及び TKSAC が、PSAN インフレータの出荷台数の割合に応じてプロラタベースで負担するものとされている。かかる DOJ 補償金の配分基準は、外部債権者を有する主要売主（ultimate parent）による負担額をできる限り減らすとともに、主要売主間においては PSAN インフレータの出荷台数に応じて分配するものであり、合理

11

的であるといえる。

**(5)　RTK 関連費用のグローバルな分配の合理性**

　再生債務者グループとしてリコール支援を継続するために、一部の取引先からは、KSS への事業譲渡後においても PSAN インフレータの供給を継続することを求められており、特定の PSAN インフレータの継続的な供給が確保されることが再生債務者グループの再建の必須条件となっている。一方、前記 4(2) のとおり、KSS は PSAN インフレータに関係するリスク及び責任を遮断する観点から PSAN 関連資産は承継しないことを再生債務者グループのスポンサーとなることの前提としている。そのため、再生債務者は、グループに残る各法人（以下「RTK」という。）において PSAN 関連事業を継続する必要がある。

　RTK が事業を継続するにあたっては、①PSAN インフレータの輸送・保管・廃棄に要する費用、②NHTSA 及び DOJ が PSAN 関連事業を監視するために設置されたモニターに関する費用、③DOJ 補償金の分配を実施するスペシャル・マスターに支払う費用、④PSAN インフレータ製造のための設備投資費用、及び⑤乾燥剤入りインフレータの安全性検証のために要する人件費や間接費などの各種費用（以下総称して「RTK 関連費用」という。）の拠出が必要となる。RTK 関連費用については、以下の処理が想定されている。

　すなわち、まず、①の PSAN インフレータの輸送・保管・廃棄に要する費用については、再生債務者グループ内において各地域別に負担するものとされている。その上で、再生債務者は、KSS への事業譲渡のクロージングまでの間に OEM から受領した PSAN インフレータの輸送・保管・廃棄に要する費用についてのみ負担するものとされており、クロージング後については、OEM が（OEM が自ら行うか、又は RTK に対して業務委託するかのいずれかの方法により）負担することが予定されている。また、②、③、

12

④及び⑤の各費用については、各事業譲渡契約における主要な売主である再生債務者、TKAM、TKH、TKEUR、TKSAC 及び TKAG が、それぞれの既存又は潜在的なリコールの対象である PSAN インフレータの出荷台数の割合に応じて負担するものとされている。加えて、KSS は、RTK に必要な費用に不足が生じた場合に、KSS、OEM、及び再生債務者グループにて別途締結した平成 29 年 11 月 16 日付 Backstop Agreement（その後の変更を含む。）に基づき、一定額を上限として RTK 関連費用の一部（同契約において PSAN Legacy Cost と定義されているもの）を負担することが想定されている。

なお、再生債務者が拠出した RTK 関連費用の再生計画上の取扱いについては後記 5(4)のキャッチアップルールを参照されたい。

かかる配分基準は、①の費用については各地域がそれぞれの地域において要する PSAN インフレータの輸送・保管・廃棄費用を負担するものであり、また、②、③、④及び⑤の各費用については、RTK 関連費用を実質的に再生債務者グループにて配分し、かつ、再生債務者グループ内においては、PSAN インフレータ関連事業に関する費用である RTK 関連コストを PSAN インフレータの出荷台数という客観的な基準に従って配分するものであり、合理的であるといえる。


(6)　小括

以上より、KSS とのグローバルな事業譲渡全体の枠組みは相当であるといえる。


5　Japan-APA に基づく事業譲渡の相当性

(1)　Japan-APA の概要

Japan-APA は、前記 4(2)のとおり再生債務者グループから KSS に対するグローバルな事業譲渡の一環として、日本法人である再生債務者、TK9 及び TKS が売主となって、再生債務者グループの日本及びその他のアジア諸国等の事業を譲渡するものである。

Japan-APA の各条項の概要については添付資料 6 を参照されたい。


(2)　Japan-APA 上の事業譲渡代金の相当性

　　Japan-APA 上の事業譲渡代金のうち再生債務者に対して支払われる金額のベースと
なる金額は、本事業譲渡代金総額を前記 4(3)に記載した方法で割り付けた金額である
約 3 億 1950 万米ドルである（以下「ベース事業譲渡代金」という。Japan-APA 3.1 条
に定義されている "Individual Seller Base Price for TKJP" がこれに該当するが、
3.2 条に規定されているとおり、一部の再生債務者グループ間における債権債務の取
扱いや、専門機関による一部の再生債務者グループ法人の公正市場価格の評価によっ
て事業譲渡金額が調整されたため、Japan APA 3.1 条に記載されている金額とは差異
がある。）。ベース事業譲渡代金は、前記 4(1)のとおり公平なスポンサー選定手続に
おいて提示された最高金額である本事業譲渡代金総額を、前記 4(3)のとおり合理的な
分配方法に従って割り当てられることにより算出されたものであり、適正なものとい
える。

　　このうち再生債務者が実際に受領する金額（以下「調整後事業譲渡代金」という。）
は、ベース事業譲渡代金から Japan-APA 第 3.1 条(ii)乃至(xii)に規定された以下の
調整項目に基づき一定金額が控除された金額となる（なお、Regional Share
Percentages、Cash Allocation Share 及び Purchase Price Share の定義、その他の
詳細については添付資料 6 を参照されたい。）。

　【ベース事業譲渡代金の調整項目】

①　Japan-APA において株式譲渡の対象となる再生債務者の子会社が、Japan-APA
　　の締結時点で負担している未払いの金融負債の合計額。なお、かかる未払債務
　　は、Japan-APA のクロージング時点において、KSS が提供する資金を用いて弁済
　　されるものとされている（Japan-APA 3.4 条）。

14

② Japan-APA において株式譲渡の対象となる再生債務者の子会社が、OEM との間で別途締結した OEM Settlement Agreement に基づき支払うべき金額の合計額。なお、かかる金額は、Japan-APA のクロージング時点において、KSS が再生債務者の子会社に代わって支払うものとされている（Japan-APA 3.3(d)条）。

③ Japan-APA において事業譲渡又は株式譲渡の対象となる法人が、OEM との間で別途締結した平成 29 年 6 月 26 日付 Accommodation Agreement（以下「Japan-AA」という。）に基づき、Japan-APA のクロージング日までに期限前弁済を受けた売掛金（Japan-AA が存在しなければクロージング日までに受領できなかったものに限る。）の合計額（ただし、TK9 又は TKS が期限前弁済を受けた売掛金債権に係る金額を除く。）。

④ OEM が Japan-APA において事業譲渡又は株式譲渡の対象となる法人に対して Japan-AA に基づく機器オプションを行使した場合には、当該 OEM が行使に際して支払った金額（ただし、TK9 又は TKS に対して行使された機器オプションに係る金額を除く。）。

⑤ 再生債務者の事業譲渡に際して KSS に課税される税額。ただし、日本における消費税、中国における増値税、その他これに類する課税（以下「VAT」という。）を除く。

⑥ 再生債務者の事業譲渡に際して KSS に課税される還付対象外の VAT の金額。なお、KSS はかかる控除金額を用いて再生債務者の事業譲渡に際して課税される還付対象外の VAT を自ら支払う。

⑦ 再生債務者グループとのグローバルな事業譲渡に際して KSS に課税される還付対象の VAT の総額のうち、Japan-APA の売主らに Regional Share Percentages に従って配分される金額について、再生債務者に Purchase Price Share に基づき配分される金額。なお、KSS はかかる控除金額を用いて再生債務者による事

15

業譲渡に際して課税される還付対象の VAT を自ら支払い、当該 VAT について実際に還付金を受領した場合には、再生債務者グループ及び KSS との間で別途締結する Regulatory Escrow Agreement に基づき設置される予定である Regulatory Escrow に当該還付金を預け入れるものとする。KSS は、再生債務者グループが競争法に違反したことに基づき各国の当局から課徴金その他の金額を支払うことを義務づけられた場合には、かかる金額のうち 1000 万米ドルを上回る金額について Regulatory Escrow 内の預入金より支払うことができる。KSS は、遅くとも各事業譲渡契約のクロージング後 30 ヶ月後には、Regulatory Escrow 内の預入金の残額を再生債務者グループに対して返還する（再生債務者グループ内が受領する還付金の配分は Regional Share Percentage による。）。

⑧ KSS に譲渡される現金及び現金等価物の合計額がグローバルで 4 億 3500 万米ドルを下回る場合には、当該差額のうち、Japan-APA の売主らに Cash Allocation Share に従って配分される金額について、再生債務者に Purchase Price Share に基づき配分される金額。なお、KSS に譲渡される現金及び現金等価物の合計額が 4 億 3500 万米ドルを上回る場合には、グローバルにおける合計額 5000 万米ドルを上限として、超過額について同様の計算方法に基づき配分される金額が再生債務者への事業譲渡代金に上乗せされる。

⑨ KSS がグローバルな事業譲渡のために負担した取引費用（上限 5000 万米ドル）のうち、Japan-APA の売主らに Regional Share Percentages に従って配分される金額について、再生債務者に Purchase Price Share に基づき配分される金額。このように、大規模な買収案件において買い手側が負担した専門家費用等の取引費用を負担することは、米国等の実務においても見られることがあり、再生債務者グループが KSS の負担した取引費用の一部を負担することは不合理とはいえない。

16

⑩　Japan-APA において事業譲渡又は株式譲渡の対象となる法人が、DOJ 補償金に関連して OEM により相殺を受けた場合、かかる相殺額（ただし、TK9 又は TKS に対して割り付けられるべき金額を除く。）。

上記の控除項目は、本来再生債務者グループが負担すべき金額を KSS が肩代わりして支払う場合や、当事者が前提としている企業価値評価に変動を生ずる事由が発生した場合等において、当該金額を一定の客観的基準に従って再生債務者グループ間で配分したうえでベース事業譲渡代金から控除するものであるから、いずれも相当なものである。また、後記 8(2)のとおり、再生債務者が KSS との事業譲渡を実行して調整後事業譲渡代金を受領した場合には、再生債務者が清算した場合の配当率を超える配当を再生債権者に対して行うことが可能である。したがって、Japan-APA 上の事業譲渡代金の定めは全体として相当なものといえる。

## (3)　再生債務者による DOJ 補償金の負担の相当性

前記 2(4)のとおり、再生債務者グループは本司法取引に基づき、OEM を対象とした補償基金に 850 百万米ドルの DOJ 補償金を拠出することになっており、再生債務者はこのうち前記 4(4)記載の基準で配分された金額である約 1 億 1320 万米ドル(以下「DOJ 補償金負担額」という。)を受領する譲渡代金から支払うものとされている(Japan-APA 3.3(a)条)。かかる再生債務者による DOJ 補償負担額の支払いは、再生債務者グループのグローバルな事業を継続するために必要不可欠である DOJ 補償金の支払いについて、合理的な基準によって再生債務者グループ内で配分された金額を支払うものであるため、相当なものといえる。

また、OEM は、一般債権者としての配当に加え、本司法取引に基づいて設置される基金のもとで、DOJ 補償金からも補償を受けることが想定されている。そのため、再生計画において、債権者の公平かつ平等な取扱を確保するため、再生債務者による DOJ

17

補償金への拠出額は、OEM が再生債務者に対して有する再生債権の弁済とみなし、他の再生債権者が、その確定再生債権につき OEM と同様の割合まで再生計画による弁済を受けない限り、OEM はその再生債権について、再生計画からの弁済を受けられない旨の定め（キャッチアップルール）を設けることを予定しており、OEM もこれに合意している。かかる取扱いは、衡平の見地から、OEM 以外の他の債権者の利益をより保護することを図るものである。

### (4) 再生債務者による RTK 関連費用の負担の相当性

前記 4(5)のとおり、再生債務者グループは RTK 関連費用を拠出する必要があり、再生債務者はそのうち一定の基準で配分された金額である約 4460 万米ドル（ただし、今後若干の増加が見込まれる。）を調整後事業譲渡代金から支払うものとされている（Japan-APA 3.3(c)条）。かかる再生債務者による RTK 関連費用の支払いは、KSS への事業譲渡の前提となっている再生債務者グループにおける PSAN 事業の継続のために必要不可欠な費用について、合理的な基準によって再生債務者グループ内で配分された金額を支払うものであるため、相当なものといえる。

また、KSS に対する事業譲渡を支援する一環として、また、本事業譲渡許可に対する承認を取得するための条件として、OEM は、再生債務者が支払った RTK 関連費用の範囲で、再生債務者に対する再生債権について一部弁済を受けたものと見做すことに合意したため、再生計画においては、他の債権者が OEM と同様の割合まで再生計画による弁済を受けるまで、OEM は再生計画による弁済を受けられない旨の定め（キャッチアップルール）を設けることを予定している。かかる取扱いは、衡平の見地から、OEM 以外の他の債権者の利益をより保護することを図るものである。

### (5) 従業員の処遇の相当性

18

　　KSS は、Japan-APA において、クロージング時に勤務している再生債務者の従業員の原則として全員（派遣社員、契約社員、及びアドバイザー等の臨時雇い従業員は除く）に対して、雇用のオファーを行うものとされており、その KSS による雇用条件（福利厚生制度を含む。）は事業譲渡前と同等以上のものとするものとされている。ただし、KSS への事業譲渡後においては、再生債務者グループが行っている事業のグローバルな本社機能は海外に移転することとなるため、再生債務者グループが事業譲渡前において有している東京の本社機能は縮小することを余儀なくされる。かかる観点から、KSS は、例外的に、本社機能に従事している従業員についてのみ、売主らと誠実に協議のうえで、雇用のオファーを行わないこともできるものとされている（Japan-APA 8.1 条）。実際にオファーを行わない従業員の範囲については、KSS が今後再生債務者との間で協議のうえで決定することが想定されている。

　　以上より、KSS は原則として再生債務者の従業員の雇用を引き継ぐものとされており、かつ、引き継がれる従業員の雇用条件は事業譲渡前と同様以上のものとするとされているから、再生債務者の従業員は適切に保護されているといえる。


(6)　小括

　　以上より、Japan-APA の内容は相当なものといえる。


6　Japan-APA に基づく事業譲渡が実行される見込みであること

(1)　概要

　　Japan-APA の締結後、実際に Japan-APA に基づく事業譲渡が実行されるのは、①Japan-APA が Japan-APA 上規定された当事者の解除権に基づき解除されず、かつ、②Japan-APA に規定された事業譲渡実行の前提条件の全てが成就し、又は放棄された場合である。かかる解除権又は事業譲渡実行の前提条件のうち特に重要なもの（解除権）

19

は以下のとおりであるところ、これらの解除権はいずれも成就または放棄されたため、Japan-APA に基づく事業譲渡は実行される見込みであるといえる。

(2)　Non-Consenting OEM からの同意取得

　　Japan-APA 上、KSS が OEM との間で将来のリスク分担について定めるために締結された一定の契約について、Japan-APA の締結時点においてはその契約当事者ではなかった OEM（以下「Non-Consenting OEM」という。）のうち一定の OEM が、平成 30 年 1 月 2 日までに新たに契約当事者として追加されない場合には、KSS は Japan-APA を解除することができるものとされている（Japan-APA 4.4(d)(ii)）。しかしながら、現時点までに、かかる解除権は発生しないことが確定した。

(3)　DOJ 及び NHTSA からの同意取得

　　再生債務者グループは同意指令及び本司法取引に基づきそれぞれ NHTSA 及び DOJ から事業遂行について監督を受けているところ、Japan-APA 上、KSS への事業譲渡後にはかかる監督の範囲を限定する旨の契約を KSS が DOJ 及び NHTSA との間で締結することが、事業譲渡実行の前提条件とされている（Japan APA 9.1(o)）。かかる解除権には一定の行使期限が設けられていたところ、KSS は、DOJ 及び NHTSA との間でそれぞれ一定の合意に至ったことを理由としてその期限までに解除権を行使しなかったため、現時点においてはかかる前提条件は放棄されたものとみなされている。

(4)　小括

　　以上より、Japan-APA に基づく事業譲渡が実行される十分な見込みが存在する。

7　本変更契約について

　　Japan-APA については、Non-Consenting OEM に対して IRA の契約当事者として加わ

20

る合意を得るための期間を延長するための変更契約（平成 29 年 12 月 3 日付 First Amendment to Asset Purchase Agreement（添付資料 2）及び同月 25 日付 Second Amendment to Asset Purchase Agreement（添付資料 3）と、米国倒産裁判所の意見を受けていわゆる Break-Up Fee（Japan-APA 4.6 条）の金額を低額にするための変更契約（平成 30 年 1 月 15 日付 Third Amendment to Asset Purchase Agreement（添付資料 4））がそれぞれ締結されているが、これらの変更契約の内容はいずれも合理的であり、これを締結する必要性及び相当性が認められる。

## 8　Japan-APA に基づく事業譲渡を前提とした再生計画が認可される見込みであること

### (1)　KSS への事業譲渡の実行により見込まれる再生計画案の概要

　再生債務者は、KSS への事業譲渡の実行を前提として、調整後事業譲渡代金から後記 8(2)に記載の一定金額を控除した残額を再生債権者に分配した上で解散・清算する旨の清算型再生計画を策定することを想定している。

　想定している再生計画案が清算価値保障原則を満たすことは次項で述べるとおりであるが、再生計画案には、さらに OEM 以外の債権者の利益に配慮した一定の規定を置く予定である。すなわち、再生債務者は、前記 5(3)及び(4)のとおり、再生債務者は調整後事業譲渡代金から DOJ 補償金負担額及び RTK 関連費用を支払うことが想定されているが、そもそも、これらの支払は、再生債務者のグローバルな事業を再建してその事業価値を最大化し、債権者に対する弁済原資を最大化するものであって、全ての債権者の利益を確保するためには必要不可欠な支払である。もっとも、衡平の見地から、OEM 以外の他の債権者の利益をより保護するために、再生計画においては、他の債権者が OEM と同様の割合まで再生計画による弁済を受けるまで、OEM は再生計画による弁済を受けられない旨の定め（キャッチアップルール）をおくことを予定しており、OEM もこれに合意している。

(2)　再生計画案が清算価値保障原則を満たすこと

　　再生債務者がKSSへの事業譲渡を行わずに破産・清算する場合、添付資料7の財産評定書のとおり、配当原資の総額は約101億2100万円であり、再生債権の合計額は約1兆755億6400万円（ただし、かかる金額には、平成29年8月25日時点でPSANインフレータに係るリコールの対象となっていない本リコール債権（以下「ガンマリコール債権」という。）に係る金額として約2463億6500万円が含まれている。）となるため、破産・清算配当率は約0.94%となる。しかし、以下に述べるとおり、再生手続における一般債権者に対する弁済率はこれを上回っており、清算価値保障原則を満たすものと考えられる。破産手続や再生手続の実際の配当率（弁済率）は、①配当（弁済）の対象となる債権額と、②配当（弁済）原資額とによって決まることになる。

　　まず、①について検討すると、再生手続における弁済対象債権額は、現在、争われている債権が認められるかどうかなどによることになるが、基本的には、再生手続で認められる債権は、破産手続においても認められることなると考えられる。ただし、ガンマリコール債権やDOJの届出債権（DOJ補償負担額を除く。）については、再生手続では、弁済の対象とならないことが想定されているが、破産手続ではそれらも配当の対象となるものと思われるから、破産手続では、再生手続と比較すると、配当（弁済）対象となる債権額は多いことになる。

　　次に、②について検討すると、破産における配当原資は、上記のように約101億2100万円である。これに対して、KSSへの事業譲渡を行った場合の再生債権者への弁済原資は、（a）調整後事業譲渡代金、（b）再生債務者が事業譲渡前から有する余剰資金、及び（c）資産超過の子会社であるTK9及びTKSから再生債務者が再生債権の支払い又は配当によって受領することが想定されている金額の合計額から、（d）共益債権等の優先する金額を控除した残額となる。かかる金額は、現在の資金繰り見通しによ

22

れば 180 億円を超える金額（ただし、上記のキャッチアップルールを適用する結果、DOJ 補償金負担額（約 1 億 1320 万米ドル）及び RTK 関連費用（約 4460 万米ドル）の合計額（約 1 億 5780 万米ドル）については OEM の有する再生債権に対する弁済とみなされたと等しい結果になるので、OEM 以外の再生債権者は、OEM の上記合計額（約 1 億 5780 万米ドル）にかかる弁済率に至るまで優先的に弁済を受けることができる。）となることが見込まれている（1 ドルあたり 113 円として計算。ただし、上記の金額については現時点における予測に過ぎず、いずれの金額についても、今後の再生債務者グループ全体の資金繰り及び運営等によっては変動する可能性がある。）。したがって、再生計画による弁済の弁済率は、破産・清算配当率より高いものと想定され、KSS への事業譲渡を行った場合の再生計画における配当率が清算価値保障原則を満たすことは明らかである。

　なお、再生債務者は、前記 5(3)及び(4)のとおり、キャッチアップルールを適用することが予定されているため、DOJ 補償金負担額及び RTK 関連費用の支払いが OEM 以外の再生債権者の配当率に影響を及ぼすことはないと考えられる。


(3)　再生計画案がその他の認可要件を満たすこと

　前記(2)のほか、再生計画案が「法律の規定に違反」（民事再生法 147 条 2 項 1 号）する、「遂行される見込みがない」（同 2 号）、又は「再生債権者一般の利益に反する」（同 4 号）等の不認可要件に該当する事業は存在しない。


9　結語

　以上より、Japan-APA に基づく事業譲渡を行う必要性・相当性が存在し、実際にかかる事業譲渡が実行される見込みであり、さらに事業譲渡を前提とした再生計画が認可される見込みである。したがって、本申立てに及ぶ次第である。

23

添付資料

1    Japan Asset Purchase Agreement

2    First Amendment to Asset Purchase Agreement

3    Second Amendment to Asset Purchase Agreement

4    Third Amendment to Asset Purchase Agreement

5    KSS への譲渡対象法人及び譲渡方法

6    Japan-APA の概要

7    財産評定書

以上